### 11.6 Cesión o Traspaso del Contrato

MMC no traspasará, cederá o enajenará, total o parcialmente, directa o indirectamente, sus derechos, obligaciones, intereses o bienes bajo el Contrato (en adelante, la "Cesión" o "Traspaso") sin el consentimiento escrito previo del Municipio. El Municipio tendrá plena discreción para autorizar o no la Cesión o el Traspaso. Lo anterior será aplicable a Cesiones o Traspasos que sean voluntarios o involuntarios.

### 11.7 Cambio de Control

MMC tendrá que solicitar aprobación del Municipio con treinta (30) días anticipación de cualquier posible Cambio de Control. El Municipio tendrá plena discreción para autorizar o no el Cambio de Control. Si el Municipio no presenta objeción o solicita más información por escrito dentro de un periodo de treinta (30) días desde el recibo de la notificación MMC podrá proceder con el Cambio de Control. Si el Municipio no autoriza el Cambio de Control y MMC procede con el Cambio de Control, el Municipio podrá terminar el Contrato, en conformidad con el Artículo 10.

## ARTÍCULO 12 POLÍTICA CONTRA EL DISCRIMEN Y LA IGUALDAD DE OPORTUNIDADES

### 12.1 Política de No-Discrimen.

Con relación al ejercicio de todos los derechos y privilegios de MMC bajo el Contrato, MMC se obligará, a sí mismo y a sus empleados, representantes, agentes, contratistas y Subcontratistas a:

(a) no discriminar contra ninguna persona, empleado o persona que solicite empleo por razón de creencias religiosas, nacionalidad, edad, sexo, impedimento físico o mental, o estatus de veterano, como parte de la posesión, uso, administración u operación de los Bienes Arrendados, incluyendo el reclutamiento y el despido de empleados, la compra o uso de servicios, y la selección de suplidores y contratistas;

(b) colocar en lugares conspicuos anuncios o avisos dirigidos a sus empleados y potenciales empleados en los cuales se publiquen las disposiciones en contra del discrimen en el empleo, según establecido en la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley Contra Discrimen en el Empleo; y

(c) cumplir con las Leyes Aplicables relacionadas a derechos civiles e igualdad de oportunidades.



41

12.2    Incumplimiento.

Según dispuesto en la Sección 10.1(c), el incumplimiento de MMC, sus empleados, representantes, agentes, contratistas y Subcontratistas con las disposiciones de este Artículo 12 constituirá un Evento de Incumplimiento.

MMC indemnizará, protegerá y defenderá al Municipio, al Alcalde y sus oficiales y empleados con respecto a cualquier reclamación o demanda de terceras personas que surjan como resultado del incumplimiento de MMC con cualquiera de las disposiciones de este Artículo 12. Esta obligación de indemnización subsistirá luego de la Fecha de Vencimiento o de la Fecha de Terminación.

## ARTÍCULO 13    PROCESO DE RESOLUCIÓN DE DISPUTAS

13.1    Proceso de Resolución de Disputas.

13.1.1  Negociaciones Formales entre las Partes.

Las Partes harán esfuerzos de buena fe para resolver cualquier reclamación entre ellas a través de negociaciones formales entre sus representantes autorizados durante el Término del Contrato y el Proceso de Transición. Las negociaciones formales se realizarán en el Hospital o, de ser más conveniente y acordado por las Partes, en un lugar que sea mutuamente aceptable. Las conversaciones entre las Partes comenzarán el primer día laborable inmediatamente posterior al periodo de siete (7) días transcurrido una vez cualquiera de las Partes reciba la notificación por escrito de la Parte contraria describiendo la reclamación y el remedio solicitado, y una vez dicha Parte recipiente acceda por escrito a entrar en las conversaciones. La notificación será hecha en conformidad a la Sección 14.2. Las negociaciones formales serán confidenciales y podrán ser tratadas como negociaciones transaccionales para efectos de las reglas de evidencia del Estado Libre Asociado de Puerto Rico.

13.1.2  Resolución de Disputas Durante la Transición con Relación al Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros.

En el evento de que durante el Proceso de Transición las Partes no puedan alcanzar acuerdos sobre el Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros, según sea el caso, dicha determinación deberá ser hecha de conformidad con el procedimiento siguiente (en adelante, el "Proceso de Resolución de Disputas"):



(a)     Las Partes nombrarán, cada uno, un (1) perito imparcial y un (1) tercer perito imparcial a ser seleccionado, de ser necesario, según dispuesto abajo. La Parte que solicite la activación del Proceso de Resolución de Disputas designará e identificará su perito en la notificación escrita enviada a la otra Parte para efectos de requerir el comienzo del Proceso de Resolución de Disputas, y la otra Parte designará e identificará su perito por escrito dentro de un periodo de quince (15) días

42

inmediatamente posterior al recibo de la notificación antes mencionada. Los peritos imparciales (incluyendo el tercer perito, de ser necesario designar uno) serán profesionales cualificados e independientes con, al menos, diez (10) años de experiencia pertinente. Los peritos se regirán por las normas generalmente aceptadas de contabilidad promulgadas por el Instituto Americano de Contadores Públicos Autorizados.

(b)     Los dos peritos imparciales designados por las Partes, según dispuesto en el párrafo (a), tendrán treinta (30) días, luego de la designación del segundo tasador, para revisar todos los documentos relevantes y para hacer su determinación sobre el Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros, según sea el caso, y para someter su determinación por escrito a la atención de las Partes.

(c)     La decisión unánime por escrito de los dos peritos sin que haya participado el tercer perito permitido bajo ciertas circunstancias, o la decisión escrita de los tres peritos de mediar la participación del tercer tasador, será concluyente y vinculante para las Partes. Si dichos peritos no han acordado una decisión de forma unánime dentro del periodo de treinta (30) días inmediatamente posterior a la designación del segundo perito, según se establece en el párrafo (a), ambos seleccionarán un tercer perito imparcial, con las cualificaciones establecidas en el párrafo (a), para que participe en la determinación. En el evento que los dos peritos no puedan alcanzar un acuerdo sobre el tercer perito imparcial, la selección deberá ser hecha por la Asociación Americana de Arbitraje (en inglés, "American Arbitration Association"). Dicho tercer perito y los primeros dos peritos someterán su decisión dentro del periodo de treinta (30) días inmediatamente posterior a la fecha de designación del tercer tasador y notificarán por escrito a las Partes. Si los tres peritos no pueden llegar a una determinación de forma unánime sobre el Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros, según sea el caso, la determinación será calculada de la siguiente manera: (i) se identificarán los dos valores, de los tres valores sometidos por los tres peritos, que sean más próximos entre sí; (ii) se sumarán los dos valores identificados; y (iii) el total de la suma será dividida en dos, resultando en el promedio del Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros, según sea el caso. Dicho valor promedio de tasación será el Valor Neto de los Equipos en los Libros y/o el Valor Neto de las Mejoras Extraordinarias en los Libros, según sea el caso. Todas las decisiones que sean sometidas conforme a esta sección serán certificadas con la firma de los tres peritos (o de los dos primeros peritos designados, en el evento que un tercer tasador no sea utilizado).

(d)     Cualquiera de las Partes podrá acudir a un tribunal del Estado Libre Asociado de Puerto Rico con la competencia y jurisdicción pertinente para hacer cumplir la determinación hecha en conformidad a esta Sección 13.1.

13.2    Honorarios y Gastos.

Cada Parte pagará los honorarios y gastos del tasador designado por ésta. Las Partes pagarán en partes iguales los honorarios y gastos del tercer tasador, de haber sido utilizado.

## ARTÍCULO 14    CLÁUSULAS MISCELÁNEAS

14.1    Naturaleza de la Relación entre las Partes.

Las Partes acuerdan libre y voluntariamente que no tienen la intención de establecer mediante el Contrato una relación patrono-empleado entre éstas. A estos efectos, MMC actuará y prestará servicios en todo momento como contratista independiente. Además, MMC acuerda con el Municipio que ninguno de los miembros de MMC ni sus empleados reclamarán al Municipio por concepto de vacaciones, licencias por enfermedad, retiro, póliza de responsabilidad profesional, pagos para el seguro social federal y/o pagos para el seguro ocupacional provisto por MMC, administrado por la Corporación del Fondo del Seguro del Estado.

14.2    Notificaciones y Comunicaciones.

Toda notificación, solicitud, entrega de documentos, aprobaciones, autorizaciones o desautorizaciones, objeciones, ofertas u otras comunicaciones o documentos requeridos bajo el Contrato, o que pudieran ser dados o entregados, bajo las disposiciones del Contrato o de conformidad con las Leyes Aplicables, se hará por escrito y tramitada de la siguiente manera: (i) entregada a la mano o enviada vía correo certificado con acuse de recibo; (ii) mediante el servicio de correos de los Estados Unidos de América; o (iii) vía facsímil a la persona o entidad pertinente a la dirección que se especifica abajo,:

(a)    En el caso de una notificación o comunicación a MMC:

Lcdo. Kermit Ortiz Morales
470 Avenida César L. González
Urbanización Roosevelt
San Juan, PR 00918-2627

Atención:    Representante Legal
Fax:         (787) 274-8390

(b)    En el caso de una notificación o comunicación al Municipio:

Lcda. Magda Acevedo
P.O. Box 1723
Hatillo, Puerto Rico 00659



Atención:    Administrador del Contrato de Administración del Hospital Dr. Ramón E. Betances

44

Fax:        (787) 833-1371

Las notificaciones serán consideradas recibidas a la fecha de entrega si éstas son entregadas a la mano o por facsímil con confirmación de recibo, y será considerada entregada cinco (5) días laborables después de enviada por correo, según descrito arriba.

14.3    Separabilidad.

Si cualquier disposición del Contrato o la aplicación de ella fuera declarada inválida, nula o inexigible, el resto del Contrato o la aplicación de aquella disposición a personas o circunstancias distintas a aquéllas por las cuales fuera declarada inválida, nula o inexigible, no será afectada y cada disposición del Contrato será válida y exigible según permitido por las Leyes Aplicables.

14.4    Certificados de Estoppel.

Las Partes certificarán, firmarán y enviarán, sin cargo alguno a la otra Parte, en cualquier momento y de tiempo en tiempo, dentro del término de diez (10) días inmediatamente posterior a la solicitud por la otra parte, un documento escrito, firmado y entregado a la Parte que lo solicite o cualquier otra persona o entidad especificada por la Parte solicitante:

(a)    que el Contrato no ha sido modificado y que se encuentra en plena y total vigencia o, si han habido modificaciones al Contrato, que éste está en plena y total vigencia según modificado pero expresando cuáles han sido las modificaciones;

(b)    que no ha ocurrido un Evento de Incumplimiento del Contrato o, si ha ocurrido uno o varios, la naturaleza del mismo o los mismos;

(c)    si existen reclamaciones o defensas para que no se haya cumplido alguno de los compromisos, acuerdos, términos o condiciones del Contrato y cualquier modificación a éste por la Partes que deba ser observado, realizado o con el cual se deba cumplir y, de ser así, especificarlo;

(d)    las fechas, si alguna, en las cuales los Cánones de Arrendamiento no han sido pagados;

(e)    la Fecha de Vencimiento del Contrato; y

(f)    el Canon de Arrendamiento a ser pagado bajo el Contrato.

14.5    Foro con Jurisdicción Exclusiva.

Los tribunales del Estado Libre Asociado de Puerto Rico tendrán jurisdicción exclusiva para entender en controversias que surjan bajo el Contrato. Las Partes, voluntaria e irrevocablemente, consienten a someterse a dicha jurisdicción.




14.6   Aprobaciones y Autorizaciones del Municipio.

Independientemente de lo dispuesto en otras cláusulas del Contrato, MMC renuncia a cualquier derecho a reclamar contra el Municipio el pago o reembolso de dinero por concepto de daños causados por el Municipio ya sea, por negarse a, retener, omitir o atrasar su aprobación, consentimiento, autorización o expresión de satisfacción y, en tal caso, los únicos remedios disponibles a MMC serán la radicación de una acción que conlleve el desempeño de un acto específico del Municipio o un interdicto para hacer cumplir dicho requerimiento. MMC rembolsará prontamente cualquier gasto, incluyendo, sin límites, honorarios de abogado y gastos administrativos incurridos por el Municipio en conexión con todas las solicitudes que haga MMC para que el Municipio otorgue cualquiera de las aprobaciones o autorizaciones dispuestas bajo el Contrato, incluidas las aprobaciones y autorizaciones en conexión con cualquier enmienda o modificación del Contrato.

14.7   Renuncia a Reclamar Daños Indirectos.

MMC renuncia a hacer cualquier reclamación contra el Municipio por Daños Indirectos que surjan de la relación establecida en el Contrato o de la Terminación del Contrato. Esta renuncia incluye daños incurridos por MMC por pérdida de financiamiento, pérdida de oportunidad de hacer negocios, pérdida de reputación y por pérdida de generar ganancias bajo el Contrato.

14.8   Pago por Finiquito.

La aceptación por parte del Municipio de cualquier pago parcial o suma menor que la debida por concepto del Canon de Arrendamiento o por cualquier otro concepto bajo el Contrato será interpretada únicamente como pago por concepto del plazo del Canon de Arrendamiento con mayor antigüedad. Ningún acto de cobro o endoso por parte del Municipio será considerado como una aceptación de un pago parcial hecho por MMC en calidad de pago por finiquito. El Municipio aceptará dicho pago parcial sin perjuicio del derecho del Municipio a recuperar la cantidad adeudada o hacer efectivo cualquier otro remedio dispuesto en el Contrato o provisto por las Leyes Aplicables.

14.9   Derecho Aplicable.

El Contrato será interpretado exclusivamente de conformidad con las Leyes Aplicables del Estado Libre Asociado de Puerto Rico.

14.10  Pago por Contribuciones.

En cumplimiento con las disposiciones de las Leyes Aplicables, relativas a la certificación del pago de Contribuciones, MMC someterá al Municipio a la Fecha de Efectividad una declaración jurada estableciendo que MMC no tiene la obligación de radicar planillas por contribuciones sobre ingresos ni tiene actualmente deudas pendientes por dicho concepto con el Departamento de Hacienda del Estado Libre Asociado de Puerto Rico (incluyendo el pago de Patentes Municipales y el pago de contribuciones por propiedad mueble e inmueble)



requeridos por las Leyes Aplicables y según requerido en mayor detalle por la Sección 14.11.5.

14.11  Requisitos Gubernamentales.

14.11.1  Litigios contra el Estado Libre Asociado de Puerto Rico.

MMC certifica que a la Fecha de Efectividad ésta no tiene litigios pendientes contra el Estado Libre Asociado de Puerto Rico, sus corporaciones públicas o sus municipios.

14.11.2  Intereses Económicos de Empleados Públicos.

MMC certifica que:

(a) a la Fecha de Efectividad, éste no tiene interés particular de ninguna forma que pudiera generar un conflicto de interés;

(b) no realizará ningún acuerdo que pudiera causar un conflicto de interés o un conflicto con la política pública del Municipio;

(c) ningún funcionario o empleado público con facultad para evaluar, considerar, aprobar, autorizar u otorgar un contrato en nombre del Municipio ha tenido, durante los últimos cuatro (4) años previos a comenzar las labores bajo su puesto, un interés pecuniario directo o indirecto en relación a MMC o a cualquiera de sus subsidiarias o compañías afiliadas;

(d) ninguno de sus oficiales, directores, socios, agentes o empleados, o cualquier miembro de sus unidades familiares, según este término es definido en la Ley Núm. 12 de 24 de julio de 1985, ha ocupado un puesto como funcionario o empleado del Estado Libre Asociado de Puerto Rico durante los dos (2) años previos a la Fecha de Efectividad; y

(e) a la Fecha de Efectividad, ningún funcionario o empleado público del Municipio ni miembros de las familias de éstos, según dicho término es definido en la Ley Núm. 12 de 24 de Julio de 1985, ha tenido durante los últimos cuatro (4) años antes de asumir su cargo, un interés pecuniario directo o indirecto con relación a MMC y que no sabe o conoce de ningún empleado del Municipio que sea parte o tenga interés alguno en las ganancias o beneficios del Contrato.

14.11.3  Acusaciones y Sentencias Criminales.

MMC certifica y garantiza que, a la Fecha de Efectividad, ni MMC ni ninguno de sus oficiales, directores o empleados a nivel gerencial, ha resultado convicto o se ha declarado culpable como resultado de un procedimiento criminal en una corte estatal o federal o de cualquier otra jurisdicción de los Estados Unidos de América o en cualquier otro país, de delitos constitutivos de fraude, malversación o apropiación ilegal de fondos públicos enumerados en el Artículo 3 de la Ley Número 428 de 22 de septiembre de 2004. MMC reconoce, entiende y acepta que esta certificación es una condición esencial del Contrato. Si esta certificación es falsa, ésta constituirá causa suficiente para que el Municipio termine inmediatamente el Contrato. El Presidente de MMC también ha suscrito una declaración



47

jurada a estos efectos, la cual se aneja como Anejo J, de conformidad con la Ley Número 428 de 22 de septiembre de 2004.

MMC notificará inmediatamente al Municipio, si MMC y/o alguno de sus oficiales, directores o empleados gerenciales resultase convicto. El incumplimiento de MMC con la obligación de notificar constituirá una violación de esta cláusula y podrá ser causa suficiente para que el Municipio termine inmediatamente el Contrato.

14.11.4 Planillas para el Pago de Contribuciones sobre el Ingreso.

MMC certifica que al momento de la ejecución del Contrato, MMC ha sometido todas Planillas para el Pago de Contribuciones sobre el Ingreso requeridas en Puerto Rico durante los pasados cinco (5) años y ni MMC ni sus oficiales, directores o empleados gerenciales tiene Deudas Contributivas con el Estado Libre Asociado de Puerto Rico o, si hay alguna deuda, ésta está sujeta a un plan de pago aprobado por la Entidad Gubernamental correspondiente y que MMC, sus oficiales, directores o empleados gerenciales, según sea el caso, están cumpliendo estrictamente con el cualquier plan de pago existente.

14.11.5 Certificaciones.

Como condición para el otorgamiento del Contrato, MMC someterá al Municipio, en un término de quince (15) días a partir de la Fecha de Efectividad, y subsecuentemente en o antes de cada fecha de aniversario de éste, con respecto a sí misma y a sus oficiales:



(a) la certificación del Departamento de Hacienda sobre la presentación de planillas sobre contribución de ingresos (Forma SC 2888 o cualquiera otra adoptada por el Departamento de Hacienda para estos efectos) durante los últimos cinco (5) años fiscales;

(b) una certificación de deuda (Forma SC 3537 o cualquiera otra adoptada por el Departamento de Hacienda para estos efectos);

(c) certificaciones de deuda emitidas por el Centro de Recaudaciones e Ingresos Municipales (CRIM) con respecto a MMC; y

(d) certificaciones del Departamento del Trabajo y Recursos Humanos de Puerto Rico concernientes a desempleo, incapacidad y seguro choferil, la Corporación del Fondo del Seguro del Estado y por los municipios correspondientes, según sea el caso.

Si MMC ha requerido las certificaciones mencionadas arriba pero no las ha recibido, MMC someterá copias de la solicitud de éstas según sometidas ante la Entidad Gubernamental correspondiente, mostrando el sello oficial de dichas entidades, sujeto además a que dichas certificaciones sean sometidas no más tarde de treinta (30) días a partir de la Fecha de Efectividad o de la fecha de aniversario subsecuente. Si MMC no somete las certificaciones ni somete evidencia de su trámite dentro del término de quince (15) días aquí dispuesto, el Municipio, no obstante lo dispuesto en el Artículo 10, podrá terminar el Contrato de forma inmediata.

14.11.6 Deudas Contributivas bajo Revisión o Sujeta a Ajuste.

MMC certifica que ni ella ni sus oficiales tienen Deudas Contributivas que estén siendo revisadas o sujetas a ajustes por el Departamento de Hacienda. En el evento que MMC o sus oficiales tengan Deudas Contributivas que estén siendo revisadas o sujetas a ajuste por el Departamento de Hacienda, MMC someterá informes trimestrales certificados por el Departamento de Hacienda describiendo el estado de los procedimientos; provisto, sin embargo, que MMC acuerde que si dentro de treinta (30) días de emitida un determinación final administrativa MMC no ha pagado o acordado un plan de pago con respecto a una Deuda Contributiva que administrativamente se determine debida, el Municipio podría terminar inmediatamente el Contrato.

14.11.7 Presentación del Certificado de Incorporación.

Antes de la Fecha de Efectividad, MMC presentará ante el Municipio evidencia de incorporación ante el Departamento de Estado del Estado Libre Asociado de Puerto Rico como corporación con fines de lucro.

14.11.8 Presentación del Certificado de Buenapro.

Dentro de quince (15) días a partir de la Fecha de Efectividad y subsecuentemente en o antes de cada fecha de aniversario de éste, MMC habrá presentado ante el Municipio el Certificado de Buena Pro ("Certificado de Good Standing"). Si MMC no somete las certificaciones ni somete evidencia de su trámite dentro de dicho término, el Municipio, no obstante lo descrito en Artículo 10, podrá terminar el Contrato de forma inmediata.

14.11.9 Registro Único de Licitadores.

Aunque no es compulsorio, MMC puede presentar a la Fecha de Efectividad el certificado válido y efectivo emitido por la Administración de Servicios Generales evidenciando que MMC está debidamente inscrito en el Registro Único de Licitadores. Este certificado será prueba suficiente de cumplimiento con la información y los documentos requeridos y descritos en las cláusulas 14.11.5, 14.11.7 y 14.11.8 de esta sección.

14.12 Renuncia de Derechos.

La falla por parte del Municipio de ejercer, o hacer cumplir, cualquier derecho otorgado por el Contrato o por las Leyes Aplicables no constituirá una renuncia de dicho derecho ni tendrá la consecuencia de impedir que el Municipio ejerza, o pueda cumplir, dicho derecho en algún momento futuro.

14.13 Registro del Contrato ante la Oficina del Contralor.

Ninguna de las Partes estará obligada o requerida de cumplir con sus obligaciones bajo el Contrato hasta que éste haya sido registrado ante la Oficina del Contralor en conformidad a los requisitos de la Ley Núm. 18 de 20 de octubre de 1975, según enmendada. El Municipio

49

registrará el Contrato ante la Oficina del Contrato dentro de quince (15) días desde la Fecha de Efectividad.

En testimonio de lo cual, las partes aquí contratantes suscriben el Contrato y se obligan a cumplir con todas sus cláusulas y condiciones, hoy, 29 de enero de 2010, en Mayagüez, Puerto Rico.

_____
HON. JOSE G. RODRIGUEZ RODRIGUEZ
MUNICIPIO DE MAYAGUEZ

_____
LCDO. ANTONIO JOSÉ SANTOS PRATS
MAYAGUEZ MEDICAL CENTER-
DR. RAMON EMETERIO BETANCES

Certifico que el contrato Número RC-2010-000819 suscrito entre el Gobierno Municipal de Mayagüez y _____ fue debidamente registrado en la Oficina del Contralor de Puerto Rico en el Envío ____ a hoy ___ de _____ de ____ a las ___

_____ representante autorizado



50

registrará el Contrato ante la Oficina del Contrato dentro de quince (15) días desde la Fecha de Efectividad.

En testimonio de lo cual, las partes aquí contratantes suscriben el Contrato y se obligan a cumplir con todas sus cláusulas y condiciones, hoy, 29 de enero de 2010, en Mayagüez, Puerto Rico.

HON. JOSE G. RODRIGUEZ RODRIGUEZ
MUNICIPIO DE MAYAGUEZ

LCDO. ANTONIO JOSÉ SANTOS PRATS
MAYAGUEZ MEDICAL CENTER-
DR. RAMON EMETERIO BETANCES

Contrato # _____ Año Fiscal 2009 2010
Importe $ _____ Cuenta # 1039.00.8706
Firma _____
Fecha _____

Certifico que el contrato Número RC-2010-000819
suscrito entre el Gobierno Municipal de Mayagüez y
Mayaguez Medical Center _____ fue
debidamente registrado en la Oficina del Contralor
de Puerto Rico en el Envío 1741 hoy _____ de
_____ de 2010 _____ a las
_____

_____
representante autorizado



Anejo F – Área Aproximada de Algunos de los Bienes Inmuebles Arrendados

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

Cabida aproximada de las áreas del edificio principal del Hospital Dr. Ramón E. Betances, la cual incluye Centro Pediátrico, área de Administración Regional, anfiteatro y la nueva estructura del Acelerador Lineal.

| Áreas | Pietaje (pies cuadrados) |
|---|---|
| Piso 1 | 128,741.25 |
| Piso 2 | 30,980 |
| Piso 3 | 36,500 |
| Piso 4 | 33,300 |
| Piso 5 | 27,900 |
| Piso 6 | 27,900 |
| Sótano | 177,458.75 |
| Azotea | 4,200 |
| Sub-Sótano | 2,121 |
| Estacionamientos | |
| TOTAL | 469,101 |

A continuación se detallan las colindancias de las varias secciones del edificio principal del Hospital Dr. Ramón E. Betances, en orden de sur a norte comenzando por el Anejo Mecánico, el extremo sur del edificio:

*Anejo Mecánico*

- Norte (N) – Edificio Principal
- Sur (S) – Área Asfaltada / Calle que rodea el complejo

56

- Este (E) – Área de Estacionamientos Principal / Avenida Hostos
- Oeste (O) – Área Asfaltada / Calle que Rodea Complejo / Quebrada Canalizada

*Edificio Principal*

- N -- Emergencias / Oficina Regional
- S – Anejo Mecánico
- E -- Área de Estacionamientos Principal / Avenida Hostos
- O – Edificio Oncológico / Residencia de Enfermeras

*Emergencias*

- N – Gazebo
- S – Edificio Principal
- E -- Área de Estacionamientos Principal / Avenida Hostos
- O – Oficina Regional / Área de Máquinas

*Oficina Regional*

- N – Escuela de Enfermería
- S – Edificio Principal
- E – Gazebo / Emergencias
- O – Área de Máquinas

*Escuela de Enfermería*

- N -- Área de Estacionamiento Secundario / Calle que Rodea Complejo
- S – Oficina Regional / Área de Máquinas
- E – Generador / Área de Estacionamientos Principal / Avenida Hostos
- O – Área de Juegos

Separado del edificio principal del Hospital Dr. Ramón E. Betances y localizado al oeste de la sección identificada en el Plano como *Edificio Principal* está el *Edificio Oncológico*, el cual se describe a continuación

*Edificio Oncológico*

- N -- Tanques de Oxígeno
- S – Tanques de Gas / Carretera que Rodea Complejo
- E – Edificio Principal
- O – Cancha / Departamento de Salud

57

Anejo G – Bienes Inmuebles Ocupados por Otros Inquilinos del Centro Médico

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

**Descripción de Bienes Inmuebles Ocupados por Otros Inquilinos del Centro Médico**

*Centro de Rehabilitación Vocacional*

- Localizado al sudeste del Anejo Mecánico, cruzando la Quebrada Canalizada.
- Norte (N) – Quebrada Canalizada
- Sur (S) – Área Asfaltada / Residencial Público Sabalos
- Este (E) – Avenida Hostos
- Oeste (O) – Residencial Público Sabalos

*Departamento de Salud*

- Localizado al oeste del Edificio Oncológico
- N – Estacionamiento de Residencia de Enfermeras / Residencia de Enfermeras
- S – Alero / Calle que Rodea Complejo
- E – Cancha / Edificio Oncológico
- O – Calle que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

*Residencia de Enfermeras*

- Localizado al oeste del Edificio Principal
- N – Residencia de Médicos
- S – Departamento de Salud
- E – Edificio Principal
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

*Residencia de Médicos*

- Localizado al oeste de la Oficina Regional
- N – Área Abierta / Residencia de Enfermeras y Estudiantes de Enfermería
- S – Residencia de Enfermeras
- E – Área Abierta / Oficina Regional
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

*Residencia de Enfermeras y Estudiantes de Enfermería*

- Localizado al noroeste de la Escuela de Enfermería

- N – Carretera que Rodea Complejo
- S – Área Abierta / Residencia de Médicos
- E – Estacionamiento Secundario / Carretera que Rodea Complejo
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

Anejo H – Lista de Estadísticas a Ser Sometidos en los Informes Mensuales

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

Estadísticas Mensuales

1. Análisis de las cuentas a cobrar de pacientes

2. Análisis de las reservas para cuentas incobrables

3. Inventarios

4. Detalle de equipos capitalizados, los retirados de los libros y de los que no están en uso.

5. Detalle de mejoras capitalizadas – mejoras extraordinarias

6. Desglose de las cubiertas de seguros

7. Ingresos por servicios a pacientes (Inpatient, Outpatient and Totals)

8. Provisiones de los ajustes contractuales y otros ajustes

9. Detalle de otros ingresos (i.e. Employee and guest meals, Rental Income, Miscelaneous, etc.)

10. Detalle de nómina y servicios prestados de enfermeras, incluyendo gastos por contrato de servicios profesionales de enfermeras y cualquier gasto de per diem (i.e. Administrative, Medical and Surgical and Obstetric, Critical Care Unit, Long Term Care, Operating and Recovery Rooms, Central Supply, Emergency Services, etc.)

11. Detalle de otros servicios profesionales (i.e. Laboratory and Blood Bank, Electrocardiology, Radiology, CT Scans, Magnetic Resonance Imaging, Pharmacy, anesthesiology, Respiratory Therapy, Physical Therapy, Occupational Therapy, Physicians Clinic, Medical Records, Quality Assurance, etc.)

12. Detalle de gastos de servicios generales (i.e. Dietary, Plant Operation and maintenance, Bio-Medical, Houekeping, Laundry and Linen, etc.)

13. Detalles de gastos administrativos y gastos sin asignar

14. Estado comparativo de ingresos y gastos con años anteriores

15. Estado comparativo de ingresos y gastos con el presupuesto

16. Informe de estadísticas comparadas con periodos anteriores. (i.e. Patient days, Admissions, Discharges, Average Length of Stay, Beds, Occupancy Percent, Net Patient Revenue per Calendar Day, etc.)

17. Informe de estadísticas comparados de producción por área de servicio (i.e. Patient days, Admissions, Discharges, Samples sent to Laboratory, X-Rays taken, Diets Served, Visits to Emergency Room, etc.)

Anejo I – Estados Financieros Proyectados

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

Estados Financieros Proyectados

Anejo J – Declaración Jurada en Cumplimiento de la Ley Núm. 428

## DECLARACIÓN JURADA EN CUMPLIMIENTO
## DE LA LEY NÚM. 428
## DE 22 DE SEPTIEMBRE DE 2004

Contrato para la Administración y Operación del Hospital Dr. Ramón E. Betances del Centro Médico de Mayagüez

Yo, José L. Quirós, mayor de edad, casado, ejecutivo y residente de Dorado, Puerto Rico, declaro bajo juramento en calidad de Presidente de MMC que, según mi mejor conocimiento y creencia, las declaraciones expresadas adelante son ciertas y correctas:

1.    Mis circunstancias personales son las expresadas anteriormente.

2.    Soy el Presidente de MMC y tengo la capacidad y la autoridad para firmar esta declaración.

3.    Ni MMC ni ninguno de sus oficiales o directores ha sido convicto o se ha declarado culpable de ninguno de los delitos identificados en el Artículo 3 de la Ley Núm. 428 de 22 de septiembre de 2004.

En _____, Puerto Rico, a ____ de _____ de 2010.

_____

Afidávit Núm._____

Jurado y suscrito ante mí por José L. Quirós Jorge, mayor de edad, casado , ejecutivo y residente de Dorado, Puerto Rico, a quien conozco personalmente.

En _____, Puerto Rico, a ____ de _____ de 2010.

_____



CENTRO de TRAUMA

EMERGENCY DEPARTMENT



HELIPORT

CENTRO de TRAUMA

# ANEJO B

# PLAN DE DESARROLLO

# Ortiz & Ortiz Law Office, P.L.C.

470 Avenida César L. González, Urbanización Roosevelt, San Juan, PR 00918-2627
Tel. (787) 763-8989   Fax (787) 274-8390
e-mail: ortizortizlaw@prtc.net

<u>A LA MANO</u>

28 de diciembre de 2009

Hon. José G. Rodríguez Rodríguez
Alcalde
Municipio de Mayaguez
Mayaguez, Puerto Rico 00680

RE:     Solicitud de Autorización Cambio Control Corporativo

Estimado señor Alcalde:

El suscribiente se dirije a usted en nombre y representación de Mayaguez Medical Center-Dr. Ramón Emeterio Betances, Inc.  ("MMC").

Mediante acuerdo suscrito en esta misma fecha, <u>el cual acuerdo está condicionado y sujeto a la previa aprobación, por escrito, del Municipio de Mayaguez ("Municipio")</u>, el Dr. Orlando Marini Román ha acordado venderle a MMC, todas sus acciones comunes corporativas de Sistemas Integrados de Salud del Sur Oeste, Inc. ("SISSO")-(en adelante colectivamente las "Acciones").

Los términos, condiciones, precio de compraventa y demás acuerdos llegados entre el Dr. Marini y MMC relacionados a la venta, cesión y traspaso de las Acciones se encuentran descritos y detallados en la carta-contrato fechada 28 de diciembre de 2009; copia de la cual le incluyo y hago formar parte de esta como <u>Exhibit A</u>.

Con la compra de las Acciones, MMC asumirá el control corporativo de SISSO y, por consiguiente, el control, operación y administración del Centro Médico de Mayaguez ("**Centro Médico**"), a partir del día 1 de enero del 2010.

Una vez MMC asuma el control corporativo de SISSO procederá a operar y administrar el Centro Médico bajo los mismos términos y condiciones dispuestos en el Contrato para la Operación y Administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayaguez (en adelante el "**Contrato de Administración**"), suscrito y otorgado en Mayaguez, Puerto Rico, el día 27 de agosto de 2009, en y entre el Municipio, Medical Educational and Health Services, Inc. ("**MEDHS**") y SISSO.  MCC se compromete y obliga con el Municipio a dar cumplimiento específico a todas las disposiciones del Contrato de Administración y del Contrato de Arrendamiento suscrito con MEDHS en 1 de septiembre de 2009.

Como parte de la descrita transacción, el Dr. Orestes Castellanos Rodríguez, el Sr. Pedro Montes y el Dr. Orlando Marini Román, estarán renunciando a sus puestos como miembros de la junta de directores de MEDHS y nombraran en su sustitución a aquellas personas a ser designadas por MMC.

-1-

Además de la suma de $5,000,000.00 a ser pagada al Dr. Marini por la adquisición de las Acciones, MMC se propone realizar una inversión inicial de capital en el Centro Médico, dentro de los primeros dieciocho (18) meses de su administración, en la suma aproximada de $6,000,000.00, la cual se desglosa de la siguiente manera: $4,000,000.00 para el establecimiento y operación de una unidad de radio-terapia; $1,000,000.00 para la compra del equipo y maquinaria necesaria para la instalación y operación de un laboratorio cardio-vascular invasivo y la suma de $1,000,000.00 para mejoras a realizarse a la sala de emergencia [mejoras físicas y compra e instalación de nuevos equipos].

Similarmente y dentro de los primeros veinticuatro (24) meses de su administración del Centro Médico, MMC se propone realizar aquellas otras inversiones de capital que resulten pertinentes para llevar a cabo las mejoras necesarias a la planta física del Centro Médico y para adquirir e instalar aquellos modernos equipos y maquinarias, que le permitan operar el mismo como un "hospital general" y que le permitan atraer a nuevos médicos que se obliguen a utilizar las facilidades médico-hospitalarias del Centro Médico para hospitalizar a sus respectivos pacientes; incluyendo el que se instalará un nuevo y moderno laboratorio clínico y se habilitarán por lo menos 200 camas adicionales a las 100 camas actualmente en utilización.

A partir del día 31 de diciembre de 2009, MMC asumirá el pago de la nómina de empleados del Centro Médico y de todas aquellas otras deudas incurridas por SISSO dentro y/o como parte del normal proceder de negocios de su previa operación y administración del Centro Médico.

En adición a la relacionada inversión económica en mejoras de capital al Centro Médico, MMC utilizará una línea de crédito comercial, en la suma de $3,000,000.00, para la operación y administración diaria de los asuntos de negocios del Centro Médico; lo que permitirá y garantizará que todas las futuras obligaciones económicas de SISSO relacionadas a la operación del Centro Médico, incluyendo el pago de la nómina de sus empleados y de los cánones de arrendamiento al Municipio, puedan ser pagadas al vencimiento de las mismas.

Una vez MMC adquiera el control corporativo de SISSO y de MEDHS, causará que SISSO y/o MEDHS proceda(n) a pagar al Municipio, en o antes del transcurso de noventa (90) días, contados a partir de la fecha en que el Municipio expida las autorizaciones objeto de esta carta, la suma de $150,000.00 que actualmente le adeuda MEDHS al Municipio por concepto de cánones de arrendamiento atrasados.

Con el propósito de poder afrontar y disponer responsablemente de todos los compromisos de pagos que actualmente le adeuda SISSO a sus diferentes acreedores, incluyendo al Municipio, mediante la presente se le solicita al Municipio una **moratoria** de seis (6) meses, libre de intereses, del pago de cánones de arrendamiento. En o antes del día 1 de septiembre de 2010, SISSO le pagaría al Municipio, libre de intereses, la totalidad de los cánones de arrendamiento objeto de la moratoria; cuando entonces vendrá también obligada a continuar pagando los cánones de arrendamiento prospectivos en sus fechas de vencimiento según dispuesto en la cláusula número 5.1 del Contrato de Administración.

La meta de MMC, es la de proveerle a los residentes del Municipio de Mayagüez y pueblos limítrofes, un servicio médico-hospitalario completo, de la mejor calidad y excelencia,

al menor costo posible. Una vez MMC obtenga el control corporativo de SISSO y, consecuentemente, el control, operación y administración del Centro Médico, realizará y llevará a cabo, con la mayor diligencia y el más serio compromiso corporativo, todas aquellas inversiones de capital adicional, labores, mejoras a la planta física del Centro Médico y gestiones empresariales en general, que resulten necesarias encaminadas a mejorar y aumentar de manera real, sustancial y palpable, los servicios médico-hospitalarios que ofrece el Centro Médico.

Finalmente, una vez MMC adquiera el control, operación y administración del Centro Médico, realizará y llevará a cabo, a su costo y cargo, con la mayor diligencia posible, todas aquellas labores y gestiones necesarias para dar cumplimiento específico a los hallázgos, recomendaciones y directrices objeto del más reciente informe del Joint Commission, para asegurar la acreditación médica del Centro Médico.

En atención a todo lo anterior y en cumplimiento con las disposiciones de las cláusulas número 11.6 y 11.7 del Contrato de Administración, mediante la presente MMC, MEDHS y SISSO solicitan la autorización del Municipio para la venta, cesión y transferencia de las Acciones. Similarmente, a tenor con las disposiciones de las cláusulas número 5.2 y 14.8 , mediante la presente MMC, MEDHS y SISSO solicitan del Municipio autorice la relacionada moratoria al pago de cánones de arrendamiento.

De tener usted cualquier duda, pregunta o sugerencia con relación al contenido de esta carta, por favor no vacile en comunicarse con nosotros a su mejor conveniencia.

Sin otro particular al cual referirme y confiado en que le brindará a este asunto su más pronta atención, quedo de usted,

Cordialmente,

Kermit Ortiz Morales

CONFORME y AUTORIZADO:

Hon. José G. Rodríguez Rodríguez, en representación del Municipio de Mayagüez

28-Dic. 2009.
Fecha

-3-



HATO REY TITLE INSURANCE AGENCY, INC

[address lines unclear]
[unclear]
[unclear]

TELEPHONE: (787) 274-1250
FAX: (787) 753-5081
FAX: (787) 759-8055

09-30662

CLIENTE:                QUIÑONES & SANCHEZ PSC

SOLICITADO POR:         DAGMAR FERNANDEZ

FINCA:                  4,007 INSCRITA AL FOLIO MOVIL 1497 DE MAYAGUEZ,
                        REGISTRO DE MAYAGUEZ, INSCRIPCIÓN 1ª

DESCRIPCION

RUSTICA: Parcela de terreno de forma irregular sita en el Barrio Sábalos de Mayagüez, con
cabida superficial de 49,361 cuerdas equivalentes a 194088.8080 metros cuadrados, luego
de mensura realizada por el Ingeniero Alex Horacio Robles, licencia # 11747 proyecto # 99-
59 cuyo plano certificado se acompaña y haze forma parte de la presente con las siguientes
colindancias: por el NORTE, desde el punto 54 hasta el punto 63 del plano de mensura; en
650.8577 metros cuadrados con la Urbanización Vista Verde, ESTE, en distintos rumbos y
colindancias, desde el punto 63 hasta el punto # 1 del plano de mensura en 559.1968 metros
cuadrados con el Mayagüez By Pass; también conocido como Hostos Avenue; SUR, en un
solo rumbo y colindancia desde el punto # 1 al punto # 2 en 17.2439 metros cuadrados con
Gasolinera Esso; OESTE, en distintos rumbos y colindancias desde el punto # 2 hasta el
punto # 54 en 1052.8884 metros cuadrados con Residencial Sábalos Gardens, Residencial
Sábalos Anexos y la Urbanización del Oeste

Enclavan distintos edificios con sus usos y pertenencias incluyendo equipos y materiales
medicos, así como equipo, materiales y muebles de oficina que se mencionan de la siguiente
manera.  Los siguientes edificios serán dedicados y utilizados a Hospital en un área
superficial de 460.236 pies cuadrados en esta finca que se describe; (a) Edificio identificado
como de rehabilitación vocacional; (b) Edificio identificado como edificio de salud mental;
(c) Edificio identificado como comercio; (d) Edificio identificado como residencia; y (e)
Edificio identificado como antiguo lounge.

TRACTO: Se forma por agrupacion de las fincas 13881, 13882, 13883, 13864, 13885, 13886,
13886, 13887, 13888 y 13889, inscritas al folio movil 1451 de Mayagüez.

DOMINIO

Consta inscrita a favor de El Municipio de Mayagüez, quien adquiere el dominio de esta
propiedad por compra al Estado Libre Asociado de Puerto Rico, por precio de $16,500,000.00,
según consta de la Escritura # 2 otorgada el 13 de septiembre del 2000 ante el notario José S.
Dubocq Thompson, e inscrita al folio movil 1497 de Mayagüez, inscripción 1ª y finca

GRAVAMENES:

[unclear]

Libros de embargos estatales y federales, sentencias y bancata electrónica hasta el Asiento 1500
del Diario 541 de Mayagüez a 13 de agosto del 2009, hoy 17 de agosto de 2009.

INTMV/mv   HP10/jpg

# ANEJO E

# PLANO "AS BUILT" DEL CENTRO MEDICO

# ANEJO F

## AREA APROXIMADA DE ALGUNOS DE LOS

## BIENES INMUEBLES ARRENDADOS



Anejo F – Área Aproximada de Algunos de los Bienes Inmuebles Arrendados

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

Cabida aproximada de las áreas del edificio principal del Hospital Dr. Ramón E. Betances, la cual incluye Centro Pediátrico, área de Administración Regional, anfiteatro y la nueva estructura del Acelerador Lineal.

| Áreas | Pietaje (pies cuadrados) |
|---|---|
| Piso 1 | 128,741.25 |
| Piso 2 | 30,980 |
| Piso 3 | 36,500 |
| Piso 4 | 33,300 |
| Piso 5 | 27,900 |
| Piso 6 | 27,900 |
| Sótano | 177,458.75 |
| Azotea | 4,200 |
| Sub-Sótano | 2,121 |
| Estacionamientos | |
| **TOTAL** | 469,101 |

A continuación se detallan las colindancias de las varias secciones del edificio principal del Hospital Dr. Ramón E. Betances, en orden de sur a norte comenzando por el Anejo Mecánico, el extremo sur del edificio:

*Anejo Mecánico*

- Norte (N) – Edificio Principal
- Sur (S) – Área Asfaltada / Calle que rodea el complejo
- Este (E) – Área de Estacionamientos Principal / Avenida Hostos
- Oeste (O) – Área Asfaltada / Calle que Rodea Complejo / Quebrada Canalizada

*Edificio Principal*

- N – Emergencias / Oficina Regional
- S – Anejo Mecánico
- E – Área de Estacionamientos Principal / Avenida Hostos
- O – Edificio Oncológico / Residencia de Enfermeras

*Emergencias*

- N – Gazebo
- S – Edificio Principal
- E – Área de Estacionamientos Principal / Avenida Hostos

- O – Oficina Regional / Área de Máquinas

## Oficina Regional

- N – Escuela de Enfermería
- S – Edificio Principal
- E – Gazebo / Emergencias
- O – Área de Máquinas

## Escuela de Enfermería

- N – Área de Estacionamiento Secundario / Calle que Rodea Complejo
- S – Oficina Regional / Área de Máquinas
- E – Generador / Área de Estacionamientos Principal / Avenida Hostos
- O – Área de Juegos

Separado del edificio principal del Hospital Dr. Ramón E. Betances y localizado al oeste de la sección identificada en el Plano como *Edificio Principal* está el *Edificio Oncológico*, el cual se describe a continuación

## Edificio Oncológico

- N – Tanques de Oxígeno
- S – Tanques de Gas / Carretera que Rodea Complejo
- E – Edificio Principal
- O – Cancha / Departamento de Salud

ANEJO G

BIENES INMUEBLES OCUPADOS POR OTROS

INQUILINOS DEL CENTRO MEDICO

Anejo G – Bienes Inmuebles Ocupados por Otros Inquilinos del Centro Médico

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

**Descripción de Bienes Inmuebles Ocupados por Otros Inquilinos del Centro Médico**

### Centro de Rehabilitación Vocacional

- Localizado al sudeste del Anejo Mecánico, cruzando la Quebrada Canalizada.
- Norte (N) – Quebrada Canalizada
- Sur (S) – Área Asfaltada / Residencial Público Sabalos
- Este (E) – Avenida Hostos
- Oeste (O) – Residencial Público Sabalos

### Departamento de Salud

- Localizado al oeste del Edificio Oncológico
- N – Estacionamiento de Residencia de Enfermeras / Residencia de Enfermeras
- S – Alero / Calle que Rodea Complejo
- E – Cancha / Edificio Oncológico
- O – Calle que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

### Residencia de Enfermeras

- Localizado al oeste del Edificio Principal
- N – Residencia de Médicos
- S – Departamento de Salud
- E – Edificio Principal
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

### Residencia de Médicos

- Localizado al oeste de la Oficina Regional
- N – Área Abierta / Residencia de Enfermeras y Estudiantes de Enfermería
- S – Residencia de Enfermeras
- E – Área Abierta / Oficina Regional
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

### Residencia de Enfermeras y Estudiantes de Enfermería

- Localizado al noroeste de la Escuela de Enfermería
- N – Carretera que Rodea Complejo
- S – Área Abierta / Residencia de Médicos
- E – Estacionamiento Secundario / Carretera que Rodea Complejo
- O – Carretera que Rodea Complejo / Área de Estacionamiento que Contiene Helipuerto

# ANEJO H

## LISTA DE ESTADISTICAS A SER SOMETIDAS EN

## LOS INFORMES MENSUALES

Municipio Autónomo de Mayagüez
Contrato de Administración y Operación del
Hospital Dr. Ramón E. Betances

**Estadísticas Mensuales**

1. Análisis de las cuentas a cobrar de pacientes

2. Análisis de las reservas para cuentas incobrables

3. Inventarios

4. Detalle de equipos capitalizados, los retirados de los libros y de los que no están en uso.

5. Detalle de mejoras capitalizadas – mejoras extraordinarias

6. Desglose de las cubiertas de seguros

7. Ingresos por servicios a pacientes (Inpatient, Outpatient and Totals)

8. Provisiones de los ajustes contractuales y otros ajustes

9. Detalle de otros ingresos (i.e. Employee and guest meals, Rental Income, Miscelaneous, etc.)

10. Detalle de nómina y servicios prestados de enfermeras, incluyendo gastos por contrato de servicios profesionales de enfermeras y cualquier gasto de per diem (i.e. Administrative, Medical and Surgical and Obstetric, Critical Care Unit, Long Term Care, Operating and Recovery Rooms, Central Supply, Emergency Services, etc.)

11. Detalle de otros servicios profesionales (i.e. Laboratory and Blood Bank, Electrocardiology, Radiology, CT Scans, Magnetic Reasonance Imaging, Pharmacy, anesthesiology, Respiratory Therapy, Physical Therapy, Occupational Therapy, Physicians Clinic, Medical Records, Quality Assurance, etc.)

12. Detalle de gastos de servicios generales (i.e. Dietary, Plant Operation and maintenance, Bio-Medical, Housekeping, Laundry and Linen, etc.)

13. Detalles de gastos administrativos y gastos sin asignar

14. Estado comparativo de ingresos y gastos con años anteriores

15. Estado comparativo de ingresos y gastos con el presupuesto

16. Informe de estadísticas comparadas con periodos anteriores. (i.e. Patient days, Admissions, Discharges, Average Length of Stay, Beds, Occupancy Percent, Net Patient Revenue per Calendar Day, etc.)

17. Informe de estadísticas comparados de producción por área de servicio (i.e. Patient days, Admissions, Discharges, Samples sent to Laboratory, X-Rays taken, Diets Served, Visits to Emergency Room, etc.)

# ANEJO I

# ESTADOS FINANCIEROS PROYECTADOS

ANEJO J

DECLARACION JURADA EN CUMPLIMIENTO

DE LA LEY NUM. 428

Anejo J – Declaración Jurada en Cumplimiento de la Ley Núm. 428

## DECLARACIÓN JURADA EN CUMPLIMIENTO
## DE LA LEY NÚM. 428
### DE 22 DE SEPTIEMBRE DE 2004

Contrato para la Administración y Operación del Hospital Dr. Ramón E. Betances del Centro Médico
de Mayagüez

Yo, Antonio José Santos Prats, mayor de edad, casado, abogado y residente de Guaynabo, Puerto
Rico, declaro bajo juramento en calidad de representante legal de MMC que, según mi mejor
conocimiento y creencia, las declaraciones expresadas adelante son ciertas y correctas:

1. Mis circunstancias personales son las expresadas anteriormente.

2. Soy el representante legal de MMC y tengo la capacidad y la autoridad para firmar esta
   declaración.

3. Ni MMC ni ninguno de sus oficiales o directores ha sido convicto o se ha declarado culpable
   de ninguno de los delitos identificados en el Artículo 3 de la Ley Núm. 428 de 22 de
   septiembre de 2004.

En _Mayagüez_, Puerto Rico, a _29_ de _enero_ de 2010.

Afidávit Núm. 3344

Jurado y suscrito ante mí por Antonio José Santos Prats, mayor de edad, casado, abogado y vecino de
Guaynabo, Puerto Rico, a quien conozco personalmente.

En _Mayagüez_, Puerto Rico, a _29_ de _enero_ de 2010.





*Estado Libre Asociado de Puerto Rico*
*Municipio de Mayagüez*
*Oficina del Alcalde*



1 de febrero de 2010

Lcdo. Antonio Santos
Mayagüez Medical Center – Dr. Ramón E. Betances, Inc.
PO Box 1142
Manatí, Puerto Rico 00674

Estimado licenciado Ortiz:

Recibimos su comunicación de 29 de enero de 2010 a nombre de Mayagüez Medical Center – Dr. Ramón E. Betances, Inc. (en adelante, "MMC"). En dicha comunicación MMC nos notifica que necesita contratar a Sistemas Integrados de Salud del Suroeste, Inc. (en adelante, "SISSO") con el propósito de llevar a cabo el proceso de transferencia de las licencias de operación del Hospital Dr. Ramón E. Betances (en adelante, el "Hospital").

En cumplimiento con lo establecido en el Artículo 11.2 del Contrato de Administración y Operación del Hospital, MMC le solicita al Municipio que evalúe y autorice la propuesta contratación de SISSO. Luego de un análisis ponderado de su petición, hemos decidido autorizar que MMC otorgue un acuerdo con SISSO, sujeto a que su único fin sea lograr la transferencia coordinada de las licencias.

Le recordamos que el contrato entre MMC y SISSO deberá regirse estrictamente por los términos y las condiciones que gobiernan la relación entre MMC y el Municipio.

Atentamente,

José G. Rodríguez
Alcalde

PCL XL error

Warning: IllegalMediaSource

Exhibit 30

 

# LCDO. HARRY N. PADILLA MARTINEZ
### APARTADO 2131
**MAYAGÜEZ, PUERTO RICO 00681-2131**
**TEL. 787 834-4140 / FAX 787 265-6190**

1 de febrero de 2010

José G. Rodríguez Rodríguez, Alcalde
Municipio de Mayagüez
Apartado 447
Mayagüez, Puerto Rico 00681 – 0447

Estimado señor Alcalde Rodríguez:

El propósito de la presente es uno dual. Primeramente deseo extenderle un cordial saludo y en segundo aspecto, le escribo en mi carácter de representante legal del Dr. Orestes Castellanos y Medical Education and Health Services, Inc.

La pasada semana mi representado recibió una misiva que usted le enviara fechada el 28 de enero y relacionada con la terminación del contrato para la operación y administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayagüez.

Mediante la presente le informo que mis representados recibieron la referida carta. Sin embargo, no aceptan el contenido de la misma. Claramente mis clientes no han incurrido en incumplimiento alguno, y si en algo no se ha cumplido a cabalidad, ello se debe a la culpa y/o negligencia del Municipio de Mayagüez, el Dr. Orlando Marini y Sistemas Integrados de Salud del Suroeste, Inc. Recuerde que lo que surgió en el contrato que se firmó el 27 de agosto de 2009, fueron obligaciones recíprocas. Por tanto, el Municipio no puede reclamar cumplimiento, cuando han incumplido la mayoría de las mismas.

Mis clientes se reservan el derecho a reclamar judicialmente, no solamente el cumplimiento específico del contrato, sino todos aquellos daños que la acción del Municipio y de terceras personas le hayan ocasionado.