Le exhorto a que como primer mandatario del Municipio de Mayagüez reevalúe el contenido de la misiva del 28 de enero y notará que en realidad, la acción intimada sobre terminación de contrato es improcedente en derecho.

Mis clientes están en la mejor disposición de continuar conforme al contrato siempre y cuando todo el mundo cumpla sus respectivas obligaciones.

Sin nada más por el momento y esperando que se deje sin efecto la carta del 28 de enero, se despide de usted,

Cordialmente,

LCDO. HARRY N. PADILLA MARTINEZ

HPM/mpv

Exhibit 31

# PIETRANTONI MENDEZ & ALVAREZ LLP

BANCO POPULAR CENTER · 19TH FLOOR
209 MUÑOZ RIVERA AVENUE
SAN JUAN, PUERTO RICO 00918
SWITCHBOARD (787) 274-1212

ANTONIO J. SANTOS
PARTNER
(787) 274-4917

TELECOPIER (787) 274-1470
ELECTRONIC MAIL
ASantos@PMALAW.COM

16 de febrero de 2010

**POR MENSAJERO**

Lcda. Iris J. Vázquez Rosario
Secretaria Auxiliar para la Reglamentación y
Acreditación de Facilidades de Salud
Antiguo Hospital Ruiz Soler
Bayamón, PR 00959

**Re: Aviso de Cambio de Control del Hospital Dr. Ramón E.
Betances del Centro Médico de Mayagüez y petición de
traspaso o expedición de licencias nuevas**

Estimada señora Vázquez:

En representación de nuestro cliente, Mayaguez Medical Center
- Dr. Ramón Emeterio Betances, Inc. ("MMC"), le notificamos que
efectivo el 3 de febrero de 2010, Sistemas Integrados de Salud del
Sur Oeste, Inc. ("SISSO"), entidad que actualmente administra el
Hospital Dr. Ramón E. Betances de Mayagüez (el "Hospital"), se
convirtió en una subsidiaria de MMC. En esa fecha, MMC adquirió la
totalidad de las acciones emitidas y en circulación de SISSO y,
como resultado de esa transacción, ocurrió un cambio del control
corporativo de SISSO y dicha entidad pasó a ser una subsidiaria de
MMC.

Además, el 29 de enero de 2010, MMC entró en un contrato con
el Municipio de Mayagüez para arrendar, administrar y operar el
Hospital y subcontrató a SISSO para llevar a cabo esas funciones a
fin de evitar cualquier interrupción en los servicios que presta el
Hospital a los pacientes del área oeste de la Isla. De esta forma
SISSO puede seguir operando y administrando el Hospital bajo las
licencias y permisos que posee para prestar esos servicios. El
nombre del Hospital no cambiará como resultado de estas
transacciones y el personal de SISSO continuará realizando las
mismas tareas de siempre. Por el momento, no habrá ningún cambio en
la organización, ubicación, instalaciones, equipos o procedimientos
del Hospital, que no sea el cambio del control corporativo que se
indica anteriormente.

Previó a la firma de los acuerdos que se describen anteriormente, el Municipio de Mayagüez dio por terminado el Contrato para la Operación y la Administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayagüez de 29 de agosto de 2009 que había firmado con Medical Educational and Health Services, Inc. con relación a esta facilidad hospitalaria.

El propósito de esta notificación a la Secretaria Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS) es para que tome conocimiento de los hechos que se indican en esta carta en cuanto al cambio del control corporativo de SISSO. Además, en cuanto a las licencias y permisos que posee SISSO para operar y administrar el Hospital, solicitamos que SARAFS proceda a emitir o transferir dichas licencias para reconocer que MMC asumió el control corporativo de SISSO, según lo que SARAFS considere apropiado en este caso. Incluimos con esta carta copias de las licencias existentes de SISSO para facilitar su referencia a las mismas.

Esta notificación se hace en cumplimiento con los requisitos del Reglamento del Secretario de Salud número 117 para Reglamentar el Licenciamiento, Operación y Mantenimiento de los Hospitales en el Estado Libre Asociado de Puerto Rico (el "Reglamento"). El Reglamento establece que en caso de un cambio del control corporativo de un tenedor de licencia bajo dicho Reglamento se deberá expedir una nueva licencia o un traspaso de la existente para reflejar dicho cambio de control.

Agradeceré me informe si existe algún requisito adicional a esta notificación que deba cumplir mi cliente para darle curso a esta solicitud en cuanto a las licencias de SISSO.

Atentamente,

Antonio J. Santos

Anejos

c.   Hon. José Guillermo Rodríguez Rodríguez
     José L. Quirós
     Ledo. Jorge Galva

Exhibit 32

## CONTRATO DE ARRENDAMIENTO

**DE UNA PARTE:** MEDICAL EDUCATION AND HEALTH SERVICES, INC. (De ahora en adelante MEDHS), una corporación sin fines de lucro creada bajo la Ley General de Corporaciones del Estado Libre Asociado de Puerto Rico, Número de Seguro Social Patronal 66-0660473, con oficinas en Mayagüez, Puerto Rico, representada en este acto por su Presidente, Dr. Orestes Castellanos Rodríguez, mayor de edad, casado, médico y vecino de Mayagüez, Puerto Rico, autorizado para suscribir el Contrato, capacidad representativa que está dispuesto demostrar cuando y donde fuere menester.------------------------------------------------------------------------

**DE LA OTRA PARTE:** Sistemas Integrados de Salud del Sur-Oeste, Inc. (de ahora en adelante SISSO), una corporación con fines de lucro, dedicada a la Administración de Servicios de Salud, creada bajo la Ley General de Corporaciones del Estado Libre Asociado de Puerto Rico, Número de Seguro Social Patronal   66-0715098, con oficinas en Mayagüez, Puerto Rico, representada por su Presidente, el Dr. Orlando Marini Román, mayor de edad, soltero, médico y vecino de Mayagüez, Puerto Rico, autorizado para suscribir el Contrato, capacidad representativa que está dispuesto demostrar cuando y donde fuere menester.------------------------------------ ----------

------------------------------------------**EXPONEN**------------------------------------

**PRIMERO:** MEHDS suscribió un contrato con el Municipio de Mayagüez el XX de XX de 2008 para el arrendamiento de las facilidades denominadas Centro Médico de Mayagüez, Hospital Ramón Emeterio Betances y que se hace formar parte de este contrato como Anejo A.----------------------------------------------------

**SEGUNDO:** Las partes aquí comparecientes manifiestan tener pleno conocimiento del Contrato y de todos sus términos y condiciones y al que se hizo referencia en el inciso anterior   Aceptan igualmente que este contrato de Arrendamiento y administración será regido por las cláusulas y condiciones del mismo.-------------------

**TERCERO:** EL MEDHS, transfiere y da en arrendamiento a SISSO, los edificios, los equipos y demás propiedades muebles e inmuebles que se describen en el Anejo 1 que forma parte de este Contrato (en adelante la Propiedad Arrendada), como todas las actividades y negocios de prestación de Servicios Médicos que llevaba en la misma el Departamento de Salud en el pasado.------------------------------------------

**CUARTO:** MEDHS representa y garantiza a SISSO que posee los bienes dados en arrendamiento mediante este Contrato que corresponde a las facilidades del Centro Médico de Mayagüez Dr. Ramón Emeterio Betances. Que la propiedad a ser arrendada y sujeta en el presente Contrato equivale a la facilidad médico-hospitalaria equivalente a CUATROCIENTOS SESENTA Y NUEVE MIL CIEN PIES CUADRADOS (469,100 p/c), incluyendo los seis pisos del Edificio Principal, las áreas verdes y estacionamientos aledaños.------------------------------------------------

**QUINTO:** SISSO certifica que a la Fecha de Efectividad ésta no tiene litigios pendientes contra el Estado Libre Asociado de Puerto Rico, sus corporaciones públicas o sus municipios.------------------------------------------------------------------

**SEXTO:** SISSO y sus accionistas aseguran que no tienen deuda atrasada o pendiente con el Departamento de Hacienda Estatal o Federal, con el Fondo del Seguro del Estado, Segura por Desempleo, Departamento del Trabajo y Recursos Humanos, Departamento de Salud y el Municipio de Mayagüez. Si hay alguna deuda, garantiza que ésta está sujeta a un plan de paga aprobado par la Entidad Gubernamental correspondiente y SISSO, sus oficiales, directores o empleados gerenciales, según sea el caso, que están cumpliendo estrictamente con el cualquier plan de pago existente. ------------------------------------------------------------------

**SÉPTIMO:** SISSO y sus accionistas aseguran que han rendido, según le corresponda, los Informes y Planillas correspondientes que las leyes y reglamentos vigentes aplicables le imponen ante las instrumentalidades y agencias públicas, sean estas municipales, estatales o federales para los CINCO (5) años inmediatamente anteriores. Igualmente reconoce que cualquier informe ofrecido en vías de otorgamiento de Contrato, de no ser cierto, se considerará como violación a una condición esencial de éste, por lo que el Contrato sería terminantemente nulo.--------

**OCTAVO:** SISSO certifica que ni ella ni sus oficiales tienen Deudas Contributivas que estén siendo revisadas o sujetas a ajustes par el Departamento de Hacienda. En el evento que SISSO o sus oficiales tengan Deudas Contributivas que estén siendo revisadas o sujetas a ajuste por el Departamento de Hacienda, SISSO someterá informes trimestrales certificados por el Departamento de Hacienda describiendo el estado de los procedimientos; provisto, sin embargo, que SISSO acuerde que si dentro de treinta (30) días de emitido un determinación final administrativa SISSO

no ha pagado o acordado un plan de pago con respecto a una Deuda Contributiva que administrativamente se determine debida, MEDHS podría terminar inmediatamente el Contrato.------------------------------------------------------------

**NOVENO:** En cuanto a los **Intereses Económicos de Empleados Públicos.**

**SISSO certifica que:**

(a) a la fecha de otorgamiento, éste no tiene interés particular de ninguna forma que pudiera generar un conflicto de interés;

(b) no realizará ningún acuerdo que pudiera causar un conflicto de interés o un conflicto con la política pública del Municipio;

(c) ningún funcionario a empleado público con facultad para evaluar, considerar, aprobar, autorizar u otorgar un contrato en nombre del Municipio ha tenido, durante los últimos cuatro (4) años previos a comenzar las labores bajo su puesto, un interés pecuniario directo o indirecto en relación a SISSO o a cualquiera de sus subsidiarias o compañías afiliadas;

(d) ninguno de sus oficiales, directores, socios, agentes a empleados, o cualquier miembro de sus unidades familiares, según este término es definido en la Ley Núm. 12 de 24 de julio de 1985, ha ocupado un puesto público como funcionario o empleado del Estado Libre Asociado de Puerto Rico durante los dos (2) años previos a la Fecha de Efectividad; y

(e) a la Fecha de Efectividad, ningún funcionario o empleado público del Municipio ni miembros de las familias de éstos, según dicho término es definido en la Ley Núm. 12 de 24 de julio de 1985, ha tenido durante los últimos cuatro (4) años antes de asumir su cargo, un interés pecuniario directo o indirecto con relación a SISSO y que no sabe o conoce de ningún empleado del Municipio que sea parte a tenga interés alguno en las ganancias a beneficios del Contrato.

**DÉCIMO:** SISSO certifica y garantiza que, a la Fecha de Efectividad, ni SISSO ni ninguno de sus oficiales, directores o empleados a nivel gerencial, ha resultado convicto o se ha declarado culpable como resultado de un procedimiento criminal en una corte estatal o federal o de cualquier otra jurisdicción de los Estados Unidos de América o en cualquier otro país, de delitos constitutivos de fraude, malversación o apropiación ilegal de fondos públicos enumerados en el Artículo 3 de la Ley

Número 428 de 22 de septiembre de 2004. SISSO reconoce, entiende y acepta que esta certificación es una condición esencial del Contrato. Si esta certificación es falsa, ésta constituirá causa suficiente para que MEDHS termine inmediatamente el Contrato. El Presidente de SISSO también ha suscrito una declaración jurada a estos efectos, la cual se aneja como Anejo, de conformidad con la Ley Número 428 de 22 de septiembre de 2004.-------------------------------------------------------------

**UNDÉCIMO:** SISSO notificará inmediatamente al Municipio, Si SISSO y/o alguno de sus oficiales, directores a empleados gerenciales resultase convicto. El incumplimiento de SISSO con la obligación de notificar constituirá una violación de esta cláusula y podrá ser causa suficiente para que MEDHS termine inmediatamente el Contrato.-------------------------------------------------------------

**DUODÉCIMO:** Como condición para el otorgamiento del Contrato, SISSO someterá a MEDHS, en a antes de dicho otorgamiento y subsecuentemente en a antes de cada fecha de aniversario de éste, con respecto a sí misma y a sus oficiales:

(a) la certificación del Departamento de Hacienda sobre la presentación de planillas sobre contribución de ingresos (Forma SC 2888 a cualquiera otra adoptada par el Departamento de Hacienda para estos efectos) durante los últimos cinco (5) años fiscales;

(b) una certificación de deuda (Forma SC 3537 o cualquiera otra adoptado por el Departamento de Hacienda para estos efectos);

(c) certificaciones de deuda emitidas par el Centro de Recaudaciones de Ingresos Municipales (CRIM) con respecto a SISSO; y

(d) certificaciones del Departamento del Trabajo y Recursos Humanos de Puerto Rico concernientes a desempleo, incapacidad y seguro choferil, la Corporación del Fondo del Seguro del Estado y por los municipios correspondientes, según sea el caso.

**DÉCIMO TERCERO:** Si SISSO ha requerido las certificaciones mencionadas arriba pero no las ha recibido, SISSO someterá copias de la solicitud de éstas según sometidas ante la Entidad Gubernamental correspondiente, mostrando el sello oficial de dichas entidades, sujeto además a que dichas certificaciones sean sometidas no más tarde de treinta (30) días a partir de la fecha de efectividad a de la fecha de aniversario subsiguiente.-------------------------------------------------------------

**DÉCIMO CUARTO**: Antes del otorgamiento de este Contrato, SISSO presentará ante MEDHS evidencia de incorporación ante el Departamento de Estado del Estado Libre Asociado de Puerto Rico como corporación con fines de lucro.

**DÉCIMO QUINTO:** Antes del otorgamiento de este Contrato y subsecuentemente en o antes de cada fecha de aniversario de éste, SISSO habrá presentado ante MEDHS el Certificado de Buenapro ("Certificado de Good Standing").----------------

-----------------------------------------------------------------

**DÉCIMO SEXTO:** Al no ser compulsorio, SISSO queda liberada de presentar a la fecha del otorgamiento de este Contrato el certificado válido y efectivo emitido par la Administración de Servicios Generales evidenciando que SISSO está debidamente inscrito en el Registro Único de Licitadores.

**DÉCIMO SÉPTIMO:** Las partes han convenido el arrendamiento del local antes descrito, el cual llevan a efecto mediante las siguientes: ---------------------------------

-------------------------------CLÁUSULAS Y CONDICIONES--------------------------

**PRIMERA:** El término de este arrendamiento es de TREINTA (30) AÑOS, los cuales comenzarán a contar desde el 1 de septiembre de 2009 y terminará el 31 de agosto de 2039.-----------------------------------------------------------------------

El Arrendamiento será renovado automáticamente por un término adicional de TREINTA (30) AÑOS, a menos que ambas partes dispongan lo contrario, quedando claro que en este caso los términos y condiciones del Contrato de Administración entre MEDHS y el Municipio de Mayagüez (el "Contrato de Administración") prevalecerán inalterados, o por alguna razón haya concluido el contrato de arrendamiento principal entre el Municipio de Mayagüez y MEDHS.-------------------

**SEGUNDA:** El canon de arrendamiento será de OCHENTA Y TRES MIL TRESCIENTOS TREINTA Y TRES DÓLARES CON TREINTA Y TRES CENTAVOS ($83,333.33) mensuales, para un total de UN MILLÓN DE DÓLARES ($1, 000,000.00) anuales.------------------------------------------------

**TERCERA**: SISSO será responsable además de generar el capital para el mantenimiento de la operación del Centro Médico de Mayagüez. Por tal razón SISSO tendrá plena autonomía en la administración del Centro Médico de Mayagüez, Dr. Ramón Emeterio Betances.------------------------------------------------

**CUARTA:** SISSO poseerá, usará, administrará y operará los Bienes Arrendados en

calidad de Hospital General. SISSO ofrecerá los Servicios de Salud según los más altos estándares de la industria de hospitales y los términos del Contrato, al cual aplicarán las Cláusulas y Condiciones relevantes del Contrato de Arrendamiento principal, *supra*, incluido como Anejo A.-------------------------------------------------.

QUINTA: SISSO manejará todo arrendamiento (si alguno) de áreas, oficinas y departamentos, así como toda tienda, Cafetería, Estacionamiento y cualquier otro servicio que produzca ganancias (dentro del área conocida comúnmente como el Hospital).-----------------------------------------------------------------------------

SEXTA: SISSO será responsable de la administración de todos los Departamentos Clínicos y no clínicos, además de todos los Servicios de Apoyo del Hospital, y nombrará los Directores de todos los Departamentos. En los Departamentos Clínicos recibirá las recomendaciones de parte de los directivos de MEDHS y se escogerán aquellos facultativos que tengan todos los credenciales necesarios para mantener programas de entrenamientos acreditados, todo esto a tenor con lo estipulado en el Contrato Principal, *supra* y a las leyes y reglamentos que regulan la Industria de los Hospitales en Puerto Rico y las Políticas de MEDHS.------------------

SÉPTIMA: SISSO, por el término de la vigencia del contrato de arrendamiento y su prórroga antes mencionada, se compromete y se obliga con MEDHS a supervisar y administrar todos y cada uno de los servicios de salud que se ofrezcan en el Centro Médico Académico Dr. Ramón Emeterio Betances (en adelante Centro Médico).

OCTAVA: Durante la vigencia de este contrato de administración y subarrendamiento, SISSO hará o procurará que se haga todo lo que conforme a su exclusiva discreción y opinión, estime necesario y conveniente para el desarrollo, operación, mantenimiento y ofrecimiento de servicios médicos de excelencia en Centro Médico, pero sin alterar los términos y condiciones del contrato de arrendamiento entre MEDHS y el Municipio.-----------------------------------------------

NOVENA: SISSO queda expresamente autorizada a efectuar, por cuenta y riesgo de ésta, los arreglos económicos que sean necesarios para obtener, mediante el pago de los intereses que crea razonable, la cantidad de dinero que necesite para realizar los trabajos de operación, administración y desarrollo del Centro Médico. El capital para la operación del Centro Médico será provisto por SISSO, por lo que toda ganancia de la administración del Hospital y edificios mencionados en el Anejo I

será única y exclusivamente de SISSO.----------------------------------------------------------------

**DÉCIMA:** SISSO someterá a MEDHS, INC un plan para el desarrollo y uso de dichas áreas y edificios, el cual complementará y fortalecerá el desarrollo y operación del Hospital. Entre otros MEDHS, INC reconoce y acepta, como parte del desarrollo del Centro Médico, que es necesario que SISSO construya un edificio para oficinas médicas y un estacionamiento multipisos; además de desarrollar un área comercial con locales para Banco y un área para la venta de alimentos, entre otros.--------------------------------------------------------------------------------------------

**UNDÉCIMA:** SISSO se compromete en mantener el nombre de la propiedad arrendada bajo la denominación de Centro Médico Académico, Dr. Ramón Emeterio Betances, reconociendo que MEDHS, INC., podrá añadir una referencia adicional al nombre del Hospital que este relacionada con el logo y nombre de la Corporación.---

**DUO DÉCIMA:** SISSO tendrá derecho a reclamar y recibir los reembolsos de Medicare ("Direct Medical Education" e "Indirect Medical Education") por los servicios relacionados a Asuntos Pedagógicos y Académicos en cuanto a los residentes y a cualquier otro programa en donde practiquen académicamente profesionales de la salud, entendiendo que esos fondos cubren en parte el aumento en costos que traen los programas de entrenamiento----------------------------------------

**DÉCIMO TERCERA:** SISSO asegura que puede llevar a cabo todas las obligaciones que mediante este Contrato asume con MEDHS, INC., sin que viole ninguna Ley o Reglamento municipal, estatal o federal aplicable, para mejorar los servicios provistos por sus profesionales, para entrenamiento de profesionales y retención del personal hospitalario.----------------------------------------------------------

**DÉCIMO CUARTA:** SISSO proyecta convertir a Centro Médico de Mayagüez en una operación para que la Municipalidad y la Región de Mayagüez puedan lograr sus objetivos con relación a los Programas de Salud y los servicios especializados que requiere la región, los cuales son altamente compatibles con los de MEDHS. El proyecto será un modelo para el desarrollo de un Puerto Rico descentralizado en sus Servicios de Salud Terciarios que tan necesarios son en esta Región de la Isla. -------

**DÉCIMO QUINTA:** El capital para la operación del Centro Médico será privado y provisto por SISSO por lo que toda ganancia de la Administración del Hospital y edificios mencionados serian única y exclusivamente de SISSO.------------------------

**DÉCIMO SEXTA:** SISSO se compromete a obtener todos los Seguros necesarios para asegurar las operaciones realizadas en este arrendamiento, según se describen en el contrato entre MEDHS y el Municipio, *supra*.----------------------------------------

**DÉCIMO SÉPTIMA:** SISSO se compromete a asumir la responsabilidad y la defensa de toda situación *y/o* acto que invoque la intervención en foros judiciales, administrativos y legislativos en el ámbito estatal y federal, por lo que, SISSO liberará de toda responsabilidad legal y jurídica a MEDHS, y al Municipio de Mayagüez de toda situación ocurrida en la operación, funcionamiento, administración y predios relacionados con las facilidades aquí arrendadas.-------------

**DÉCIMO OCTAVA:** SISSO será responsable del pago por concepto de Energía Eléctrica, Agua, Teléfono y demás utilidades que, en el Contrato Principal, correspondería a MEDHS.-----------------------------------------------------------

**DÉCIMO NOVENA:** SISSO será responsable de asegurar a sus empleados y a todo el personal que preste servicios bajo este Contrato bajo la póliza con el Fondo del Seguro del Estado. Copia de la póliza del Fondo del Seguro del Estado se une y hace formar parte de este contrato.-------------------------------------------------

**VIGÉSIMA:** SISSO será responsable del mantenimiento preventivo del equipo rentado en virtud de este Contrato, el cual se ofrecerá conforme a las recomendaciones del manufacturero.--------------------------------------------

**VIGÉSIMA PRIMERA:** SISSO llevará a cabo, so pena de resolución de este contrato, la administración del Centro Médico de Mayagüez, Dr. Ramón Emeterio Betances, de acuerdo a las leyes y reglamentos, tanto municipales, estatales como federales, que rigen la Industria de la Salud así como por las Cláusulas y Condiciones relevantes del Contrato Principal entre MEDHS y el Municipio de Mayagüez, *supra*. -----------------------------------------------------------

**VIGÉSIMA SEGUNDA:** SISSO se compromete a promulgar y obedecer y hacer obedecer las Reglas y Reglamentos y Políticas de la Junta de Gobierno del Hospital, así como cumplir y hacer cumplir las disposiciones de las Reglas y Reglamentos y Políticas que la Facultad Médica en su día establezca. Además honrará las políticas de normas y procedimientos administrativas y de Facultad Médica diseñadas por MEDHS.--------------------------------------------------------------------

**VIGÉSIMA TERCERA:** Cualquier desvío de las sanas normas de Administración

y prestación de Servicios de Salud, de su Operación Fiscal y de la Administración en General por parte de SISSO, y/o cualquier desvío en los Servicios de Salud ofrecidos por las entidades que SISSO subcontrate o subarriende para prestar Servicios de Salud y/o administrativos en las áreas sujetas a este Arrendamiento o Contrato, conllevará que MEDHS declare incumplido el Contrato disolviendo el mismo inmediatamente.-------------------------------------------------------------------------

**VIGÉSIMA CUARTA:** SISSO garantiza y reconoce que todos los contratos relacionados con las otras entidades que presten servicios a esta en las áreas sujeta a este Arrendamiento y todas aquellas entidades y/o corporaciones que prestarán servicio junto a SISSO en las áreas arrendadas, todas quedaran obligadas y sujetas al alcance en vínculos obligacionales de las Cláusulas Contractuales aquí pactadas, y que cumplen con la política pública, la protección del interés público y todas las disposiciones expuestas en este Contrato y por la Administración Municipal del Municipio de Mayagüez. El no cumplimiento de estas condiciones y cláusulas conllevará la inmediata resolución de este Contrato.-------------------------------------

Las partes aceptan que han leído y entendido este contrato en su totalidad y manifiestan que están de acuerdo con el mismo según está redactado.----------------

**VIGÉSIMA QUINTA:** SISSO no cederá o transferirá sus derechos y obligaciones bajo este contrato, sin la autorización previa y por escrito de MEDHS. SISSO no podrá subcontratar los servicios que son objeto de este contrato sin la autorización previa y por escrito de MEDHS. Acordándose que el incumplimiento de esta disposición dejará sin efecto cualquier cesión o transferencia de este contrato o parte de éste a una tercera persona.-----------------------------------

**VIGÉSIMA SEXTA:** SISSO garantiza que todos los subcontratos que otorgue con terceras personas, naturales o jurídicas, para prestar servicios o proveer bienes dentro de los Bienes Inmuebles Arrendados (según descritos en el Contrato de Administración) obligarán a éstas en conformidad a los términos y condiciones del Contrato de Administración. Los subcontratistas de SISSO cumplirán con la política pública del Municipio, los términos de uso de los Bienes inmuebles Arrendados y Bienes Muebles Arrendados y cualquier otra disposición que le sea razonablemente aplicable bajo el Contrato de Administración. El incumplimiento de esta cláusula dejará sin efecto el contrato entre SISSO y el subcontratista.

**EN TESTIMONIO DE LO CUAL,** las partes aquí contratantes suscriben este Contrato se obliga así a cumplir con todas sus Cláusulas y Condiciones, hoy 1 de septiembre de 2009.

_____
Dr. Orestes Castellanos Rodríguez
Presidente
**Medical Education & Health Services Inc.**

_____
Dr. Orlando Marini Román
Presidente
**Sistemas Integrados de Salud del Sur-Oeste, Inc.**

Medical Education and Health Services Inc.
Contrato de Arrendamiento y Operación
del Hospital Dr. Ramón Emeterio Betances

Cabida aproximada de las áreas del edificio principal del Hospital Dr. Ramón Emeterio Betances, la cual incluye áreas de Administración Regional, Anfiteatro, Anejo Mecánico y Emergencias. No se incluye en este anejo algunas aéreas del edificio de emergencias que constituyen lo que actualmente es la Sala Estabilizadora y lo que será el Centro de Traumas, ni el Departamento de Radio Oncología (Edificio Oncológico) los cuales no forman parte de los acuerdos negociados entre MEDHS Y SISSO.

| Áreas | Pietaje Aproximado |
|---|---|
| Piso 1 | 118,741.25 |
| Piso 2 | 30,980 |
| Piso 3 | 36,500 |
| Piso 4 | 33,300 |
| Piso 5 | 27,900 |
| Piso 6 | 27,900 |
| Sótano | 177,458.75 |
| Azotea | 4,200 |
| Sub-Sótano | 2,121 |
| Estacionamientos | |
| Total | 459,101 |

A continuación se detallan las colindancias de las varias secciones del edificio principal del Hospital Dr. Ramón Emeterio Betances en orden de sur a norte comenzando por el anejo mecánico, en el extremo sur del edificio.

Anejo Mecánico

Norte-Edificio Principal
Sur-Área Asfaltada/Calle que rodea el complejo
Este-Área de Estacionamientos Principal/ Avenida Hostos
Oeste-Área asfaltada/ Calle que rodea complejo/ Quebrada canalizada

Edificio Principal

Norte-Emergencias/ Oficina Regional
Sur-Anejo Mecánico
Este-Área de Estacionamiento Principal/Avenida Hostos
Oeste-Edificio Oncológico/Residencia de Enfermeras

Emergencias

Norte-Gazebo
Sur-Edificio Principal
Este-Área de Estacionamientos Principal/ Avenida Hostos
Oeste-Oficina Regional/Área de Máquinas

Oficina Regional

Norte-Escuela de Enfermería
Sur-Edificio Principal
Este-Gazebo/Emergencias
Oeste-Área de Máquinas

Exhibit 33

## SUB-ADMINISTRATION AGREEMENT

SUB-ADMINISTRATION AGREEMENT, made as of the 1st day of February, 2010 by and between Mayaguez Medical Center – Dr. Ramón Emeterio Betances, Inc., a Puerto Rico corporation (the "Administrator" or "MMC") and Sistemas Integrados de Salud del Sur Oeste, Inc., a Puerto Rico corporation (the "Sub-Administrator" or "SISSO").

## WITNESSETH:

WHEREAS, the Municipality of Mayaguez (the Municipality") has entered into a "Contrato para la Operación y Administración del Hospital Dr. Ramón E. Betances del Centro Médico de Mayaguez" (the "Agreement") of even date herewith granting to the Administrator the rights to lease and manage the "Hospital Dr. Ramón E. Betances del Centro Médico de Mayaguez (the "Hospital"), and MMC has been authorized and empowered by the Municipality to subcontract on a temporary basis certain of its duties and obligations under the Agreement; and

WHEREAS, MMC desires to retain the Sub-Administrator as the current operator and licensee of the Hospital for certain sub-administrative services to be provided for the Hospital, and the Municipality has consented to such delegation, and the Sub-Administrator has full capacity and is willing to furnish such services on a temporary basis based on the terms and conditions hereinafter set forth.

NOW, THEREFORE, the parties hereto agree as follows:

1.    Appointment and Acceptance.    The Administrator hereby appoints the Sub-Administrator to provide the services set forth below, for the period and on the terms set forth in this Agreement. The Sub-Administrator hereby accepts such appointment and agrees during such period to render the services herein described and to assume the obligations herein set forth, for the compensation herein provided. Anything herein to the contrary notwithstanding, throughout the term of this Agreement, the Administrator shall retain such authority and control over the business, policies, operation and assets of the Hospital that is consistent with the terms of the Agreement.

2.  <u>Sub-Administrative Services</u>. Subject to the supervision of the Administrator, the Sub-Administrator shall manage the Hospital pursuant to the terms and conditions of the Agreement and provide the personnel and services required from MMC under the Agreement with respect to the Hospital.

During the term of this Sub-Administration Agreement, the Sub-administrator agrees to provide the Administrator with such advice and information as it may require relating to the Hospital and hold itself available to respond to inquiries of the Administrator or the Municipality. The Sub-administrator further agrees to assist and give support to the Administrator in the implementation of the Agreement.

All services under this Sub-Administration Agreement are to be furnished through the medium of any directors, officers or employees of the Sub-Administrator as the Sub-Administrator deems appropriate in order to fulfill its obligations hereunder. The Sub-Administrator hereby agrees that all records which it maintains for the Hospital are the property of the Administrator and further agrees to comply with all legal requirements with respect to such records and to surrender promptly to the Administrator any of such records upon the Administrator's request. The Sub-Administrator hereby agrees to provide the services set forth above on a timely fashion in order to permit the Administrator to comply with its obligations to the Municipality under the Agreement.

3.  <u>Confidentiality</u>. The Sub-Administrator shall keep confidential all documents, materials and other information relating to the activities of the Hospital, not use any of such documents, materials and information for the benefit of any party other than the Administrator and the Hospital, and not disclose any of such documents, materials and information to any party other than the Hospital, its auditors and the Municipality; <u>provided</u>, <u>however</u>, that the Sub-Administrator may disclose any of such documents, materials and information to other parties (i) if and to the extent the Sub-Administrator is required to do so by order of a court of competent jurisdiction or other government agency having appropriate authority, and (ii) to the extent any of such documents,

materials and information are made public by means other than a breach by the Sub-Administrator of its obligations hereunder.

4.    Expenses.  The Sub-Administrator agrees to pay all its own expenses incurred in connection with this Sub-Administration Agreement from the income generated from the operation of the Hospital or capital to be provided by the Administrator.  The expenses to be paid by the Sub-Administrator from the income of the Hospital include the rent, if any, required to be paid by MMC to the Municipality under the Agreement.

5.    Sub-Administration Fees. The Administrator agrees to pay the Sub-Administrator a fee of $1,000 per month for the services provided under this Agreement.  The Sub-Administrator shall not receive, either from MMC or directly from the Municipality, any other fee or compensation for the services provided under this Sub-Administration Agreement.  All income generated from the operation and management of the Hospital, after paying all expenses related to said operation, shall be paid promptly to MMC as a fee for entering into this Agreement with the Sub-Administrator.

6.    Representations and Warranties.

A.    The Administrator hereby represents and warrants to the Sub-Administrator that:

1.    The Administrator is a duly organized and validly existing corporation organized under the laws of the Commonwealth of Puerto Rico;

2.    The execution, delivery and performance of this Agreement by the Administrator and its obligations hereunder do not violate any federal laws, rules or regulations or any laws, rules or regulations of the Commonwealth of Puerto Rico; and

3.    The execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action of the Administrator and this Agreement is the

legal, valid and binding obligation of the Administrator, enforceable against the Administrator in accordance with its terms.

      B.     The Sub-Administrator hereby represents and warrants to the Administrator that:

      1.     The Sub-Administrator is a duly organized and validly existing corporation organized under the laws of the Commonwealth of Puerto Rico;

      2.     The execution, delivery and performance of this Agreement by the Sub-Administrator and its obligations hereunder do not violate any federal laws, rules or regulations or any laws, rules or regulations of the Commonwealth of Puerto Rico or the State of Delaware; and

      3.     The execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action of the Sub-Administrator and this Agreement is the legal, valid and binding obligation of the Sub-Administrator, enforceable against the Sub-Administrator in accordance with its terms.

      4.     The Sub-Administrator has and will maintain in effect during the term hereof all necessary licenses and permits as may be required to comply with the provisions of applicable legislation, rules and regulations to operate the Hospital as required under the Agreement.

      7.     Scope of Responsibilities. The Sub-Administrator assumes no responsibility under this Agreement other than to render the services called for hereunder and to obtain and maintain in effect during the term of this Sub-Administration Agreement the insurance policies required to be maintain by the Administrator under the Agreement.

      8.     No Joint Venture. Nothing in this Agreement shall be interpreted to constitute a partnership or joint venture between the parties hereto nor shall the personnel of the Sub-

Administrator be deemed to be an employee of the Administrator or entitled to any remuneration or other benefits from the Administrator.

9.  Date of Effectiveness. This Agreement shall become effective as of the date first above written and this Agreement shall continue in effect unless terminated as herein provided.

10.  Resignation. The Sub-Administrator may resign at any time upon giving not less than 120 days' notice in writing to the Administrator.

11.  Termination. The Administrator may terminate this Agreement, without the payment of any penalty:

(a)  at any time upon not less than 10 days' written notice to the Sub-Administrator;

(b)  immediately upon written notice to the Sub-Administrator if the Sub-Administrator shall go into liquidation (except a voluntary liquidation for the purpose of reconstruction or amalgamation upon terms previously approved by the Administrator) or if a petition shall be presented for the compulsory winding up of the Sub-Administrator, or if a receiver is appointed over any assets of the Sub-Administrator;

(c)  immediately upon written notice to the Sub-Administrator if at any time the Sub-Administrator shall commit any material breach of its obligations under this Agreement and (if such breach is capable of remedy) shall fail to cure such breach within 30 days of receipt of written notice requiring it to do so;

(d)  immediately upon written notice to the Sub-Administrator if the Sub-Administrator or any direct or indirect parent corporation thereof (i) commences, consents to or fails to contest a case or proceeding relating to such parent corporation under the United States Bankruptcy Code or the insolvency laws of another jurisdiction; (ii) is the subject of any such case

or proceeding that is not dismissed within 60 days; (iii) commences, consents to or fails to contest any proceeding for the appointment of a trustee, receiver, custodian or similar official with respect to the Sub-Administrator or any direct or indirect parent corporation of the Sub-Administrator or of their assets; (iv) is the subject of any such proceeding that is not dismissed within 60 days; (v) makes an assignment for the benefit of creditors; or (vi) admits in writing its inability to pay its debts generally as they become due;

(e)     immediately, in the event of its assignment by the Sub-Administrator.

12.     Effect of Resignation or Termination.

(a)     Any resignation of the Sub-Administrator or termination of the appointment of the Sub-Administrator under Section 11 or 12 shall be without prejudice to any rights or liabilities of any party hereunder arising prior to the date of such resignation or termination. The Sub-Administrator shall not be entitled to compensation in respect of such termination.

(b)     On the resignation of the Sub-Administrator or the termination of the appointment of the Sub-Administrator under Section 11 or 12, the Sub-Administrator shall, unless otherwise directed by the Administrator, promptly deliver to the Administrator or its designee, all books of account, financial records, files, correspondence, records and other materials of every description relating to the affairs of the Hospital that are in the possession of, or subject to the control of, the Sub-Administrator.

13.     Other Engagements. Nothing in this Agreement shall limit or restrict the right of any employee of the Sub-Administrator to engage in any other business or to devote his or her time and attention in part to the management or other aspects of any business, whether of a similar or a dissimilar nature nor limit or restrict the right of the Sub-Administrator to engage in any other business or to render services of any kind to any other corporation, firm, individual or association. The Sub-Administrator shall be deemed to be an independent contractor, unless otherwise expressly provided or authorized by this Agreement.

14.   Amendments. This Agreement may be amended only by mutual written consent.

15.   Notices. Any notice or other communication required to be given pursuant to this Agreement shall be deemed duly given if delivered or mailed by registered mail, postage prepaid: (i) to the Administrator, at PO Box 1142, Manatí, Puerto Rico 00674, Attention: José L. Quirós; or (ii) to the Sub-Administrator, at PO Box 8043, Marina Station, Mayaguez, Puerto Rico 00681; or (iii) at such other address as either party shall designate by notice to the other party.

16.   Sole Agreement. This Agreement sets forth the entire agreement and understanding of the parties hereto solely with respect to the matters covered hereby and the relationship between MMC and SISSO. Nothing in this Agreement shall govern, restrict or limit in any respect any other business dealings between the parties hereto unless otherwise expressly provided herein.

17.   Assignment and Delegation. This Agreement may not be assigned without the prior written consent of the Administrator and the Municipality. Any delegation by the Sub-Administrator of any of its obligations under this Agreement will be subject to the prior written approval of the Administrator and the Municipality. The delegation of any of the Sub-Administrator's duties under this Agreement shall not relieve the Sub-Administrator of any of its responsibilities or liabilities to the Administrator under this Agreement, and any fees payable to such sub-sub-administrator shall be on the account of the Sub-Administrator.



18.   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico as at the time in effect.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by their officers designated below as of the day and year first above written.

MAYAGUEZ MEDICAL CENTER – DR. RAMON EMETERIO BETANCES, INC.

SISTEMAS INTEGRADOS DE SALUD DEL SUR OESTE, INC.

By:_____
Name:
Title:

By:_____
Name:
Title:

ACCEPTED:

MUNICIPALITY OF MAYAGUEZ

By:_____
Name:
Title:

218498v1

Exhibit 34

# CONTRATO

En la ciudad de Mayagüez, Puerto Rico a 2 de septiembre de 2009.

## COMPARECEN

**DE LA PRIMERA PARTE:** Medical Education and Health Services, Inc. (MEDHS), una organización sin fines de lucro organizada y existente al amparo de las Leyes del Estado Libre Asociado de Puerto Rico, número de seguro social patronal 66-0660473, con oficinas en Mayagüez, Puerto Rico, representada en este acto por su Presidente Dr. Orestes Castellanos Rodríguez, mayor de edad, casado y vecino de Mayagüez, Puerto Rico, en adelante MEDHS.

**DE LA SEGUNDA PARTE:** Mayagüez Advanced Radiotherapy Center, P.S.C. (MARC), una corporación profesional organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico, número de seguro social patronal 66-0592077, con oficinas en Mayagüez, Puerto Rico, representada por su Presidente Dr. Edwin Rodríguez Aponte, mayor de edad, médico, casado y vecino de Mayagüez, Puerto Rico, en adelante MARC.

## EXPONEN

**PRIMERO:** MEDHS y el Municipio de Mayagüez, Puerto Rico, quien es una entidad política y jurídica con sucesión perpetua, existencia y personalidad legal separada e independiente del Gobierno del Estado Libre Asociado de Puerto Rico suscribieron y reconocieron un contrato el 1 de septiembre de 2009, mediante el cual convinieron y pactaron que MEDHS operará y administrará el Centro Médico de Mayagüez, Hospital Dr. Ramón Emeterio Betances, propiedad del Municipio de Mayagüez, Puerto Rico.

A base de lo anterior expuesto, ambas partes acuerdan formalizar el presente contrato bajo lo siguiente.

## CLAUSULAS Y CONDICIONES



1. MEDHS transfiere y da en arrendamiento a MARC, las facilidades del Departamento de Radiología Oncológica ("el Departamento"), el derecho a operar y administrar el mismo en su totalidad.

2. MEDHS se compromete a no contratar los servicios de Radiología Oncológica y Radioterapia con ninguna persona, corporación, sociedad, etc., durante la vigencia de este contrato.

3. MARC se compromete a hacerse cargo de toda la organización del Departamento, incluyendo facturación a los pacientes y planes médicos, a prestar servicios requeridos por los presentes en el mismo, teniendo en cuenta calidad en el servicio prestado y conveniencia de los pacientes.

4. MARC se compromete a garantizar una continuidad en el servicio que se le está brindando a los pacientes, al momento de contraer esta obligación contractual.

5. MARC establecerá la administración del Departamento en las facilidades actuales ubicadas en el Hospital Dr. Ramón Emeterio Betances, en la carretera # 2, Mayagüez, Puerto Rico.

6. El término del presente contrato es de diez años comenzando el día 2 de septiembre de 2009 y finalizando el día 1 de septiembre de 2019.

7. MARC pagará a MEDHS por concepto de renta el canon de $40,000.00. mensuales por los primeros treinta (30) meses (2/sept./2009 a 1/marzo/2012), $50,000.00 mensuales por los próximos treinta (30) meses (2/marzo/2012 a 1/sept./2014) y $55,000.00 mensuales por los últimos 60 meses (2/sept./2014 a 1/sept./2019). El canon de arrendamiento será pagado el día 15 de cada mes.

8. En caso de falta de pago de uno o más cánones de arrendamiento por parte de MARC, MEDHS notificará por escrito y por correo certificado con acuse de recibo a la dirección récord de MARC, su obligación de subsanar dicho incumplimiento. Pasados diez (10) días del recibo de notificación, si MARC no ha saldado el pago adeudado, MEDHS deberá desalojar la propiedad arrendada sin necesidad de trámite, gestión judicial o extrajudicial.

9. El canon de arrendamiento incluye: uso y disfrute del equipo actualmente existente en las facilidades del Departamento según se describen en el Anejo 1.

10. Ya que los equipos existentes en el departamento de radioterapia se encuentran averiados por la falta de mantenimiento y el estar fuera de uso en los pasados 5 meses, el pago de renta se pospondrá por los primeros seis meses de contrato o hasta que el departamento este funcionando a su total capacidad (el período de tiempo que sea menor), pero el costo de reparación de los equipos será responsabilidad de MARC.

11. Para llevar a cabo mejoras permanentes a las facilidades del Departamento, deberá existir un mutuo consentimiento entre las partes contratantes y las mismas serán responsabilidad de MARC.

12. MARC no podrá mover de las facilidades del Departamento el equipo actualmente existente, sin previa comunicación y aceptación por MEDHS.

13. La responsabilidad de adquirir el equipo necesario para el eficiente funcionamiento del Departamento, de acuerdo a los estándares requeridos por la especialidad de Radiología Oncológica, recaerá sobre MARC.

14. Deberá existir un mutuo consentimiento entre las partes contratantes para la disposición de equipos existentes y adquisición de nuevos equipos.

15. MARC se compromete a pagar los contratos de mantenimiento de los equipos existentes y de futuras adquisiciones.

16. Las reparaciones mayores a los equipos no cubiertos por el contrato de mantenimiento será responsabilidad de MARC.

17. MARC se compromete a cumplir con todas las Leyes Estatales del Estado Libre Asociado de Puerto Rico y las Leyes Federales de los Estados Unidos de América relacionados con la contratación o reclutamiento de empleados para el Departamento, incluyendo, pero no limitado a las contribuciones relacionadas con el pago de nómina, las leyes relacionadas con el discrimen en el empleo, y otras.

18. MARC tendrá un expediente médico para cada paciente. MEDHS tendrá acceso a los récords médicos de los pacientes. Las partes contratantes tendrán el derecho a coordinar la buena documentación de los récords de los pacientes hospitalizados.

19. MARC tiene el deber de exigir que los médicos y todo el personal que labore en el Departamento tenga sus licencias y acreditaciones vigentes; según lo exija la buena práctica de la profesión médica y las leyes del Estado Libre Asociado.

20. MARC se obliga a exigirle a todo el personal médico a tener vigentes sus seguros de responsabilidad profesional ("mal practice") que incluya $100,000.00 por incidentes, $300,000.00 agregados y un "excess coverage" de $1,000.000.

21. Al expirar o terminar este contrato. MARC se compromete a entregar las facilidades físicas en condiciones limpias. junto a aquellas mejoras que sean irremovibles por razón de que se convirtieron en parte de la estructura, remover toda la propiedad y equipo que le pertenezca. siempre y cuando deje las facilidades físicas en las condiciones que se le entregaron.

22. MARC será responsable de cumplir con los reglamentos y normas vigentes del Departamento para que MEDHS pueda mantener la acreditación del mismo por las distintas Agencias Acreditadoras Estatales y Federales.

23. Este contrato podrá ser modificado. únicamente. por acuerdo firmado entre las partes contratantes.

24. Si alguna cláusula o provisión de éste contrato se declara inválida. las demás permanecerán vigentes.

**LOS COMPARECIENTES.** aceptan el presente contrato en la forma en que está redactado por hallarlo conforme a su intención e instrucciones y se ratifican en su contenido. por lo cual inician en todas sus hojas y suscriben.

Dr. Orestes Castellanos Rodríguez
Presidente
Medical Education and Health Services. Inc.

Dr. Edwin Rodríguez Aponte
Presidente
Mayagüez Advanced Radiotherapy Center. P.S.C.

Exhibit 35

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE MAYAGUEZ**

| | | |
|---|---|---|
| MAYAGUEZ MEDICAL CENTER DR. RAMON E. BETANCES, INC. | * * * | CIVIL NUM. ISCI 201000546 206 |
| Demandante | * * | SOBRE: |
| vs. | * * | |
| MAYAGUEZ ADVANCED RADIOTHERAPY CENTER, CSP | * * * | DESAHUCIO EN PRECARIO |
| Demandada | * | **PROCEDIMIENTO SUMARIO** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEMANDA**

AL HONORABLE TRIBUNAL:

COMPARECE la parte demandante Mayagüez Medical Center - Dr. Ramón E. Betances, Inc. (en adelante "**MMC**"), por conducto de la representación legal que suscribe y, muy respetuosamente, expone y solicita:

I. **Jurisdicción:**

1. A tenor con las disposiciones del Artículo 622 del Código de Enjuiciamiento Civil de Puerto Rico, el Tribunal de Primera Instancia, Sala Superior de Mayagüez, es el tribunal con jurisdicción y competencia primaria sobre las personas y la materia legal objeto del caso de epígrafe, toda vez que es en Mayagüez donde radica la propiedad inmueble objeto del presente procedimiento de desahucio.

II. **Las Partes:**

2. La parte demandante MMC, es una corporación debidamente organizada y existente a tenor con las leyes del Estado Libre Asociado de Puerto Rico, quien desde el día 1 de febrero de 2010 es la arrendadora, operadora y administradora del Centro Médico de Mayagüez (en adelante el "**Centro Médico**"). La dirección postal de MMC es la siguiente: Apartado Postal 600, Mayagüez, P. R. 00681 y su número de teléfono es: (787) 652-9200.

3. El parte demandada, Mayagüez Advanced Radiotherapy Center, CSP, (en adelante el "**MARC**"), es una corporación profesional debidamente organizada y existente a tenor con las leyes del Estado Libre Asociado de Puerto Rico, quien para

-1-

todo momento pertinente a esta demanda mantiene, en precario, la posesión inmediata de cierto espacio y/o local comercial, con un área superficial de 9,720 pies cuadrados, dentro del Centro Médico. La dirección postal de MARC es la siguiente: Apartado Postal 8043, Mayagüez, P. R. 00682 y su número de teléfono es: (787) 855-2500.

III.  **Hechos Pertinentes a Todas las Causas de Acción**:

4.  Las facilidades médico-hospitalarias, sus equipos, maquinarias y los terrenos donde ubica el Centro Médico, son de la única y plena propiedad del Municipio de Mayagüez.

5.  Mediante el "Contrato para la Operación y la Administración del Hospital Dr. Ramón E. Betances del Centro Médico de Mayagüez" (en adelante el "**Primer Contrato de Administración**"), suscrito el día 27 de agosto de 2009, el Municipio de Mayagüez (en adelante el "**Municipio**"), le otorgó a cierta corporación denominada Sistemas Integrados de Salud del Sur-Oeste, Inc. (en adelante "**SISSO**"), la administración del Centro Médico.

6.  Cohetanéamente, en 23 de octubre de 2009, SISSO y la corporación demandada MARC, suscribieron un contrato de sub-arrendamiento (en adelante el "**Contrato de Sub-Arrendamiento**"), mediante el cual SISSO le sub-arrendó a MARC, cierto espacio y/o local comercial, con un área superficial de 9,720 pies cuadrados, dentro del Centro Médico (en adelanta el "**Local Arrendado**"), con el propósito de MARC establecer y operar en el mismo un centro de radio-terapia. (Se acompaña y hace formar parte de esta demanda copia del Contrato de Sub-Arrendamiento como **Exhibit A**.

7.  El Contrato de Sub-Arrendamiento, venció por sus propios términos, en **31 de diciembre de 2009**, sin que el término de vigencia del mismo fuera prorrogado, extendido o modificado. Desde entonces, MARC ocupa precariamente el Local Arrendado.

8.  Como parte del Contrato de Sub-Arrendamiento MARC acordó pagar a SISSO un canon de arrendamiento de $30,000.00 mensuales.[1]

---

[1]  Como cuestión de hecho y desde la misma fecha en que advino en la posesión del Local Arrendado, la parte demandada no le pagó canon de arrendamiento alguno a SISSO, por lo que desde entonces ocupa el

9. Por razones que no vienen al caso relatar, pero que surgen con meridiana claridad de la misma, mediante carta fechada 28 de enero de 2010, dirigida a SISSO, el Municipio canceló, resolvió y dejó sin efecto el Primer Contrato de Administración (en adelante la "**Carta de Cancelación del Primer Contrato de Administración**"). (Se acompaña y hace formar parte de esta demanda copia de la Carta de Cancelación del Primer Contrato de Administración como **Exhibit B**.

10. Mediante carta fechada 29 de enero de 2010, SISSO aceptó la cancelación, resolución y terminación del Primer Contrato de Administración (en adelante la "**Carta de Aceptación de Terminación de Contrato**"). (Se acompaña y hace formar parte de esta demanda copia de la Carta de Aceptación de Terminación de Contrato como **Exhibit C**.

11. Así las cosas, mediante el "Contrato para la Operación y la Administración del Hospital Dr. Ramón E. Betances del Centro Médico de Mayagüez" (en adelante el "**Segundo Contrato de Administración**"), suscrito el día 29 de enero de 2010, el Municipio le otorgó a MMC, aquí demandante, la administración del Centro Médico, efectivo en 1 de febrero de 2010. (Se acompaña y hace formar parte de esta demanda copia abreviada del Segundo Contrato de Administración como **Exhibit D**[2].

12. Inmediatamente luego de advenir como la administradora y operadora del Centro Médico, mediante carta fechada 4 de febrero de 2010, MMC le solicitó a MARC el que desocupara y le entregara el Local Arrendado. (en adelante la "**Carta de Desahucio**"). (Se acompaña y hace formar parte de esta demanda copia de la Carta de Desahucio como **Exhibit E**.[3]

13. Además del requerimiento de desalojo y entrega del Local Arrendado objeto de la Carta de Desahucio, en múltiples ocasiones desde que MMC advino a

---

Local Arrendado sin causa legal alguna.

[2] Dados los más de 100 pliegos de los que está compuesto el Segundo Contrato de Administración, se incluye solamente copia abreviada del mismo como Exhibit D. No obstante y de resultar necesario, durante la vista en su fondo la parte demandada habrá de presentar copia completa de dicho contrato.

[3] Dicha Carta de Desahucio fue enviada mediante correo certificado y **via facsímile**.

constituirse como la operadora y administradora del Centro Médico, personal

corporativo y administrativo de MMC, le solicitó a personal corporativo y administrativo

de MARC, la entrega inmediata del Local Arrendado, más ésta última ha hecho caso

omiso de dichos múltiples requerimientos de desalojo y entrega, y continúa en la

posesión precaria e inmediata del Local Arrendado, sin pagar canon de arrendamiento

alguno, sin causa legal alguna y sin contrato de sub-arrendamiento alguno; todo ello en

perjuicio de los mejores intereses económicos de MMC, quien como consecuencia de

tal actuación unilateral e indebida de MARC, sufre un daño económico prospectivo

sustancial ya que se encuentra imposibilitada de sub-arrendar el Local Arrendado a

cualquier otra tercera persona o entidad interesada.

14.    El presente procedimiento de desahucio de epígrafe **no** se radica contra

una familia de probada insolvencia económica, por lo que no resulta necesaria la

notificación a los correspondientes Secretarios del Departamento de la Familia y del

Departamento de la Vivienda de Puerto Rico.

   IV.    **Primera Causa de Acción**:

15.    Se incorporan y hacen formar parte de esta Primera Causa de Acción

todas las alegaciones contenidas en la Parte III de esta demanda.

16.    Mediante esta Primera Causa de Acción, MMC muy respetuosamente le

solicita al Honorable Tribunal determine que MARC mantiene la posesión del Local

Arrendado en precario en contra de la voluntad de MMC y, consecuentemente, ordene

el desahucio y desalojo de MARC del Local Arrendado dentro del término de 10 días

con posterioridad a la fecha en que tenga a bien dictar la correspondiente sentencia de

desahucio.

17.    Similarmente, mediante esta Primera Causa de Acción se solicita muy

respetuosamente del Honorable Tribunal que en la eventual sentencia de desahucio

que tenga a bien dictar en adjudicación del caso de epígrafe, tome en consideración de

que MARC es una entidad jurídica con solvencia económica y, consecuentemente,

disponga para una fianza en apelación de por lo menos $90,000.00 [equivalente a los

tres (3) meses que MARC ha continuado en la posesión precaria del Local Arrendado],

para responder de los daños y perjuicios que cualquier apelación le pueda ocasionar a

MMC y de las costas a ser incurridas MMC en apelación.

V. **Segunda Causa de Acción**:

18. Se incorporan y hacen formar parte de esta Segunda Causa de Acción todas las alegaciones contenidas en la Parte III de esta demanda.

19. A modo de excepción a tenor con las disposiciones del Artículo 628 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA 2829, mediante esta Segunda Causa de Acción, se solicita muy respetuosamente del Honorable Tribunal condene a la parte demandada MARC a pagar a MMC la suma de $30,000.00 mensuales a partir del día 1 de febrero de 2010 y hasta la fecha en que efectivamente desocupe y entregue el Local Arrendado, por concepto de resarcimiento de daños económicos sufridos por MMC como consecuencia de la negativa injustificada de MARC de entregarle la posesión del Local Arrendado.

VI. **Tercera Causa de Acción**:

20. Se incorporan y hacen formar parte de esta Tercera Causa de Acción todas las alegaciones contenidas en la Parte III de esta demanda.

21. De MMC prevalecer en los méritos en la adjudicación del presente caso, debe añadírsele al decreto de desahucio solicitado, el pago de las costas y gastos en que MMC incurra como parte de la radicación y procesamiento de la demanda de epígrafe y una suma razonable por concepto de honorarios de abogados, ya que resulta claro que la conducta del MARC fue y continúa siendo temeraria, frívola y de mala fe.

22. Además, la referida conducta de MARC, al negarse injustificadamente a entregar el Local Arrendado a sabiendas de que no tiene contrato, obligó y obligará en el futuro a MMC a asumir y sufrir las molestias, gastos, trabajos, esfuerzos e inconveniencias de un litigio innecesario y a contratar los servicios profesionales de abogados.

23. En nuestra jurisdicción, el propósito fundamental para la concesión de honorarios de abogado, es el de "penalizar o sancionar" a aquellas partes que por su temeridad, obstrucción, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a la otra parte a asumir y, sufrir las molestias, gastos, trabajo e

inconveniencias de un litigio innecesario. **Rivera vs. El Vocero**, 160 DPR ___ (2003), opinión de 29 de septiembre de 2003; **Rivera vs. Tiendas Pitusa, Inc.**, 148 DPR 695 (1999); **Corpak, Inc. et. als. vs. Ramallo Brothers Printing, Inc.**, 125 DPR 734 (1990).

24.     La abundante prueba documental relacionada en esta demanda, demuestra clara y contundentemente que MARC pudo razonablemente evitar el pleito de epígrafe, si hubiera actuado conforme a postulados de buena fe y juego limpio en el cumplimiento contractual del Contrato de Sub-Arrendamiento.

25.     Además, a la luz de la evidencia documental descrita en esta demanda, la parte demandada debió haber comprendido o entendido que, al amparo de las disposiciones legales pertinentes, su negativa a entregar el Local Arrendado al vencimiento del Contrato de Sub-Arrendamiento, tenía muy pocas probabilidades de prevalecer en los méritos.

26.     Tampoco la controversia de autos trata de una controversia que resulte novel o de "primera impresión en nuestra jurisdicción. **Pérez vs. Colegio de Cirujanos Dentistas de Puerto Rico**, 131 DPR 545 (1992);

27.     Mediante esta Tercera Causa de Acción, muy respetuosamente se solicita del Honorable Tribunal, que como parte de la sentencia que eventualmente emita en adjudicación del presente caso: i) condene a la parte demandada al pago de las costas y gastos en que incurra MMC como parte de la radicación y procesamiento de la demanda de epígrafe y ii) declare a la parte demandada incursa en temeridad y, consecuentemente, le imponga a ésta última el pago de una suma no menor de $25,000.00 por concepto de honorarios de abogados.

VII.     <u>Súplica</u>:

En atención a todas las alegaciones de hecho y de derecho antes expuestas, se solicita muy respetuosamente del Honorable Tribunal declare CON LUGAR la demanda de epígrafe y, en su consecuencia:

i)     Ordene el desahucio de la parte demandada del Local Arrendado.

ii)     Disponga para una fianza en apelación de $90,000.00.

iii)     Condene a la parte demandada al pago de las costas y gastos en

que incurra MMC como parte de la radicación y procesamiento de la demanda de epígrafe.

iv)  Declare a la parte demandada incursa en temeridad y, consecuentemente, le imponga a ésta última el pago de una suma no menor de $25,000.00 por concepto de honorarios de abogados.

RESPETUOSAMENTE SOMETIDA

En San Juan, para Mayagüez, Puerto Rico, hoy 12 de abril de 2010

ORTIZ & ORTIZ LAW OFFICE, PSC
470 AVENIDA CESAR L. GONZALEZ
URBANIZACION ROOSEVELT
SAN JUAN, PUERTO RICO 00918-2627
TEL. (787) 763-8989
FAX. (787) 274-8390
E-MAIL: kermitortiz@prtc.net

LCDO. KERMIT ORTIZ MORALES
ABOGADO NUM. 8027

| | |
|---|---|
| MAYAGUEZ MEDICAL CENTER, DR. RAMÓN E. BETANCES, INC. | CIVIL NÚM.: ISCI201000546 SALON 206 |
| Demandante | |
| Vs. | SOBRE: |
| MAYAGUEZ ADVANCED RADIOTHERAPHY CENTER, CSP | DESAHUCIO EN PRECARIO |
| Demandado | |

## - CITACION PERSONAL -

ESTADOS UNIDOS DE AMÉRICA )
EL PRESIDENTE DE LOS EE.UU. )
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO)

A:   MAYAGUEZ ADVANCED RADIOTHERAPY CENTER, CSP
CENTRO MÉDICO DE MAYAGUEZ
MAYAGUEZ, PR

POR CUANTO: En la presente causa de acción el Tribunal ha dictado la Orden que se transcribe a continuación:

Vista la demanda radicada en este caso, el Tribunal ordena que se proceda por el Secretario a expedir Orden de Citación a la parte demandada, para primera comparecencia que tendrá lugar en la Sala Núm. 206 de este Tribunal, Sala Superior de Mayagüez, el día 13 de mayo de 2010, a las 9:00 de la mañana, debiendo notificarse por el Secretario a la Parte Demandada con copia de esta Orden de Citación, apercibiéndosele que en dicho día, hora y sitio deberá comparecer por sí, por abogado o por representante legítimo y formular las alegaciones que creyese pertinente a su derecho, y que de no comparecer a dicho acto el día, hora y sitio señalado, se decretará por el Tribunal el Desahucio solicitado en la Demanda, sin más citarle ni oírle.

NOTIFÍQUESE.

En Mayagüez, Puerto Rico, a 15 de abril de 2010.

(Fdo.) MARIANO VIDAL SÁENZ
Juez Superior

POR TANTO: Usted, la Parte Demandada, por la presente es requerido y citado oficialmente para que de acuerdo con la presente acción se sirva comparecer a la Sala 206 de este Tribunal, para la primera Comparecencia, que se efectuará en la fecha y hora que se señalan anteriormente, bajo apercibimiento que de no hacerlo, se decretará por el Tribunal el Desahucio solicitado en la Demanda, sin más citarle ni oírle.

Expedida bajo mi firma y sello oficial, hoy 15 de Abril de 2010.

LCDA. NORMA G. SANTANA IRIZARRY
SECRETARIA REGIONAL

Por: _____
Secretaria-Auxiliar

## DILIGENCIAMIENTO
### POR EL ALGUACIL

Yo,_____, mayor de edad, Alguacil Auxiliar del Centro Judicial de Mayagüez y vecino de _____, Puerto Rico, CERTIFICO:

1. Que me llamo como queda dicho y soy de las circunstancias personales antes dichas.

2. Que recibí la Orden al dorso el día_____de _____ de 2010, notificándola personalmente a _____,el día _____de _____ de 2010 a las _____de la _____ en _____, Puerto Rico.

_____
ALGUACIL AUXILIAR

### POR PERSONA PARTICULAR

Yo, Viviana maldonado _____,mayor de edad, soltera _____,empleado y vecino de Cayey _____, Puerto Rico, bajo juramento DECLARO:

Que me llamo como queda dicho y soy de las circunstancias personales antes dichas, se leer y escribir y no soy abogado en este asunto, ni parte en el pleito, y no tengo interés en el mismo.

Que recibí la Orden al dorso el día 15 de abril de 2010, notificándola personalmente a Dr. Orestes castellanos plc. Yolanda Olivera el día 15 de abril de 2010, a las 1:45 de la tarde en Mayaguez , Puerto Rico.

_____
DILIGENCIANTE

### JURAMENTO

Jurado y suscrito ante mí, por_____ de las circunstancias personales antes dichas a quien doy fe de conocer personalmente en _____, Puerto Rico, hoy día _____ de _____ de 2010.

_____
SECRETARIA

| MAYAGUEZ MEDICAL CENTER DR. RAMÓN E. BETANCES, INC. | Civil Núm.: ISCI201000546 |
|---|---|
| Demandante | |
| Vs. | Sobre: |
| MAYAGUEZ ADVANCED RADIOTHERAPY CENTER CSP | DESAHUCIO EN PRECARIO |
| Demandada | |

### ORDEN DE CITACION

Vista la demanda radicada en este caso, el Tribunal ordena que se proceda por el Secretario a expedir Orden de Citación a la parte demandada, para la primera comparecencia que tendrá lugar en la **Sala Núm. 206** de este Tribunal, Sala de Superior de Mayagüez, el **día 13 de mayo de 2010, a las 9:00 de la mañana**, debiendo notificarse por el Secretario a la Parte Demandada con copia de esta Orden de Citación, apercibiéndosele que en dicho día, hora y sitio deberá comparecer por sí, por abogado o por representante legítimo y formular las alegaciones que creyere pertinente a su derecho, y que de no comparecer a dicho acto el día, hora y sitio señalado, se decretará por el Tribunal el Desahucio solicitado en la Demanda, sin más citarle ni oírle.

NOTIFÍQUESE.

En Mayagüez, Puerto Rico, a 15 de abril de 2010.

**MARIANO VIDAL SÁENZ
JUEZ SUPERIOR**