Exhibit 36

## CONTRATO DE COMPRA DE ACCIONES CORPORATIVAS

En Mayagüez, Puerto Rico, hoy 3 de febrero de 2010.

### COMPARECEN

**DE UNA PRIMERA PARTE:** Don Orlando Marini Román, mayor de edad, soltero, doctor en medicina y vecino de Mayagüez, Puerto Rico (en adelante, el "**Vendedor**").

**DE UNA SEGUNDA PARTE:** Mayagüez Medical Center - Dr. Ramón Emeterio Betances, Inc., una corporación debidamente organizada y existente a tenor con las leyes del Estado Libre Asociado de Puerto Rico (en adelante, la "**Compradora**"), representada en este acto por su presidente Don José L. Quirós Jorge, mayor de edad, casado, empresario y vecino de Dorado, Puerto Rico; cuya capacidad representativa y autorización para comparecer en este contrato en nombre y representación de la Compradora, surge del Certificado de Resolución Corporativa fechado 29 de enero de 2010, suscrito por Don Antonio J. Santos Prats, en su capacidad oficial de sub-secretario de la Compradora y autenticado mediante el affidávit número 2134, suscrito ante el notario público Don Ricardo O. Meléndez Saurí; copia del cual se une y hace formar parte de este Contrato como **Exhibit A**.

**DE UNA TERCERA PARTE:** Sistemas Integrados de Salud del Sur Oeste, Inc., una corporación debidamente organizada a tenor con las leyes del Estado Libre Asociado de Puerto Rico (en adelante, "**SISSO**"), representada en este acto por su presidente y único accionista Don Orlando Marini Román, de las circunstancias personales ya expresadas, cuya capacidad representativa y autorización para comparecer en este contrato en nombre y representación de SISSO, surge del Certificado de Resolución Corporativa fechado 2 de febrero de 2010, suscrito por Don Orlando Marini Román, en su capacidad oficial de secretario de SISSO y autenticado mediante el affidávit número 22, suscrito ante la notario público doña Jocelyn Grafals Pérez; copia del cual se une y hace formar parte de este Contrato como **Exhibit B**. Para todos los propósitos legales pertinentes y salvo por aquellas garantías, representaciones, obligaciones, relevos y renuncias de derechos que se disponen expresamente en este contrato, SISSO comparece en este contrato a los únicos efectos de expresar su conformidad con, y autorización a, la transacción objeto del mismo para todos aquellos asuntos donde su conformidad y consentimiento resulten necesarios en derecho; quienes libre y voluntariamente,

### EXPONEN Y MANIFIESTAN

**POR CUANTO:** El Vendedor es el dueño legal y único beneficiario de (i) 1,000,000 de acciones comunes corporativas de SISSO, con valor par de $1.00 por acción, equivalentes al 100% de las acciones comunes de SISSO emitidas y en circulación a la fecha de este contrato (en adelante, las "**Acciones Comunes**"), las cuales se encuentran evidenciadas por un (1) certificado de acciones, a saber: Certificado Núm. 1 emitido el día 1 de septiembre de 2009 (en adelante el "**Certificado de las Acciones Comunes**") y (ii) 2,000,000 de acciones corporativas preferidas al 9% y no acumulativas de SISSO, con valor par de $1.00 por acción, equivalentes al 100% de las acciones preferidas de SISSO autorizadas, emitidas y en circulación a la fecha de este contrato (en adelante, las "**Acciones Preferidas**"; las Acciones Comunes y las Acciones Preferidas, en adelante conjuntamente las "**Acciones**"), las cuales se encuentran evidenciadas por un (1) certificado de

acciones preferidas, a saber: Certificado Núm. 2 emitido el día 1 de septiembre de 2009 (en adelante, el "**Certificado de las Acciones Preferidas**"; el Certificado de Acciones Comunes y el Certificado de Acciones Preferidas en adelante conjuntamente el "Certificado de Acciones"); copia de los referidos Certificados de Acciones Comunes y Certificados de Acciones Preferidas se unen y hacen formar parte de este contrato como **Exhibit C**.

**POR CUANTO:** Desde el día 1 de septiembre de 2009 hasta el 29 de enero de 2010, SISSO operaba y administraba el Hospital Dr. Ramón Emeterio Betances - Centro Médico de Mayagüez (en adelante el "**Centro Médico**"), a tenor con las disposiciones, términos y condiciones dispuestas en el Contrato para la Operación y Administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayagüez (en adelante, el "**Contrato de Administración**"), suscrito y otorgado en Mayagüez, Puerto Rico, el día 27 de agosto de 2009, en y entre el Municipio de Mayagüez, Medical Educational and Health Services, Inc. ("**MEDHS**") y SISSO. El Contrato de Administración se dio por terminado por el Municipio de Mayagüez el 29 de enero de 2010 y SISSO se allanó a la determinación del Municipio de Mayagüez de dar por terminado el Contrato de Administración.

**POR CUANTO:** La Compradora interesa adquirir las Acciones, a título de compraventa, con el propósito e intención de advenir en pleno y exclusivo control, dominio y propiedad, como su única y exclusiva accionista y dueña, de todas las acciones corporativas comunes, preferidas o de cualquier otro tipo, clase o naturaleza que se encuentren emitidas y puestas en circulación por y de SISSO desde su fecha de incorporación y, consecuentemente, de todos los derechos, facultades, prerrogativas, permisos, licencias y obligaciones de SISSO en relación a la operación y administración del Centro Médico.

**POR CUANTO:** En 28 de diciembre de 2009, el Vendedor y la Compradora suscribieron una carta-contrato, donde expusieron los acuerdos preliminares llegados con relación a la venta, adquisición, cesión y transferencia de las Acciones (en adelante la "**Carta-Contrato**"). La Carta-Contrato se canceló y se dejó sin efecto por las partes ya que las condiciones que se establecieron en la Carta-Contrato para la adquisición de las Acciones no se pudieron cumplir por SISSO.



**POR TANTO:** En consideración a todo lo anterior y a los acuerdos y convenios que se disponen a continuación, las partes comparecientes en este contrato proceden con la transacción de compraventa de la Acciones de acuerdo a los siguientes:

**TÉRMINOS Y CONDICIONES**

Uno (1). **Compraventa**:

    (a) Sujeto a los términos y condiciones que aquí se establecen, mediante el presente contrato, en la fecha de cierre que se establece más adelante, el Vendedor acuerda venderle, cederle, traspasarle y entregarle a la Compradora y ésta última acuerda comprarle y adquirir del Vendedor todos los derechos, título e interés del Vendedor en las Acciones, así como cualesquiera y toda otra participación, derecho o interés corporativo, económico o propietario que el Vendedor posea o pueda poseer en SISSO y todos los activos de SISSO, junto a todos los beneficios y deberes que conlleva la titularidad de las Acciones de SISSO. En la fecha de cierre que se establece más adelante, el Vendedor deberá endosar a favor de la Compradora y entregarle a ésta

última en esa fecha, cada uno de los Certificados de Acciones representando todas y cada una de las Acciones. Los derechos adquiridos por la Compradora sobre las Acciones incluye el derecho a recibir cualquier dividendo pasado, presente o futuro adeudado por SISSO sobre las Acciones Preferidas y todos los derechos de SISSO como dueña del Certificado de Depósito #1408410148 por la suma de $1,500,000 que fue emitido por R&G Premier Bank of Puerto Rico el 10 de septiembre de 2009 (el "Certificado de Depósito").

(b) Para todos los propósitos legales pertinentes, mediante el presente contrato el Vendedor y SISSO renuncian a favor de la Compradora, a ejercitar todo y cualquier derecho preferente de compra de las acciones de SISSO al que puedan tener derecho en virtud de las disposiciones de sus Artículos de Incorporación y/o en virtud de cualquier otra disposición corporativa que pueda surgir de sus estatutos, reglamentos o minutas corporativas y, consecuentemente, mediante este contrato SISSO autoriza al Vendedor a venderle a la Compradora las Acciones.

(c) El Vendedor deberá ceder y traspasar las Acciones en la fecha de cierre a la Compradora libre de cargas, demandas, reclamaciones y gravámenes de cualquier tipo, clase o naturaleza, incluyendo pero sin limitarse a, deudas u obligaciones contributivas, libre de contratos o acuerdos entre accionistas o acuerdos de pignoración o cesión, libre de deudas o derechos a favor de otros accionistas, socios o cónyuges, y, además, que sean transferibles a favor de la Compradora.

Dos (2). Precio: El precio de compraventa de las Acciones, así como por concepto de causa y en consideración de todas las otras obligaciones del Vendedor que se disponen en este contrato, se pacta en la suma de **CUATRO MILLONES TRESCIENTOS MIL DÓLARES ($4,300,000.00)** (en adelante denominado en este contrato como el "Precio de Compraventa"); el cual será pagado en la fecha de cierre por la Compradora al Vendedor de la siguiente manera:

(i) la Compradora liberará, a favor del Vendedor, el Certificado de Depósito que fue dado en prenda por SISSO a favor de R&G Premier Bank of Puerto Rico para garantizar un préstamo que le concedió R&G Premier Bank of Puerto Rico a SISSO para financiar la operación del Centro Médico por parte de SISSO o, en la alternativa, la Compradora cancelará el Certificado de Depósito y utilizará el dinero que reciba de la cancelación del Certificado de Depósito para pagarle $1,500,000 al Vendedor como parte del Precio de Compraventa. Esta liberación o pago a favor del Vendedor deberá realizarse por la Compradora en o antes del transcurso de 30 días contados a partir de la fecha de cierre de la compraventa de las Acciones.

(ii) En la fecha de cierre, la Compradora le entregará al Vendedor la suma de $1,300,000, mediante cheque certificado girado a su favor; por cuya suma el Vendedor le extenderá a la Compradora su más formal carta de pago y recibo. De esta suma, $1,285,000 se está pagando al Vendedor para satisfacer la totalidad de la suma que le adeuda SISSO al Vendedor a la fecha de cierre y cuya deuda queda extinguida en su totalidad efectivo en la fecha de cierre y el balance se considera parte del precio de compraventa de las Acciones.

(iii) La Compradora retendrá la suma de $1,500,000 del Precio de Compraventa (en adelante, el "**Precio de Compraventa Aplazado**"), en garantía del cumplimiento por parte del Vendedor con sus obligaciones bajo este contrato y de la veracidad de cada una de las representaciones hechas por el Vendedor a la Compradora en este contrato. La Compradora podrá

3

deducir del Precio de Compraventa Aplazado cualquier daño o pérdida en que incurra tanto la Compradora como SISSO, incluyendo gastos de abogado incurridos en defender cualquier acción legal contra la Compradora o SISSO, como resultado de este contrato o como consecuencia de cualquier violación o incumplimiento por parte del Vendedor con los términos, representaciones o condiciones de este contrato.

(iv) El Precio de Compraventa Aplazado estará evidenciado por un pagaré suscrito por la Compradora en la fecha de cierre, pagadero a favor del Vendedor o a su orden (en adelante, el "**Pagaré**"). Sujeto al párrafo anterior, el balance de principal del Pagaré devengará intereses desde la fecha de cierre hasta su final pago a una tasa anual de 5%. Dichos intereses serán pagaderos mensualmente una vez los mismos advengan vencidos y pagaderos dentro de los primeros cinco (5) días de cada mes. El Pagaré tendrá una fecha de vencimiento de nueve (9) meses a partir de la fecha de cierre, cuya fecha de vencimiento estará sujeta a los otros términos y condiciones de este contrato. La fecha de vencimiento del Pagaré estará sujeta a aceleración, a opción del Vendedor, en caso de que la Comparadora no pague los intereses del Pagaré en la fecha que venzan los mismos y dicho incumplimiento no sea curado por la Comparadora dentro de un término de 5 días contados a partir del requerimiento de pago por escrito de dichos intereses por el Vendedor a la Compradora. El Pagaré le será entregado al Vendedor por la Compradora en la fecha de cierre. El Vendedor aceptará el Pagaré, según sus términos y condiciones. Copia de la forma de Pagaré a ser emitido en la fecha de cierre por la Compradora al Vendedor se une y hace formar parte de este contrato como **Exhibit D**.

### Tres (3): Representaciones y Garantías del Vendedor y de SISSO y Cierre:

(a) Como obligación esencial y principal del Vendedor bajo este contrato y como causa y motivo principal para que la Compradora preste su consentimiento a la transacción total objeto de este contrato, el Vendedor y SISSO le representan y garantizan solidariamente a la Compradora, en la fecha de este contrato y a la fecha de cierre, lo siguiente:

(i) Que el Vendedor es el único beneficiario legal y dueño, en pleno dominio, de las Acciones y que es el único accionista de SISSO. Que las Acciones representan el 100% de las acciones comunes y preferidas de SISSO emitidas y en circulación. Que ninguna otra persona o entidad tiene participación alguna, directa o indirecta, en el capital o propiedad corporativa de SISSO. Que el estado civil del Vendedor es soltero y que los dineros que el Vendedor invirtió en SISSO son bienes privativos del Vendedor. Las Acciones están libres de cualquier restricción sobre cesión, impuestos, gravámenes, opciones, garantías, derechos de compra, contratos, compromisos, equidades, reclamaciones y demandas. Este contrato constituye una obligación valida y legalmente exigible de la Vendedora, ejecutable conforme a sus términos y condiciones.

(ii) Que SISSO está debidamente creada, organizada y constituida corporativamente de acuerdo a las leyes aplicables de Puerto Rico. Que desde su fecha de incorporación, ni el certificado de incorporación, ni la franquicia corporativa de SISSO han sido revocadas, modificadas o limitadas por ninguna agencia de gobierno o tribunal de justicia con jurisdicción y competencia sobre SISSO. Que a la fecha de este contrato, SISSO se encuentra en "good standing" ante el Departamento de Estado de Puerto Rico. Que desde su fecha de incorporación SISSO ha cumplido cabal y debidamente, con todas y cada una de sus obligaciones

4

corporativas de radicar sus correspondientes planillas informativas anuales al Departamento de Estado de Puerto Rico y sus planillas de contribución sobre ingresos anuales al Departamento de Hacienda de Puerto Rico y que tiene pagadas y al día sus correspondientes patentes municipales, sus correspondientes pagos de contribución sobre la propiedad, mueble e inmueble, al CRIM y que ha pagado y remitido debidamente al Internal Revenue Service ("IRS") de los Estados Unidos de América sus correspondientes contribuciones, incluyendo el que han remitido y pagado al IRS cualquier y toda suma retenida a sus empleados para tal propósito, por concepto de pago de seguro social federal al que venga obligada, excepto por unos atrasos por la suma de $402,781 al 31 de diciembre de 2009 en los depósitos de seguro social patronal, desempleo y SINOT de los empleados de SISSO.

(iii) Que tanto SISSO, como el Vendedor, representan que tienen total derecho y facultad legal, corporativa y representativa para proceder con la transacción objeto de este contrato y que no necesitan de ninguna otra autorización o permiso, de cualquier tipo, clase o naturaleza, de cualquier otra tercera persona, entidad o agencia de gobierno, municipal, local o federal, incluyendo pero sin limitarse, del Municipio de Mayagüez y de MEDHS para proceder con la transacción objeto de este contrato.

(iv) Que desde su fecha de incorporación y previo a la fecha de este contrato, SISSO sola y únicamente ha emitido y puesto en circulación las Acciones y que desde su fecha de incorporación no ha emitido, ni puesto en circulación, otras acciones corporativas, comunes, preferidas o de cualquier otro tipo, clase o naturaleza, que no sean las Acciones.

(v) Que a la fecha de este contrato no existe reclamación o demanda judicial o extrajudicial alguna, en contra del Vendedor o de SISSO, que afecte o pueda afectar o limitar o modificar la total y única titularidad del Vendedor sobre las Acciones y el libre traspaso y cesión de las mismas a la Compradora, según contemplado en este contrato.



(vi) Que las Acciones no están sujetas a procedimientos o derechos o participaciones corporativas de ex-socios del Vendedor o previos accionistas de SISSO o sujetas a divisiones de sociedades legales de gananciales o de comunidades de bienes entre ex-cónyuges.

(vii) Que las Acciones no garantizan ni sirven como colateral de ninguna obligación pasada, presente o futura del Vendedor y/o de SISSO y/o de cualquier otra tercera persona o entidad.

(viii) Que a la fecha de este contrato SISSO le adeuda al Vendedor la suma de $1,285,000, cuya deuda será pagada en su totalidad por el Vendedor a SISSO en la fecha de cierre de esta transacción según se establece en el Artículo Dos (2)(ii) de este Contrato. Excepto por la deuda descrita en la oración anterior, SISSO no le adeuda dinero, emolumento u obligación económica alguna al Vendedor por concepto de préstamos realizados por el Vendedor a SISSO, o por razón de dividendos no pagados, pendientes de pago o dejados de emitir, o por concepto de ganancias retenidas, o por razón de servicios prestados, de cualquier tipo, clase o naturaleza, en calidad de oficial, empleado o director o por cualesquiera otras causas o conceptos.

(ix) Que el Vendedor no posee, directa o indirectamente, ni alberga ninguna causa de acción, reclamación o demanda, laboral, civil o corporativa, por actos, omisiones,

5

hechos o circunstancias previas a la fecha de este contrato, en contra de SISSO o en contra de sus actuales oficiales y directores.

(x) Que la otorgación de este contrato no viola ningún otro contrato, acuerdo, disposición, condición u otra obligación del Vendedor y/o de SISSO con cualesquiera otra tercera persona o entidad, que de cualquiera manera prohíba, limite o impida que el Vendedor puedan vender, asignar, enajenar, ceder, disponer y traspasar las Acciones a la Compradora o que prohíba, limite o impida que SISSO pueda autorizar la venta, asignación, enajenación, cesión, disposición y transferencia de las Acciones a la Compradora según se contempla en este contrato.

(xi) Que no existe a la fecha de este contrato ni a la fecha de cierre, reclamación judicial, extrajudicial o administrativa alguna, ante ningún tribunal, arbitro o agencia gubernamental, local o federal, que de cualquiera forma o manera, directa o indirectamente, pueda afectar el libre traspaso o venta de la Acciones a la Compradora o que pueda privar o limitar al Vendedor y/o a SISSO en la otorgación de este contrato.

(xii) Que a la fecha de este contrato y a la fecha de cierre no existen acciones judiciales, administrativas o procedimientos pendientes ante tribunal o agencia gubernamental alguna en contra del Vendedor o de SISSO, que de cualesquiera forma o manera pueda cualquier persona o entidad embargar, apoderarse, reclamar propiedad o derechos sobre o de cualesquiera forma disponer de las Acciones. Que el Vendedor no le ha otorgado a ninguna persona o entidad un derecho preferente de compra o un derecho de opción de compra sobre las Acciones.

(xiii) Que desde la fecha de su incorporación, SISSO única y exclusivamente se ha dedicado a la operación y administración del Centro Médico y que no se ha dedicado desde entonces a ningún otro negocio o actividad comercial.



(xiv) Que SISSO no tiene otras deudas, vencidas o no-vencidas, contingentes o de otro tipo con ninguna tercera persona o entidad, otras que las relacionadas y descritas en el Estado Financiero de SISSO fechado el 31 de diciembre de 2009 ("**Estado Financiero de Transferencia**"). Que salvo aquellas deudas descritas y detalladas en el Estado Financiero de Transferencia, a la fecha de este contrato y a la fecha de cierre, SISSO no le adeuda dinero u obligación de pago alguna, a ninguna persona, entidad, entidad bancaria, contratista o suplidor de materiales, labores o servicios en general, por cualquier concepto, incluyendo por labores realizadas o materiales suplidos, utilizados como parte de la operación y administración diaria del Centro Médico. Copia del Estado Financiero de Transferencia se une y hace formar parte de este contrato como **Exhibit E**.

(xv) Que el Estado Financieros de Transferencia, refleja de manera debida y aceptable en contabilidad, fiel y exacta, la situación financiera de SISSO a su fecha y que el mismo fue preparado por contadores públicos autorizados independientes contratados por SISSO, siguiendo aquellas normas, practicas y guías de contabilidad aceptadas y dispuestas por el Colegio de Contadores Públicos de Puerto Rico para la preparación de estados financieros de corporaciones en Puerto Rico.

(xvi) Que SISSO es la dueña legal, en pleno dominio, de todos aquellos activos, equipos, maquinarias, vehículos de motor, derechos, marcas, acciones corporativas,

contratos, licencias y demás bienes descritos y dispuestos en el Listado de Activos Corporativos de SISSO (en adelante el "**Listado de Activos**") libre de gravámenes y derechos de terceros. Copia del Listado de Activos se une y hace formar parte de este contrato como **Exhibit F** y que todos dichos activos corporativos de SISSO se encuentran libres de obligaciones, cargas y gravámenes de cualquier tipo, clase o naturaleza, así como libre de intereses, garantías, hipotecas, prendas y/o cargas en general, a favor de terceras personas o entidades, que no permitan su libre circulación, disposición, enajenación, cesión, transferencia y propiedad, otros que los descritos en este contrato.

(xvii) Que las personas, sus direcciones, sus números de seguro social, sus puestos que actualmente ocupan, sus funciones corporativas o de empleo y sus salarios y demás beneficios marginales que actualmente devengan, según descritos y dispuestos en el Listado de Empleados de SISSO que se une y hace formar parte de este Contrato como **Exhibit G**, son y constituyen los únicos empleados de SISSO a la fecha de este contrato y a la fecha de cierre.

(xviii) Que a la fecha de este contrato y a la fecha de cierre, SISSO no le adeuda a ninguno de sus empleados dinero alguno, por cualquier concepto, incluyendo salarios, vacaciones, licencia por enfermedad, beneficios marginales, horas extras o mesadas, otros que los salarios actualmente corrientes y no pagados para la última semana de empleo calculada a partir o en virtud de la fecha de este contrato, adeudados por SISSO a dichos empleados dentro de su normal proceder de negocios y salvo por aquellos dineros adeudados por SISSO a la fecha de este contrato a dichos empleados por concepto de vacaciones, licencias por enfermedad y demás beneficios según descritos en el **Exhibit G** de este contrato.



(xix) Que salvo por aquellas demandas o reclamaciones judiciales descritas y detalladas en el **Exhibit H** que se une y hace formar parte de este contrato, desde su incorporación SISSO no ha sido demandada judicialmente, por cualquier concepto, reclamación o causa de acción, en los tribunales de Puerto Rico o de los Estados Unidos. Que a la fecha de este contrato y a la fecha de cierre, no se encuentra radicada o presentada ninguna demanda, reclamación o causa de acción, de cualquier tipo, clase o naturaleza, ante cualquier tribunal, local o federal, agencia administrativa o procedimiento de arbitraje, en contra de SISSO y/o en contra del Vendedor relacionada a su previa operación y administración del Centro Médico o este contrato y que el Vendedor no conoce de ninguna demanda, reclamación o causa de acción, de cualquier tipo, clase o naturaleza, que cualquiera tercera persona o entidad planifique incoar, presentar o radicar en contra de SISSO o del Vendedor, por cualquier concepto o razón, otras que las descritas en el **Exhibit H** de este contrato.

(xx) Que a la fecha del presente contrato ni el Vendedor, ni SISSO, han otorgado a terceras personas, naturales o jurídicas, contrato o documento alguno con el propósito de vender, hipotecar, opcionar, dar en prenda o garantía o de cualquier otra forma enajenar o limitar, en todo o en parte, las Acciones.

(xxi) Que ninguna circunstancia o condición relacionada con el Vendedor y/o con SISSO afectará el correspondiente traspaso de las Acciones a la Compradora y el que la Compradora puedan inscribir su título sobre las Acciones en los libros o registros de SISSO libres de cargas y gravámenes.

7

(xxii) Que durante todo el término de tiempo en que SISSO operó y administró el Centro Médico, cumplió a cabalidad y debidamente con todas las disposiciones legales y reglamentarias que le eran aplicables a personas, corporaciones o entidades que operan y administran hospitales en Puerto Rico y los Estados Unidos de América, incluyendo pero sin limitarse a, que SISSO cumplió, a cabalidad y debidamente, con todas aquellas normas, guías, notificaciones particulares, reportes, informes, iniciativas, disposiciones reglamentarias, leyes, ordenes y cartas circulares requeridas o emitidas, previo a la fecha de este contrato y para tales propósitos, incluyendo, pero sin limitarse a, que SISSO cumplió, a cabalidad y debidamente, con todas aquellas normas, guías, notificaciones particulares, reportes, informes, iniciativas, disposiciones reglamentarias, leyes, ordenes y cartas circulares requeridas o emitidas, previo a la fecha de este contrato y para tales propósitos por el Departamento de Salud de Puerto Rico, por el Departamento de Salud de los Estados Unidos, por el Joint Commission, por el CMS medicare y Medicaid y por cualquier otra agencia de gobierno, local o federal, que tenga jurisdicción sobre SISSO y/o el Centro Médico.

(xxiii) Excepto por la licencia que se requiere para operar el estacionamiento del Centro Médico, SISSO posee todas aquellas licencias y permisos necesarios o requeridos para operar y administrar el Centro Médico según las normas aplicables a hospitales, cuyas licencias y permisos se encuentran en plena fuerza y vigor a la fecha de este contrato y a la fecha de cierre. Que todas las licencias y permisos propiedad de SISSO y utilizadas en el normal proceder de negocios de SISSO como parte de la operación del Centro Médico son las que se describen y detallan en el **Exhibit I** que se une y hace formar parte de este contrato.

(xxiv) Que en la operación y administración del Centro Médico, SISSO no ha infringido y/o violado y/o no ha recibido ninguna notificación o cargo alegando, afirmando, acusando o sosteniendo una violación o infracción a, cualquier ley, reglamento u ordenanza de naturaleza ambiental, municipal, estatal o federal, con jurisdicción sobre el Centro Médico y que SISSO no ha utilizado el Centro Médico, en todo o en parte, para generar, procesar, almacenar, tratar o disponer de cualquier sustancia, material o desperdicio contaminante, tóxico o peligroso, de cualquier tipo, clase o naturaleza, sólido, líquido o gaseoso, dentro del contexto, definición e interpretación de cualquier ley, reglamento u ordenanza, municipal, estatal o federal aplicable sobre protección ambiental, salvo por aquellas sustancias utilizadas en el normal proceder de sus negocios y como parte del normal proceder de operación del Centro Médico. Además, el Vendedor le representa y garantiza a la Compradora que según su mejor saber y entender, no existen tanques soterrados, ni se ha dispuesto, impropia o ilegalmente, de contaminantes químicos, desperdicios sólidos, materiales nucleares y/o contaminantes similares en el Centro Médico.

(xxv) El Vendedor y SISSO expresamente le representan y garantizan a la Compradora (i) que el Vendedor es el único director de SISSO a la fecha de este contrato y a la fecha de cierre y que éste ha renunciado a todos sus puesto directivos, como empleado y como oficial de SISSO efectivo en la fecha de cierre, libre de costos para la Compradora y que nombró en su sustitución a aquellas personas designadas por la Compradora, y (ii) que dicha persona ha renunciado a continuar ocupando cualquier espacio que tengan arrendado en el Centro Médico.

Las representaciones y obligaciones de la Vendedora a la Compradora contenidas anteriormente sobrevivirán la firma de este contrato y la fecha de cierre.

8

(b) El Vendedor y SISSO expresamente reconocen que la Compradora se basó en las anteriores representaciones del Vendedor y de SISSO para proceder con la transacción jurídica objeto de este contrato y para pagar en la fecha de cierre el Precio de Compraventa a cambio de las Acciones. Por consiguiente, cualquiera de las anteriores representaciones del Vendedor y/o de SISSO que resulte ser falsa o imprecisa ("misleading"), dará derecho a que la Compradora, a su única opción, a dar por rescindido, terminado o resuelto, en todo o en parte, el presente contrato, con derecho a obtener del Vendedor la devolución total del Precio de Compraventa, más sus intereses legales, o a que pueda exigirle al Vendedor que proceda a corrija, a su costo y cargo, la situación, evento o circunstancia que dio lugar a la violación de las anteriores representaciones o garantías por el Vendedor; sin perjuicio de que la Compradora pueda ejercer cualesquiera otra acción civil, en derecho o equidad, a la que puedan tener derecho, para recobrar contra el Precio de Compraventa Aplazado o de cualquier otra forma disponible en ley contra el Vendedor, los daños que pueda haber sufrido o en que incurra la Compradora o SISSO por razón del incumplimiento o violación del Vendedor con sus representaciones o garantías bajo este contrato.

(c) El Vendedor acepta y se obliga a indemnizar y defender a la Compradora por y de cualquier reclamación, acción, demanda, pérdida, daño, gasto, costo, multa, órdenes de agencias administrativas, procedimientos judiciales y administrativos y gastos de estudios y de limpieza ambiental que surjan como resultado de cualquier acción, caso, pleito, reclamación o procedimiento, judicial o administrativo, en que esté envueltos o se incluya como parte a la Compradora, incluyendo pero sin limitarse a, acciones de o ante agencias del gobierno del Estado Libre Asociado de Puerto Rico y del gobierno federal, que surjan como consecuencia de actos u omisiones del Vendedor o de SISSO relacionadas a la operación y administración del Centro Médico con anterioridad a la fecha de este contrato o que surjan como consecuencia de cualquier actividad relacionada con el uso, generación, transportación, almacenaje, disposición o la presencia de Sustancias Peligrosas en el Centro Médico o que surjan como consecuencia de la falta de cumplimiento de SISSO o del Vendedor con cualquier Ley Ambiental de Puerto Rico y/o de los Estados Unidos o con cualquier otra ley o disposición reglamentaria aplicable al Centro Médico.



(d) El Vendedor además acepta y se obliga a indemnizar y defender a la Compradora por o contra cualquier reclamación, acción legal, demanda, pérdida, daño, gasto, costo, multa, órdenes de agencias administrativas y procedimientos judiciales y administrativos que surjan o sean radicados por cualquier persona o entidad dentro de un término de 18 meses luego de la fecha de este contrato, en la que estén envueltos o se incluyan como parte demandada a la Compradora y/o a SISSO y/o sus respectivos oficiales o accionistas y que surjan como consecuencia o resultado de la firma de este contrato y/o el cierre de la transacción que forman parte de este contrato y/o que envuelvan o estén relacionadas al derecho de SISSO y/o la Compradora a operar y administrar el Centro Médico con posterioridad a la fecha de este contrato mediante contrato firmado por la Compradora con el Municipio de Mayagüez. La Compradora tendrá derecho a retener la totalidad del Precio Aplazado de Compraventa hasta tanto se resuelva cualquier demanda o reclamación que se radique contra la Compradora y/o SISSO y que se describe en este párrafo.

(e) El cierre de la transacción contemplada por este contrato tendrá lugar en la oficina 1900 del Popular Center en la Cuidad de San Juan, Puerto Rico el 3 de febrero de 2010. Será condición para el cierre de la transacción contemplada en este contrato que no exista ninguna orden de un Tribunal con competencia que prohíba en forma alguna que se efectué el cierre y el que todas

9

las representaciones y garantías contenidas en este contrato por parte de la Vendedora sean ciertas y correctas en la fecha de cierre. En la fecha de cierre las partes deberán cumplir con sus respectivas obligaciones bajo este contrato y firmar los documentos y certificados requeridos bajo este contrato para completar el cierre de la transacción contemplada por este contrato. El Vendedor acuerda manejar los asuntos de SISSO hasta la fecha de cierre en la misma forma que lo ha hecho hasta la fecha de este contrato y a no tomar ninguna decisión corporativa antes del cierre sobre los negocios de SISSO que no sea en el curso ordinario de los negocios.

**Cuatro (4). Representaciones de la Compradora**: Como parte esencial de esta transacción, la Compradora le representa y garantiza al Vendedor lo siguiente:

(i) Que tiene plena facultad y poder corporativo para suscribir este contrato y cumplir con las obligaciones que emanan del mismo.

(ii) Que tiene total derecho y facultad legal para proceder con la transacción objeto de este contrato y que no necesita de ninguna otra autorización o permiso, de cualquier tipo, clase o naturaleza, de cualquier otra tercera persona, entidad o agencia de gobierno, municipal, local o federal, para proceder con la transacción objeto de este Contrato.

(iii) Que cuenta, a través de sus directores, oficiales y empleados, con la experiencia requerida, así como con el personal profesional, la infraestructura administrativa y el financiamiento necesario y suficiente para operar y administrar el Centro Médico.

(iv) Que adquiere las Acciones para propósitos de inversión solamente y no como parte de una distribución o venta pública. La Compradora se obliga a no ofrecer para la venta o de otra forma disponer de las Acciones así adquiridas en violación a las disposiciones del U. S. Securities Act de 1933, según enmendado.

**Cinco (5). Otros Acuerdos Complementarios**:

(a) Mediante el presente contrato y hasta el límite que le sea permitido por las leyes y reglamentos aplicables y, especialmente, hasta el límite permitido por el respectivo acreedor, la Compradora liberará efectivo en la fecha de cierre al Vendedor de toda y cualquier garantía personal que el Vendedor haya prestado a R & G Premier Bank, en garantía de las deudas corporativas de SISSO, siempre y cuando las mismas se encuentren listadas, descritas y detalladas en el **Exhibit E** de este contrato.

(b) Mediante este contrato y como parte de la adquisición de las Acciones, la Compradora adquiere todos los activos corporativos, equipos, maquinarias, instrumentos, y estructuras propiedad de SISSO localizados en el Centro Médico al día 31 de enero de 2010 y/o que detallan y describen en el Estado Financiero de Transferencia, incluyendo el Certificado de Depósito y todas las cuentas por cobrar de SISSO estén o no detalladas en el Estado Financiero de Transferencia y asume la operación comercial de SISSO correspondiente a todo el periodo de contabilidad de SISSO comprendido entre el 1 de septiembre de 2009 al 31 de enero de 2010; adquiriendo la Compradora el derecho a recibir todos los ingresos de SISSO que correspondan a dicho periodo, así como asumiendo todos los gastos operacionales incurridos por SISSO durante o en dicho periodo, de buena fe, dentro de su normal proceder de negocios de operar el Centro Médico. El pago de cualquier otra deuda u obligación económica de SISSO, de cualquier tipo, clase

10

o naturaleza, no contemplada en el Estado Financiero de Transferencia o no relacionada con el normal proceder de negocios de SISSO relacionada a la operación comercial y hospitalaria del Centro Médico comprendida entre el 1 de septiembre de 2009 al 31 de enero de 2010, será de la única responsabilidad de pago del Vendedor.

(c) La Compradora y el Vendedor expresamente acuerdan y se representan entre sí que la Compradora no asume responsabilidad legal o económica alguna que resulte de los casos judiciales: **Advanced Cardiology Center, Corp. vs. SISSO y Otros**, Caso Civil Núm. ISCI 2009-1449 (307) y **Atlantis Health Care Group (P.R.), Inc. vs Municipio de Mayagüez y Otros**, Caso Civil Núm. ISCI 2009-1615 (307), los cual actualmente se ventilan en el Tribunal Superior de Puerto Rico, Sala de Mayagüez y de cualquiera otros casos judiciales complementarios o relacionados, que se encuentren radicados a la fecha de este contrato o que se radiquen con posterioridad a dicha fecha en contra de SISSO o del Vendedor, por dichas partes demandantes o por cualquier otra persona o entidad, relacionada a dichas partes demandantes o a las causas de acción, hechos y circunstancias en que se fundamentan las relacionadas demandas judiciales (en adelante conjuntamente los "**Casos Judiciales Excluidos**"). El pago de cualquier sentencia judicial que pueda eventualmente emitirse por un tribunal con competencia y/o recaer en contra o a favor de SISSO y/o del Vendedor como consecuencia de la adjudicación de los Casos Judiciales, será de la única responsabilidad de pago o beneficio del Vendedor y el Vendedor acuerda indemnizar a SISSO y a la Compradora. La representación legal del Vendedor en la consecución de los Casos Judiciales Excluidos continuará siendo atendida por los abogados que disponga y escoja el Vendedor y dichos abogados serán pagados en su totalidad por el Vendedor. La Compradora asignará, a su costo y cargo, un abogado de su selección para asumir la representación legal de SISSO en los Casos Judiciales Excluidos. Además de los casos anteriores, el Vendedor se compromete con la Compradora a pagar todos los gastos legales para obtener una sentencia final y firme para desahuciar a MEDHS de cualquier espacio que ésta continúe ocupando luego de la fecha de cierre y que forme parte del Centro Médico y a actuar en forma diligente en la obtención de dicha sentencia de desahucio.

(d) La Compradora advendrá responsable del pago de la nómina de empleados, gastos de suplidos, gastos de mantenimiento y demás gastos corporativos y de negocios relacionados a los negocios de SISSO a partir de la fecha de cierre de este contrato. Estos pagos no reducirán el Precio de Compraventa.

(e) Una vez la Compradora advenga en el control corporativo de SISSO y del Centro Médico, la Compradora firmará directamente con el Vendedor o con una entidad que designe el Vendedor, un contrato de arrendamiento de cierto local o espacio comercial dentro del Centro Médico para el establecimiento y operación por el Vendedor o la entidad que el Vendedor designe de una cafetería y un contrato de arrendamiento de cierto local o espacio dentro del Centro Médico para el establecimiento y operación por el Vendedor de un laboratorio cardiovascular no-invasivo y un contrato de arrendamiento de cierto local o espacio de oficinas dentro del Centro Médico para el establecimiento y operación de su consultorio médico. Los términos y condiciones de dichos contratos de arrendamiento serán posteriormente acordados por la Compradora y el Vendedor, proveyéndose que el canon de arrendamiento para cada espacio arrendado será de $15.00 por pie cuadrado que sea arrendado, triple neto, con incrementos de 5% anual en dicho canon de arrendamiento durante el término del contrato de arrendamiento. Cada uno de dichos contratos de

11

arrendamiento será por un término inicial de cinco (5) años con una opción del arrendatario de extender el término de cada contrato de arrendamiento por un término adicional de cinco (5) años.

### Seis (6). Otras Obligaciones y Entrega de Documentos:

(a) El Vendedor se compromete y obliga con la Compradora a entregar en la fecha de cierre a ésta última, con la mayor diligencia posible, a gestión, costo y cargo del Vendedor, todos aquellos otros documentos, públicos o privados, que a la única, pero razonable, opción de la Compradora o sus representantes autorizados le sean requeridos, con el propósito de que la Compradora pueda inscribir su título sobre las Acciones en los registros corporativos de SISSO libre de cargas y gravámenes y/o para dar cumplimiento específico a todas las disposiciones de este contrato.

(b) En la fecha de cierre el Vendedor le entregará a la Compradora los siguientes documentos, expedientes, objetos y bienes, a saber:

(i) El sello corporativo de SISSO; los libros de registro corporativo, las chequeras corporativas, el libro de minutas y resoluciones corporativas, todos los expedientes corporativos y todo otro documento o expediente corporativo en su poder relacionado a los asuntos corporativos y de negocios conducidos por SISSO desde la fecha de su incorporación y hasta la fecha de este contrato.

(ii) Las llaves de la oficina principal de negocios de SISSO y de todos sus anaqueles de expedientes.

(iii) El Certificado de Acciones acreditativos de las Acciones, debidamente endosado a favor de la Compradora.

(iv) Un documento, suficiente en derecho, acreditativo de las renuncias del Vendedor y de los restantes miembros de la junta de directores de SISSO a todos sus puestos corporativos.

(v) Todos los libros, documentos, expedientes, llaves, etc. relacionados a su previa administración y operación del Centro Médico; incluyendo, pero sin limitarse, sus expedientes médicos, sus expedientes de empleados, sus libros de contabilidad y los expedientes de todos sus contratos suscritos con cualquier tercera persona o entidad, etc.

(vi) Los expedientes de los todos los Casos Judiciales Excluidos y de todos y cualesquiera otros casos, demandas y reclamaciones en general, judiciales, administrativas o de cualquier otro tipo, clase o naturaleza, que se encuentran radicados en contra de SISSO o en contra del Centro Médico, en cualquier tribunal, agencia administrativa o entidad y la correspondiente renuncia de los abogados que asumieron la representación legal de SISSO en dichos y demás reclamaciones judiciales o administrativas. Los expedientes de los relacionados casos y reclamaciones que se encuentren en la posesión de los abogados de SISSO que actualmente atienden profesionalmente los mismos, conjuntamente con las correspondientes renuncias de representación legal, podrán ser entregados por el Vendedor a la Compradora dentro del término de 30 días contados a partir de la fecha de este contrato.

(vi) Un documento, a manera de inventario, acreditativo de todos los equipos, maquinarias, muebles, instrumentos y demás propiedad y bienes muebles que a la fecha de este contrato se encuentren localizados dentro o alrededor del Centro Médico y que constituyan o sean parte, directa o indirecta, de la operación comercial y hospitalaria del Centro Médico.

(c) El Vendedor y la Compradora se obligan entre sí en y luego de la fecha de cierre a llevar a cabo, cooperar, firmar, otorgar, producir, gestionar y entregarse, con la mayor diligencia posible y a su propio costo, cualquier otro documento o instrumento y realizar y gestionar cualquier y todo otro acto, cosa o acción que razonablemente resulte necesario, pertinente o conveniente para impartirle validez jurídica y vigencia legal a todos los acuerdos objeto de este contrato.

Siete (7). **Relevos de Responsabilidad**:

(a) En atención a los acuerdos objeto de este contrato y sujeto y condicionado a su previo y fiel cumplimiento por parte de la Compradora de todas sus obligaciones bajo este contrato, el Vendedor se compromete y obliga a indemnizar a la Compradora, por toda y cualquier lesión, pérdida o daño, de cualquier tipo, clase o naturaleza, que pueda ser sufrido por la Compradora y/o por cualquier otra tercera persona o entidad, que tenga su origen en la posesión, operación y administración del Centro Médico por SISSO con anterioridad a la fecha de este contrato o en los actos, omisiones, contratos y obligaciones del Vendedor y/o de SISSO con anterioridad a la fecha de este contrato. Mediante este contrato el Vendedor expresamente releva de toda y cualquier responsabilidad ("hold harmless") a la Compradora, por cualquier y toda pérdida, lesión, daño o reclamación que pueda haber sufrido, pueda estar actualmente sufriendo o puedan sufrir en el futuro el Vendedor, SISSO o cualquier tercera persona o entidad como consecuencia, directa o indirecta, de la posesión, operación y administración del Centro Médico por SISSO con anterioridad a la fecha de este contrato o como consecuencia de los actos y omisiones, culposos o negligentes del Vendedor y/o de SISSO o como consecuencia de incumplimientos de contratos y obligaciones por parte del Vendedor y/o de SISSO, incurridos o suscritos con anterioridad a la fecha de este contrato o por razón del incumplimiento por parte del Vendedor y/o SISSO con las leyes y reglamentos, municipales, estatales y federales, aplicables a la operación y administración del Centro Médico y de la Compradora ser demandada en los tribunales, locales o federales, o en agencias administrativas gubernamentales por tales conceptos, el Vendedor asumirá el pago de su defensa legal y los costos relacionados a la misma y, además, asumirá el pago total de cualquier sentencia, multa o pago que recaiga en contra de la Compradora por tales conceptos.

(b) En atención a los acuerdos objeto de este Contrato y sujeto y condicionado a su previo y fiel cumplimiento por parte del Vendedor de todas sus obligaciones bajo este contrato, la Compradora se compromete y obliga a indemnizar al Vendedor, por toda lesión, pérdida o daño, de cualquier tipo, clase o naturaleza, que pueda ser sufrido por el Vendedor y/o por cualquier otra tercera persona o entidad, que tenga su origen en la posesión, operación y administración del Centro Médico por SISSO con posterioridad a la fecha de este contrato o en los actos y omisiones de SISSO o en el incumplimiento de contratos y obligaciones de la Compradora y/o de SISSO con posterioridad a la fecha de este contrato. Mediante este contrato la Compradora expresamente releva de toda y cualquier responsabilidad ("hold harmless") al Vendedor, por cualquier y toda pérdida, lesión, daño o reclamación que pueda sufrir en el futuro cualquier tercera persona o entidad como consecuencia, directa o indirecta, de la posesión, operación y administración del Centro

Médico por SISSO con posterioridad a la fecha de este contrato o de los actos, omisiones, contratos y obligaciones de la Compradora y/o de SISSO con posterioridad a la fecha de este contrato o por razón del incumplimiento por parte de la Compradora y/o SISSO con las leyes y reglamentos, municipales, estatales y federales aplicables a la operación y administración del Centro Médico con posterioridad a la fecha de este contrato y del Vendedor ser demandado en los tribunales, locales o federales, o en agencias administrativas gubernamentales por tales conceptos, la Compradora asumirá el pago de su defensa legal y de los costos relacionados a la misma y, además, asumirá el pago total de cualquier sentencia, multa o pago que recaiga en contra del Vendedor por tales conceptos.

Ocho (8). **Gastos:** Serán de cuenta y cargo de cada parte sus correspondientes gastos legales en relación a la preparación, redacción y otorgación de este contrato y sus documentos complementarios.

Nueve (9). **Pago de Comisiones:** Cualquiera de las partes que haya contratado a cualquier persona o entidad para viabilizar la transacción objeto de este contrato será la única parte responsable del pago de cualquier comisión que se adeude a dicho(a) persona o entidad por tal concepto.

Diez (10). **Incumplimiento:** El incumplimiento por cualquiera de las partes de los acuerdos objeto de este contrato o de cualquiera de sus obligaciones y compromisos asumidos y convenidos en virtud del presente contrato, será causa suficiente para que la otra parte, a su única opción, pueda declarar rescindidos, resueltos, cancelados y terminados los acuerdos objeto de este Contrato o pueda requerir el cumplimiento específico de los mismos; en ambas de dichas eventualidades, sin perjuicio de que la parte no-incumplidora pueda ejercer cualesquiera otra acción civil, a la que pueda tener derecho, en ley o en equidad, en contra de la parte incumplidora, para recobrar o mitigar todos los daños que pueda sufrir o experimentar por razón de su incumplimiento, incluyendo honorarios de abogados y gastos legales de litigación.

Once (11). **No Renuncia de Derechos:** El hecho de que en algún momento en específico durante la vigencia de los acuerdos objeto de este contrato una de las partes comparecientes no le exija a la otra parte compareciente el cumplimiento específico de alguna cláusula o condición de este Contrato a la que tenga derecho, no podrá ser interpretado como, ni constituirá, una renuncia de dicha parte que así tenga derecho a exigir el cumplimiento específico, a las disposiciones de dicha cláusula o condición. La aceptación por cualquiera de las partes de este contrato del cumplimiento parcial o incumplimiento posterior de cualquier obligación de la otra parte, no se entenderá como una renuncia de la parte que así acepta el cumplimiento parcial o incumplimiento posterior, a su derecho de exigir el cumplimiento total y cabal de dicha obligación o a declarar rescindidos, resueltos, cancelados, vencidos o terminados los acuerdos objeto de este contrato, irrespectivamente de la duración del período en que dicha parte no ejerció su derecho. El hecho de que una parte de este contrato haya consentido a alguna solicitud de la otra parte en algún momento en particular durante la vigencia de los acuerdos objeto de este contrato, no se interpretará como que consentirá en otras ocasiones a la misma solicitud o que renuncia a su derecho a que se le solicite autorización para efectuar y/o consentir a dicha solicitud en otras ocasiones.

Doce (12). **Limitación de Nulidad:** Si cualesquiera de los términos y condiciones de este contrato, o su aplicación a una persona o circunstancia en particular, fuera declarada nula, ilegal y/o

14

inválida por un tribunal con debida competencia y jurisdicción, o no fuera posible su aplicación, la validez de los demás términos y condiciones no se considerarán afectados por ese caso en particular y permanecerán en plena fuerza y vigor.

**Trece (13). Sucesores en Derecho y Partes Interesadas**: Este contrato operará para beneficio de y constituirá una obligación entre las partes de éste contrato y sus respectivos sucesores, herederos y cesionarios. Nada en este contrato, ya sea expreso o implícito, se entenderá o interpretará como que confiere a cualquier otra persona o entidad que no sea a la Compradora, al Vendedor y a SISSO, y los sucesores o cesionarios de éstos, cualquier derecho o remedio bajo o por razón de este contrato.

**Catorce (14). Reclamación Judicial y Ley Aplicable**: En caso de reclamación judicial en virtud de este contrato, las partes comparecientes se someten a la jurisdicción y competencia del Tribunal de Primera Instancia, Sala Superior de Mayagüez. Los acuerdos objeto de este contrato se regirán e interpretarán de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico.

**Quince (15). Cooperación de Redacción**: Ambas partes aquí comparecientes han cooperado y contribuido en la redacción de este contrato. En consecuencia, en cualquier interpretación que se haga de este Contrato, los mismos no serán interpretados restrictivamente en contra de ninguna de las partes.

*Dieciséis (16). Totalidad de Acuerdos*: Ambas partes comparecientes aseguran y garantizan que este Contrato contienen todos los acuerdos y condiciones relativos a la compra, cesión y traspaso de las Acciones. Cualquier y todo otro acuerdo(s) al respecto suscrito u otorgado por y entre las partes de este contrato con anterioridad a la fecha de este contrato, queda(n) expresamente cancelado(s) y dejado(s) sin efecto. Cualquier modificación o enmienda futura a los términos y disposiciones de este contrato que las partes acuerden entre sí, no será válida si la misma no se formaliza mediante acuerdo escrito como una enmienda expresa a este contrato.

**Diecisiete (17). Notificaciones**: Cuando según lo dispuesto por este contrato una de las partes comparecientes deba enviar a la otra parte alguna notificación, las mismas deberán ser por escrito y enviadas por correo certificado, con acuse de recibo y por facsímile (fax telefónico o correo electrónico), a las siguientes direcciones:



<u>A la Compradora</u>:

    470 Avenida César L. González
    Urbanización Roosevelt
    San Juan, P. R. 00918-2627
    Tel. (787) 763-8989
    Fax. (787) 274-8390

Afidávit Núm. _1552 (duplicado)_

Reconocido y suscrito ante mi por don José L. Quirós Jorge, mayor de edad, casado, empresario y vecino de Dorado, Puerto Rico, quien comparece en representación de Mayagüez Medical Center - Dr. Ramón Emeterio Betances, Inc. y a quien he identificado mediante su licencia de conducir, debidamente emitida por el Departamento de Transportación y Obras Públicas del Estado Libre Asociado de Puerto Rico, la cual se encuentra en vigor a esta fecha y la cual contiene su fotografía. En San Juan, Puerto Rico, hoy 3 de febrero de 2010.

_____
NOTARIO PÚBLICO



217481v4

Al Vendedor:

PO Box 3643
Aguadilla, Puerto Rico 00605
Tel. (787) 819-1060
Fax (787) 891-1798

Dieciocho (18). **Reconocimiento**: Ambas partes aquí comparecientes expresamente manifiestan y reconocen: (i) que han leído cuidadosamente el contenido de este contrato; (ii) que están familiarizados con todos los acuerdos objeto de este contrato, que los entienden cabalmente y que reconocen sus consecuencias legales; (iii) que previo a la firma del mismo han estado debidamente asesorados por abogados y demás profesionales pertinentes de su selección, preferencia y confianza; (iv) que conocen y están familiarizados con todos los asuntos corporativos, de negocios y contractuales pertinentes a la operación y administración del Centro Médico y (v) que otorgan y suscriben este contrato voluntariamente porque están de acuerdo con todos sus términos y condiciones a los que se comprometen a dar fiel y cabal cumplimiento.

Los comparecientes de ambas partes manifiestan su conformidad con el presente contrato, con sus firmas a continuación, por estar el mismo en armonía con lo acordado por ellas.

VENDEDOR:

Por: _____
ORLANDO MARINI ROMAN
Por sí y en representación de
SISSO

COMPRADOR:

MAYAGÜEZ MEDICAL CENTER –
DR. RAMÓN EMETERIO BETANCES, INC.

Por: _____
JOSÉ L. QUIROS JORGE
Presidente

Afidávit Núm. 1551 (duplicado)

Reconocido y suscrito ante mi por don Orlando Marini Román, mayor de edad, soltero, doctor en medicina y vecino de Mayagüez, Puerto Rico, quien comparece en su capacidad personal y como único representante autorizado, accionista, director y oficial de Servicios Integrados de Salud del Sur-Oeste, Inc. y a quien he identificado mediante su licencia de conducir, debidamente emitida por el Departamento de Transportación y Obras Públicas del Estado Libre Asociado de Puerto Rico, la cual se encuentra en vigor a esta fecha y la cual contiene su fotografía. En San Juan, Puerto Rico, hoy 3 de febrero de 2019.

_____
NOTARIO PÚBLICO

16

Exhibit 37

**PIETRANTONI MENDEZ & ALVAREZ LLP**
BANCO POPULAR CENTER - 19TH FLOOR
209 MUÑOZ RIVERA AVENUE
SAN JUAN, PUERTO RICO 00918
SWITCHBOARD (787) 274-1212

ANTONIO J. SANTOS
PARTNER
(787) 274-4917

TELECOPIER (787) 274-1470
ELECTRONIC MAIL
ASantos@pmalaw.com

16 de febrero de 2010

POR MENSAJERO

Lcda. Iris J. Vázquez Rosario
Secretaria Auxiliar para la Reglamentación y
Acreditación de Facilidades de Salud
Antiguo Hospital Ruiz Soler
Bayamón, PR 00959

Re: Aviso de Cambio de Control del Hospital Dr. Ramón E. Betances del Centro Médico de Mayagüez y petición de traspaso o expedición de licencias nuevas

Estimada señora Vázquez:

En representación de nuestro cliente, Mayagüez Medical Center - Dr. Ramón Emeterio Betances, Inc. ("MMC"), le notificamos que efectivo el 3 de febrero de 2010, Sistemas Integrados de Salud del Sur Oeste, Inc. ("SISSO"), entidad que actualmente administra el Hospital Dr. Ramón E. Betances de Mayagüez (el "Hospital"), se convirtió en una subsidiaria de MMC. En esa fecha, MMC adquirió la totalidad de las acciones emitidas y en circulación de SISSO y, como resultado de esa transacción, ocurrió un cambio del control corporativo de SISSO y dicha entidad pasó a ser una subsidiaria de MMC.

Además, el 29 de enero de 2010, MMC entró en un contrato con el Municipio de Mayagüez para arrendar, administrar y operar el Hospital y subcontrató a SISSO para llevar a cabo esas funciones a fin de evitar cualquier interrupción en los servicios que presta el Hospital a los pacientes del área oeste de la Isla. De esta forma SISSO puede seguir operando y administrando el Hospital bajo las licencias y permisos que posee para prestar esos servicios. El nombre del Hospital no cambiará como resultado de estas transacciones y el personal de SISSO continuará realizando las mismas tareas de siempre. Por el momento, no habrá ningún cambio en la organización, ubicación, instalaciones, equipos o procedimientos del Hospital, que no sea el cambio del control corporativo que se indica anteriormente.

Previó a la firma de los acuerdos que se describen anteriormente, el Municipio de Mayagüez dio por terminado el Contrato para la Operación y la Administración del Hospital Dr. Ramón Emeterio Betances del Centro Médico de Mayagüez de 29 de agosto de 2009 que había firmado con Medical Educational and Health Services, Inc. con relación a esta facilidad hospitalaria.

El propósito de esta notificación a la Secretaria Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS) es para que tome conocimiento de los hechos que se indican en esta carta en cuanto al cambio del control corporativo de SISSO. Además, en cuanto a las licencias y permisos que posee SISSO para operar y administrar el Hospital, solicitamos que SARAFS proceda a emitir o transferir dichas licencias para reconocer que MMC asumió el control corporativo de SISSO, según lo que SARAFS considere apropiado en este caso. Incluimos con esta carta copias de las licencias existentes de SISSO para facilitar su referencia a las mismas.

Esta notificación se hace en cumplimiento con los requisitos del Reglamento del Secretario de Salud número 117 para Reglamentar el Licenciamiento, Operación y Mantenimiento de los Hospitales en el Estado Libre Asociado de Puerto Rico (el "Reglamento"). El Reglamento establece que en caso de un cambio del control corporativo de un tenedor de licencia bajo dicho Reglamento se deberá expedir una nueva licencia o un traspaso de la existente para reflejar dicho cambio de control.

Agradeceré me informe si existe algún requisito adicional a esta notificación que deba cumplir mi cliente para darle curso a esta solicitud en cuanto a las licencias de SISSO.

Atentamente,

Antonio J. Santos

Anejos

c. Hon. José Guillermo Rodríguez Rodríguez
José L. Quirós
Lcdo. Jorge Galva