# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: <br><br> **MEDICAL EDUCATIONAL AND HEALTH SERVICE, INC.** <br><br> Debtor | Case No. 10-04905 (BKT) <br><br> Chapter 11 |
| **MEDICAL EDUCATIONAL AND HEALTH SERVICE, INC.** <br><br> Plaintiff, <br><br> v. <br><br> **INDEPENDENT MUNICIPALITY OF MAYAGUEZ, ET AL.** <br><br> Defendants. | Adv. Proc. No. 10-00148 (BKT) <br><br> Re: Declaratory Judgment, Collection of Monies and Injunctive Relief |

**AMENDED ANSWER TO THE VERIFIED COMPLAINT**

TO THE HONORABLE BRIAN K. TESTER, U.S. BANKRUPTCY JUDGE:

COMES NOW Defendant Orlando Marini Román, M.D. (hereinafter "OMR"), through his undersigned counsel, and in answering the Verified Complaint in this action, states and alleges:

1. The allegations contained in ¶ 1 are jurisdictional averments, and/or legal conclusions that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

2. The allegations contained in ¶ 2 are jurisdictional averments and/or, legal conclusions, or allegations that do not pertain to OMR and therefore do not require a response. In the event that they do, they are denied.

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -2-

       3.       The allegations contained in ¶ 3 are jurisdictional averments, and legal conclusions or speculation, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

       4.       The allegations contained in ¶ 4 are jurisdictional averments and legal conclusions or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

       5.       The allegations contained in ¶ 5 are jurisdictional averments, and/or legal conclusions, or speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

       6.       The allegations contained in ¶ 6 are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

       7.       Paragraph 7 of the Verified complaint is admitted except as for its last sentence, which is denied. MEDHS was organized on May 20th, 2004, before the Municipality presented its proposal to rent the Hospital, which was on June 21, 2006. In that proposal, MEDHS represented that it had experience in medical facilities administration. Furthermore, in its Opposition to the Motion to Dismiss the bankruptcy case, MEDHS averred that the company was created for real estate purposes.

       8.       The allegations contained in the first three sentences of ¶ 8 are admitted, however the two subsequent sentences which sustain the purpose of including the Municipality in the suit are denied due to lack of knowledge or information sufficient to form a belief as to their veracity.

       9.       The allegations contained in the first sentence of ¶ 9 are admitted, however the remaining averments which set out the plaintiff's purpose of suing the Mayor and his wife in

their personal capacities are denied due to lack of knowledge or information sufficient to form a belief as to their veracity.

10. OMR denies the allegations contained in ¶ 10 as drafted. The main contract did not limit the space SISSO could sublease. The Main Contract between the Municipality, SISSO and MEDHS also does not reserve MEDHS' right over any particular area or the Radiotherapy ward. SISSO's sublease extended over the entire hospital. MEDHS was under the contractual obligation to use SISSO as the hospital's sole operator.

11. OMR denies the allegations contained in ¶ 11 as drafted. SISSO subleased all of the facilities. The parties did not consent to leaving the radiotherapy ward or any other area out of the contract. SISSO jointly and severally guaranteed MEDHS' lease obligations to the Municipality. Neither the main contract between SISSO, MEDHS and the Municipality, nor the contract between SISSO and MEDHS make any exclusion of hospital areas subject to the guarantee. The contract between SISSO and MEDHS' first Annex was prepared subsequently and was not signed or authorized by OMR. The Annex was fraudulently altered in order to exclude the radiotherapy area from the lease. The space rented, according to the contract between SISSO and MEDHS was 469,101 square feet, the same as that included in Annex F of the main contract. See clause 4 of the SISSO/MEDHS contract. The day the contract was executed the parties convened in that the contract could be changed at any time at SISSO's convenience.

12. OMR denies the allegations contained in ¶ 12 as drafted. There was no conspiracy among those mentioned in the allegations. Messrs. Castellanos, Pedro Montes and Edwin Rodríguez knew of OMR's interest to sell SISSO. Since the referenced persons had knowledge of everything that went on inside the hospital, they were given the opportunity to

look for a buyer. OMR's interest to sell SISSO to an entity who could comply with the contract with the Municipality was paramount and discussed openly with MEDHS' directors and with the Municipality. Messrs. Montes, Castellanos and Rodríguez knew of this process and participated in searching for a buyer.

13. The allegations contained in ¶ 13 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied. OMR, met with the Mayor of Mayagüez to discuss the sale of MEDHS or SISSO. Mr. Castellanos was present at the meeting one held on November 6, 2009, in which a moratorium on payment of rent was discussed.

14. The allegations contained in ¶ 14 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied. SISSO and MEDHS' contract was only a formality required by the Municipality. The main contract between the Municipality, MEDHS and SISSO established all obligations amongst the parties. At no point in time was there an agreement to exclude the Radiotherapy ward from any contract or to reserve an area for MEDHS to contract with MARC or any other provider. All sublease negotiations had to be provided through SISSO who was the sole administrator and guarantor of the Municipality's lease. From September 2009 through January 2010, SISSO claimed MARCS lease payments for the use of its ward. Annex 1 is a document created by Castellanos and Edwin Rodríguez in order to sue OMR. Furthermore, any conspiracy theory between OMR and the Municipality against MEDHS is hereby denied.

15. The allegations contained in ¶ 15 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves.

16. The allegations contained in ¶ 16 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

17. OMR denies the allegations contained in ¶ 17 of the Verified Complaint. The documents referred to therein speak for themselves.

18. OMR denies the allegations contained in ¶ 18 of the Verified Complaint. The documents referred to therein speak for themselves.

19. OMR denies the allegations contained in ¶ 19 of the Verified Complaint. The documents referred to therein speak for themselves.

20. The allegations contained in ¶ 20 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

21. The allegations contained in ¶ 21 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

22. The allegations contained in ¶ 22 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

23. OMR denies the allegations contained in ¶ 23 of the Verified Complaint. The documents referred to therein speak for themselves. MEDHS and its components knew SISSO

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -6-

was searching for a buyer to invest and administer the hospital. Messrs. Castellanos, Montes, Rodriguez and a mediator were also searching for people interested in acquiring SISSO so that it could continue to operate. MEDHS was unable to administer the hospital because it did not have the necessary capital.

24. The allegations contained in ¶ 24 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied. Any conspiracy theory is hereby denied.

25. The allegations contained in ¶ 25 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

26. The allegations contained in ¶ 26 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

27. The allegations contained in ¶ 27 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

28. The allegations contained in ¶ 28 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied. The averments included herein demonstrate the Corporation was not organized to administer the hospital.

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -7-

29. The allegations contained in ¶ 29 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

30. The allegations contained in ¶ 30 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves. Assuming, arguendo, that there was fraud on MEDHS' part acting through Messrs. Castellanos, Edwin Rodríguez and Pedro Montes, OMR did not participate.

31. The allegations contained in ¶ 31 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves.

32. OMR denies the allegations contained in ¶ 32 of the Verified Complaint. The documents referred to therein speak for themselves. SISSO subleased all the facilities included in the main lease contract among MEDHS, the Municipality and SISSO. At no point in time was there an agreement to exclude the radiotherapy ward (or any other area) out of the contract. SISSO jointly and severally guaranteed MEDHS' lease obligations under all facilities. Annex 1 of the SISSO/MEDHS contract was prepared afterwards by Castellanos and it was not signed or authorized by OMR. Said Annex fraudulently alters the leased area to eliminate the radiotherapy section. The space leased according to the contract between SISSO and MEDHS is of 469,101, as in Annex F of the main contract with the Municipality. The MEDHS/SISSO contract established SISSO's power to change the contract at any point in time.

33. OMR denies the allegations contained in ¶ 33 of the Verified Complaint as drafted. The documents referred to therein speak for themselves. The referenced letter was sent by Cardio Services, Inc. not by OMR in his personal capacity.

34. OMR denies the allegations contained in ¶ 34 of the Verified Complaint. The documents referred to therein speak for themselves.

35. OMR denies the allegations contained in ¶ 35 of the Verified Complaint. The documents referred to therein speak for themselves. By 2007 Mr. Castellanos was looking for potential hospital lessees. In furtherance of this, interested parties were requested to provide letters expressing their interest to the Municipality. MEDHS' proposal was pre-adjudicated on December 12, 2006, 11 months before any of the mentioned corporations presented any statement of interest. In 2007, Mr. Castellanos proposed that the corporations sublease a space in the facilities contingent on their acquisition of the hospital's administration. The letters were delivered with the intention of subleasing a property, not for an investment. In 2007, the corporations were not offered to enter the hospital in any way other than as sublessees. It was not until 2009 when Messrs. Castellanos, Rodríguez and Montes expressed that they needed investors, which is the reason they contacted OMR. A commitment to invest in equipment is not expressed in the letters as the word "invest" refers to a sublease of the area. The contents of the letters are being taken out of context in an effort to sustain plaintiff's arguments.

36. The allegations contained in ¶ 36 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves.

37. The allegations contained in ¶ 37 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves.

38. The allegations contained in ¶ 38 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves.

39. OMR denies the allegations contained in ¶ 39 of the Verified Complaint. The documents referred to therein speak for themselves. Through the contract with the Municipality, SISSO acquired, as a joint and several guarantor, all the Hospital's contracts. Since SISSO entered as a new administrator, the "Corporación Centro de Imágenes del Oeste" was required to pay the rent or leave. Since they could not pay rent, they gave up the facilities by November, 2009.

40. OMR denies the allegations contained in ¶ 40 of the Verified Complaint. The written agreement referred to therein speaks for itself. By the time the contract was signed, the parties understood that in exchange for his $3 million contribution, OMR would have 100% control over SISSO's shares. OMR did not own stock in MEDHS, as not-for-profit corporations do not issue shares. Together, Mr. Montes and Drs. Rodríguez and Castellanos would contribute $1 million, which, according to a moratorium, would be paid in 6 months. Messrs. Montes, Rodríguez and Castellanos were not truthful as to their capability of paying. In the end, they never paid.

41. The allegations contained in ¶ 41 of the Verified Complaint are jurisdictional averments, legal conclusions, speculations from counsel, or allegations that do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

42. OMR denies the allegations contained in ¶ 42 of the Verified Complaint as impertinent to any claims as against him.

43. OMR denies the allegations contained in ¶ 43 of the Verified Complaint as impertinent to any claims as against him.

44. OMR denies the allegations contained in ¶ 44 of the Verified Complaint as impertinent to any claims as against him.

45. OMR denies the allegations contained in ¶ 45 of the Verified Complaint as impertinent to any claims as against him.

46. OMR denies the allegations contained in ¶ 46 of the Verified Complaint as impertinent to any claims as against him.

47. OMR denies the allegations contained in ¶ 47 of the Verified Complaint as impertinent to any claims as against him.

48. OMR denies the allegations contained in ¶ 48 of the Verified Complaint as impertinent to any claims as against him.

49. OMR denies the allegations contained in ¶ 49 of the Verified Complaint as impertinent to any claims as against him. If anything, averments nos. 42 through 49 tend to demonstrate that Dr. Castellanos did not fulfill his fiduciary duties as director of MEDHS.

50. OMR denies the allegations contained in ¶ 50 of the Verified Complaint as impertinent to any claims as against him. The documents referred to therein speak for themselves

51. OMR denies the allegations contained in ¶ 51 of the Verified Complaint as impertinent to any claims as against him. During the first months of operation, up to and including November 2009, the administrative and finance department personnel was brought in

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -11-

by Dr. Castellanos from his own corporations and accepted in good faith by OMR. During the first two and a half months, the Finance Director represented that SISSO had enough money to operate. However, during the third month, and only a few days after notifying that the Hospital had more than one million dollars in its bank account, the Finance Director expressed that the Hospital no longer had cash to operate. The Finances Director was fired in the third month on the job due to the fact that, together with Dr. Castellanos, they had tried to defraud OMR by tampering with the corporate and financial books, registering OMR investment capital as debt and eliminating him from his shareholder status.

  52.  OMR denies the allegations contained in ¶ 52 of the Verified Complaint.

  53.  The allegations contained in ¶ 53 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity.

  54.  The allegations contained in ¶ 54 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity.

  55.  The allegations contained in ¶ 55 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity.

  56.  OMR denies the allegations contained in ¶ 56 of the Verified Complaint. MARC was bankrupt, and therefore could not negotiate without the Municipality's authority. The contract between MEDHS and MARC, together with its annexes, is a fraud assembled to justify this suit. OMR has been a director of MEDHS from September 2009 until the present date. During that time, the board meetings have never discussed any acquisition by MEDHS of any hospital space in order to sublease it to MARC or any other person.

  57.  OMR denies the allegations contained in ¶ 57 of the Verified Complaint. The documents referred to therein speak for themselves. The letter does not demonstrate that Drs.

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -12-

Castellanos, Rodríguez and Mr. Montes García owned 45% of the shares. As a condition to the his investment of $3 million, OMR had demanded that he be the sole owner of SISSO if he was to make the investment.

58. OMR denies the allegations contained in ¶ 58 of the Verified Complaint.

59. OMR denies the allegations contained in ¶ 59 of the Verified Complaint. This averment describes Drs. Castellanos and Rodríguez and Mr. Montes' intentions to defraud OMR and SISSO.

60. OMR denies the allegations contained in ¶ 60 of the Verified Complaint. Drs. Castellanos and Rodríguez and Mr. Montes knew about negotiations with Quiros. They had no money to invest in SISSO in order to become shareholders.

61. OMR denies the allegations contained in ¶ 61 of the Verified Complaint.

62. The allegations contained in ¶ 62 of the Verified Complaint do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

63. OMR denies the allegations contained in ¶ 63 of the Verified Complaint do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied. The document referred to therein speaks for itself.

64. The allegations contained in ¶ 64 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity. The documents referred to therein speak for themselves. The letter at Exhibit 23 evinces Dr. Castellanos' intention to use MARC to detrimentally effect SISSO.

65. The allegations contained in ¶ 65 of the Verified Complaint do not pertain to OMR and therefore, do not require a response. In the event that they do, they are denied.

66. The allegations contained in ¶ 66 of the Verified Complaint do not pertain to OMR and therefore, do not require a response. The documents referenced therein speak for themselves.

67. The allegations contained in ¶ 67 of the Verified Complaint do not pertain to OMR and therefore, do not require a response. The document referred to therein speaks for itself.

68. The allegations contained in ¶ 68, of the Verified Complaint are denied. Dr. Castellanos and MEDHS was previously and fully aware of OMR's efforts to sell his interest in SISSO. However, OMR never met with Mr. Quiros and the Municipality at one and the same time in connection with OMR's divestiture of SISSO.

69. OMR denies the allegations contained in ¶ 69 of the Verified Complaint. The documents referred to therein speak for themselves. The potential acquisition of SISSO by a third party was known by Drs. Castellanos and Rodríguez and Mr. Montes and the Municipality.

70. OMR denies the allegations contained in ¶ 70 of the Verified Complaint. The allegations constitute the rambling speculations of legal counsel and have no legal significance.

71. OMR denies the allegations contained in ¶ 71 of the Verified Complaint. The allegations constitute the rambling speculations of legal counsel and have no legal significance.

72. OMR denies the allegations contained in ¶ 72 of the Verified Complaint. OMR attended any meeting in January 2010 as a representative of SISSO and not in representation of any other corporation.

73. OMR denies the allegations contained in ¶ 73 of the Verified Complaint.

74. OMR denies the allegations contained in ¶ 74 of the Verified Complaint.

75. OMR denies the allegations contained in ¶ 75 of the Verified Complaint.

76. The first sentence of ¶ 76 of the Verified Complaint is denied as drafted. The remaining allegations are denied.

77. OMR denies the allegations contained in ¶ 77 of the Verified Complaint.

78. With respect to the allegations contained in ¶ 78 of the Verified Complaint, OMR admits that on January 28, 2010 the Municipality terminated its contract with MEDHS and SISSO. The remaining allegations of ¶ 78 of the Verified Complaint are denied.

79. OMR denies the allegations contained in ¶ 79 of the Verified Complaint. The documents referred to therein speak for themselves.

80. OMR denies the allegations contained in ¶ 80 of the Verified Complaint.

81. OMR denies the allegations contained in ¶ 81 of the Verified Complaint. The terms of the January 29, 2010 letter signed by OMR in his capacity as president of SISSO are clear and self-explanatory, and based on facts known to all interested parties.

82. OMR denies the allegations as drafted as contained in ¶ 82 of the Verified Complaint.

83. OMR denies the allegations contained in ¶ 83 of the Verified Complaint.

84. OMR denies the allegations contained in ¶ 84 of the Verified Complaint.

85. OMR denies the allegations contained in ¶ 86 of the Verified Complaint.

86. OMR denies the allegations contained in ¶ 86 of the Verified Complaint.

87. The allegations contained in ¶ 87 of the Verified Complaint are denied.

88. The allegations contained in ¶ 88 of the Verified Complaint are denied.

89. The allegations contained in ¶ 89 of the Verified Complaint are denied for lack of knowledge or information sufficient to form a belief as to their veracity.

90. OMR denies the allegations contained in ¶ 90 of the Verified Complaint. The allegations ignore the content of the November 10, 2009 letter from MEDHS.

91. OMR denies the allegations contained in ¶ 91 of the Verified Complaint as not pertinent to any claims as against him.

92. The allegations contained in ¶ 92 of the Verified Complaint consist of speculations from counsel that do not require a response from OMR. In the event that they do, they are denied.

93. The allegations contained in ¶ 93 of the Verified Complaint consist of speculations from counsel that do not require a response from OMR. In the event that they do, they are denied.

94. The allegations contained in ¶ 94 of the Verified Complaint consist of speculations from counsel that do not require a response from OMR. In the event that they do, they are denied.

95. The allegations contained in ¶ 95 of the Verified Complaint are unintelligible and a more definite statement is required. In the alternative, they are denied.

96. OMR denies the allegations contained in ¶ 96 of the Verified Complaint as not pertinent to any claims as against him.

97. OMR denies the allegations contained in ¶ 97 of the Verified Complaint. The documents referred to therein speak for themselves.

98. The allegations contained in ¶ 98 of the Verified Complaint consist of speculations from counsel that do not require a response from OMR. In the event that they do, they are denied.

Amended Answer to the Complaint
Adv. No. 10-000148 (BKT)
Page -16-

99. The allegations contained in ¶ 99 of the Verified Complaint consist of speculations from counsel that do not require a response from OMR. In the event that they do, they are denied.

100. The allegations contained at paragraphs 100, 101, and 102 have no bearing as to OMR. On this basis the allegations do not require a response from OMR. In the event that a response is required, the same are denied.

101. The allegations contained in ¶¶ 103 and 104 of the Verified Complaint have no bearing as to OMR. On this basis the allegations do not require a response from OMR. In the event that a response is required, the same are denied.

102. The allegations contained in ¶ 105 and ¶ 106 of the Verified Complaint consist of speculation from counsel. On this basis the allegations do not require a response from OMR. In the event that a response is required, the same are denied.

103. The allegations contained in ¶ 107 and 108 of the Verified Complaint are denied.

104. The allegations comprising the Fourth Cause of Action, found at paragraphs 109, 110, 111, and 112 are denied.

105. OMR denies the allegations contained in ¶ 113 and 114 are denied.

106. OMR denies the allegations of the Sixth Cause of Action, found at paragraphs 115, 116, 117, 118, 119, and 120 of the Verified Complaint. The cause of action, and the elements of the cause as set forth do not implicate OMR.

107. OMR denies the allegations of the Seventh Cause of Action, found at paragraphs 121, 122, 123, 124, 125, 126, and 127 of the Verified Complaint. The cause of action, and the elements of the cause as set forth, do not implicate OMR.

108. The allegations of the Eighth Cause of Action, found at paragraphs 128, 129, and 130 of the Verified Complaint are denied by OMR.

109. The Ninth Cause of Action, contained at paragraphs 131, 132, and 133 of the Verified Complaint have no bearing as to OMR. The averments found at the paragraphs indicated are denied in their totality.

110. The Tenth Cause of Action, contained at paragraphs 134, 135, and 136 of the Verified Complaint have no bearing as to OMR. The averments found at the paragraphs indicated are denied in their totality.

111. The Eleventh Cause of Action, contained at paragraphs 137 through and including paragraph 149 is denied. The averments found at the paragraphs indicated are denied in their totality.

## AFFIRMATIVE DEFENSES

112. The Complaint is time barred.

113. The Complaint fails to state a claim for relief against OMR.

114. MEDHS comes to this Court with unclean hands and is barred from seeking any relief by virtue of the doctrine of laches.

115. It is also estopped from challenging the situation its course of conduct created.

116. OMR did not interfere with the management contracts discussed herein.

117. Plaintiff has suffered no irreparable injury.

118. In any case, the damages claimed in the Complaint were the result of the sole and exclusive negligent acts and omissions of MEDHS, its Directors, Officers, and/or employees.

119. Plaintiff's request of redress of damages is grossly exaggerated and speculative.

120. Plaintiff has failed to exercise reasonable efforts to mitigate any damage that it may have suffered

121. Plaintiff has not suffered damages on account of any personal or corporate acts or omissions of OMR.

122. Plaintiff failed to plead: (1) that the defendants acted under color of state law; (2) that the plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation.

123. Plaintiff has similarly failed to set forth an actionable RICO claim.

124. Plaintiff has failed to allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."

125. Plaintiff has also failed to plead all of the elements of a substantive criminal offense, that OMR adopted the goal of furthering or facilitating a criminal endeavor.

126. Plaintiff has failed to plead mail or wire fraud with specificity.

127. Plaintiff has failed to plead that all of the elements of a substantive criminal offense, [i.e.] that he adopt the goal of furthering or facilitating the criminal endeavor.

128. Plaintiff has failed to allege the existence of at least one overt act by a defendant in furtherance of a RICO conspiracy and the assent of each defendant to the conspiracy.

129. The Plaintiff has been obstinate, temerarious and frivolous in filing the above captioned Complaint against OMR, and therefore should be condemned to the payment of attorney's fees in favor of the appearing parties.

130. OMR reserves the right to amend his Affirmative Defenses and his Answer to the Verified Complaint.

WHEREFORE, OMR respectfully requests this Honorable Court to enter judgment in his favor dismissing the Verified Complaint with prejudice, awarding it costs, disbursements, reasonable attorney's fees, and granting such other and further relief as may be just and proper.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, this 23rd day of November, 2010.

I HEREBY CERTIFY: That on this date a true and exact copy of the foregoing document has been filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of the filing to parties in interest.

**O'NEILL & GILMORE, P.S.C.\**
**Legal counsel for Orlando Marini, M.D.**
Citibank Towers, Suite 1701
#252 Ponce de Leon Avenue
San Juan, Puerto Rico 00918
Tel.  787-620-0670
Fax.  787-620-0671
Email:  cpg@go-law.com

*s/Charles P. Gilmore*
Charles P. Gilmore
   USDC 209614