UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| *IN THE MATTER OF:*<br>**Medical Educational & Health Services, Inc.**<br><br>**DEBTOR**<br>**Medical Educational & Health Services, Inc.**<br><br>*Plaintiff*<br><br>V.<br><br>**Independent Municipality of Mayaguez, ET ALS.**<br>*Defendants* | CASE NO: 10-04905 (BKT)<br><br>**CHAPTER 11**<br><br>Adversary NO. 10-00148 BKT |

**Motion in Opposition to Defendant's Motion to Dismiss Pursuant To R. 12 (B) (6)**

TO THE HONORABLE COURT:

COME NOW, **Medical Educational & Health Services, Inc.**, from now on *MEDHS*, through the undersigned attorney and respectfully state(s), allege(s) and pray(s) as follows:

### Introduction

1. On March 15, 2011, defendant Mr. José Guillermo Rodriguez, Mrs. Marisel Mora and their conjugal partnership, filed a "MOTION TO DISMISS PURSUANT TO R. 12 (b) (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE", from now on "The Motion to Dismiss". See docket # 67.

2. In said Motion to Dismiss, defendants averred that MEDHS's Verified Complaint "sets forth no facts that satisfy the legal standard of **plausibility.** Because the allegations are conclusory, they failed to comply with the well pleaded requirement." Therefore, according to Defendant's theory, Plaintiff have failed to state a claim under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution; failed to state a claim under the RICO Act, 18 U.S.C. §1961-1968 and; Claims under supplemental jurisdiction should be dismissed.

3. As we will discuss below, the Verified Complaint is not supported in conclusory allegations that defines a legal theory. Instead, it is supported by 37 evidentiary exhibits that are integral part of the complaint, conforming factual allegations and factual supportive material that this Honorable Court has to consider, in order to analyze the claims made under the plausibility criteria.

4. Defendant's Motion to Dismiss should be DENIED by this Honorable Court because, as we will demonstrate below, the Verified Complaint meets the plausibility criteria; the legal and factual elements, regarding all claims made against defendants, are well grounded and supported; and because, considering we are opposing a R. 12 (b) (6) motion to dismiss, in deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.; see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). By doing so, this Honorable Court should not have a problem asserting that a dismissal would constitute a failure of justice.

## The Plausibility Criteria

5. The plausibility standard is not a restrictive rule intended to eliminate conclusive allegations and legal theories form a pleading. Instead, it is an analysis standard to determine if, considering all reasonable inferences, the pleading is grounded and supported on the minimal amount of facts necessary to sustain claims against the defendants.

6. Legal theories and conclusive allegations are necessary tools in a complaint in order to claim remedies provided by law. This means that legal theories and conclusive allegations are integral

and indispensable parts of a pleading, even if they are not sufficient, standing alone, during a Federal Rule of Civil Procedure 12(b)(6) motion analysis.

7. While legal conclusions **can provide the framework of a complaint**, they must be **supported** by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (U.S. 2009)

8. To state a valid claim, a complaint must contain either **direct or inferential** allegations respecting all the material elements to sustain recovery **under some viable legal theory**. *Id.* at 562. Elkhoueiry v. Schroeder, 2010 U.S. Dist. LEXIS 87848 (D. Ohio 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). After analyzing all factual allegation and materials attached to the complaint, it should be a correct assumption that "[…] courts **may infer** from the factual allegations in the complaint **'obvious alternative explanation[s]**,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal,* 129 S. Ct. at 1951-52). **However**, "[a] complaint **may not be dismissed** because the plaintiff's claims do not support the legal theory he relies upon **since the court must determine** if the allegations provide for relief **on any possible theory."** *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir. 1997).

9. A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The truth of the facts set forth in the complaint **are not at issue** on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) **only if there is no law to support the claims made**, or if the facts alleged **are insufficient** to state a claim, or if on the face of the complaint there **is an insurmountable bar** to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). As this Honorable Court will notice, none of those criteria has been met in Defendant's motion to dismiss. Instead they rely in the assumption that, in a literal and individual reading of the Verified Complaint, its allegations do not meet the plausibility

3

standard criteria. Defendants motion clearly promotes a Motion to Dismiss without taking under consideration that all factual allegations includes material attached to the complaint; indispensable material for this Court to consider, in order to formulate the correct conclusions while performing the plausibility analysis.

10. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for **enough facts** "to raise a **reasonable expectation that discovery** will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. Determining whether a complaint states a plausible claim for relief will, […], be a **context-specific task** that requires the reviewing court to **draw on its judicial experience and common sense.** 490 F.3d at 157-158. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (U.S. 2009).

11. Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions). As a result, "[a] motion to dismiss for failure to state a claim **is viewed with disfavor and is rarely granted."** *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1969)).

12. On a motion to dismiss, this Honorable Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all **reasonable inferences** therefrom." *Ruiz v. Bally Total Fitness Holding Corp*., 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and **liberally construe the complaint in favor** of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050. Material attached to a complaint, or incorporated by reference, **are a part of the**

4

**pleading itself**, and the Court may consider them on a motion to dismiss. *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008). The Court must also "**limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint.**" *Lovelace v. Software Spectrum, Inc*., 78 F.3d 1015, 1017-18 (5th Cir. 1996). Therefore, in order to understand if the Verified Complaint meets the plausibility criteria, it is necessary to analyze every allegation made in the complaint as a whole. It would be illogical and unfair to pretend that every single allegation made in a complaint, that is intended to cover all factual and legal grounds against multiple parties, reflects all aspects related to plausibility without include exhibits attached to the complaint that by their nature exposed and described a series of events (facts), where the Defendants were active and/or passive actors.

13. As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces **does not** require "**detailed factual allegations,**"[…](Citations omitted) Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (U.S. 2009) **[…]**a complaint must contain **sufficient** factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (U.S. 2009)

14. The "plausibility" language used by the Supreme Court in *Twombly* has not been interpreted[…]to require a "universal standard of heightened fact pleading," but to require a complaint to "**amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim** *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007) (emphasis in original). As we have stated before, "a claim **has facial plausibility** when the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at

5

1965). *Post-Twombly*, the court must still assume that well-pleaded factual allegations set forth in a complaint are true and draw all inferences in favor of the non-moving party (*see, [*10] e.g., Holmes v. Poskanzer*, 342 Fed. Appx. 651, 2009 U.S. App. LEXIS 15976, 2009 WL 2171326 (2d Cir. Jul. 21, 2009)), but those factual allegations must be enough to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint **are true (even if doubtful in fact).**" *Williams v. Berkshire Fin. Grp. Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007)(quoting *Twombly*, 127 S. Ct. at 1959); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

15. Said all of the above, the Motion to Dismiss should be **DENIED** because, the plausibility standard criteria in a Complaint is not a restrictive one. It relies upon the consideration and experience of this Honorable Court; where the analysis should be made in favor of Plaintiff allegations, considering all facts within the allegations and the attached material which is part of the Complaint.

## 42 U.S.C. Section 1983 And Violation Of His Rights Under The Fourteenth Amendment To The United States Constitution

16. Taking under consideration all stated above, in order to demonstrate to this Honorable Court that the Complaint meets all requirements of law and plausibility criteria, it is necessary to discuss the allegations made in said complaint and the material attached to it against the Defendants.

17. Mr. José Guillermo Rodriguez as well as his wife, Mrs. Marisel Mora and their conjugal partnership were included in this proceeding in order to respond to MEDHS allegations of violations of constitutionally protected property rights, without due process of law, all committed by a state actor acting under color of law, or in conjunction with him. The acts described were performed by Mr. Jose Guillermo Rodriguez, acting as Mayor of Mayaguez, clearly a state actor. Said actions were performed under color of state law. Mr. Jose Guillermo Rodriguez was included in this complaint both, in his official or representative capacity, as Mayor and as an individual who, acting under color of state or municipal law, violated MEDHS' constitutionally

6

protected property rights. He was included for the purpose of obtaining injunctive relief against him, personally, ordering him to cease the herein described violations, as well as mayor, to obtain compliance with the specific terms of the contract. He may allege that this allegations are made only in his Administrative Character but, the reality is that by including Mrs. Marisel Mora and their conjugal partnership in the complaint to respond, financially, for the damages that his (Mr. José Guillermo Rodriguez) unconstitutional and tortious actions have caused, it is obvious that the personal capacity is included also to answer financially for his actions, referred in the Complaint, performed under color of state law, as the Municipality highest authority. (Please see allegation # 9)

## Due Process

18. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This guarantee has both substantive and procedural components. The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions. Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to "impos[e] liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

19. "The Fourteenth Amendment requires that the deprivation of a property interest be preceded **by notice and opportunity for hearing** appropriate to the nature of the case." Maldonado, 682 F. Supp. 2d 109, 128 (internal quotation marks and citation omitted). "The Fourteenth Amendment's protection of 'property,' however, has never been

7

interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to **any significant property interest**. . . ." Fuentes, 407 U.S. at 86 (emphasis added) (internal quotation marks and citation omitted); see also In re Pontes, 310 F. Supp. 2d 447 (D.R.I. 2004) (due process clause protects significant property interests).

20. Regarding to Due Process allegations, it is clear that property is a constitutionally protected right under the Fourteen Amendment of the United State Constitution. It is also clear that property, for purposes of the Civil Rights Law, is defined by state law. Procedural due process ensures that a state will not deprive a person of life, liberty, or **property** unless **fair procedures** are used in making that decision, while substantive due process guarantees that **a state** will not deprive a person of those rights for an arbitrary reason **regardless** of how fair the procedures used in making the decision. Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

21. MEDHS by contracting with the Municipality of Mayaguez acquired a Proprietary Interest, through the Lease Contract, (Leasehold) and the tenancy by entering in immediate possession of the Mayaguez Medical Center Hospital. (Please see exhibit # 9) Leasehold rights are property rights, under Commonwealth law.

22. The Lease Contract between MEDHS and the Municipality of Mayaguez was signed by Mr. José Guillermo Rodriguez (Mayor) in page # 51. He also initialed all contract pages demonstrating that he read and agreed with all terms of the contract. So, it is not only an allegation, but a proven fact that the Mayor was fully conscious of MEDHS rights, regarding the Mayaguez Medical Center. (Please see exhibit #9)

23. ON December 29, 2009, the Mayor of Mayaguez visited the Manati Medical Center, invited by Mr. Jose Quiroz, to evaluate whether he wanted Mr. Quiroz and his people to operate the Mayaguez Medical Center. Having decided that he did, he signed a letter in which he granted

8

    SISSO and MEDHS six month reprieve of monthly rent and approved Manati Medical Center's acquisition of SISSO's common stock.

24. When MEDHS officers refused to turn over the corporation to Mr. Quiroz and his nominees, he unilaterally cancelled the contract with MEDHS, signed a new one with MMC/Dr. Ramon Emeterio Betances Medical Center and allowed them to represent themselves as legitimate leaseholders and administrators of the Medical Center before the Federal and state agencies.

25. In the Lease Contract, the Mayor agreed to the specific mechanisms provided for, in the contract, to solve in good faith the disputes between the parties and of the related requirement of notice. He was, or should have been, also conscious of the fact that deprivation of property interest requires complying with proper processes, in this case, at least, a proper eviction action. On January 28th, 2010, the Mayor, acting under color of state law, signed and sent a letter terminating the Lease and Administration Contract with MEDHS. This Letter was in violation to sections 13.1.1 and 14.2 of the contract. Also, the letter was not delivered to the address established in section 14.2. The Mayor, knowing the terms of the Lease and Administration Contract, totally ignored the mechanisms created in the contract to solve in good faith the disputes between the parties and denied MEDHS constitutionally protected proprietary rights. Please see exhibit # 27.

26. He also ignored the mechanisms provided by law to evict a leaseholder who allegedly is in possession of the property without right to said possession. Instead he chose to do it by executive fiat.

27. To add insult to injury, he allowed SISSO, the party responsible for payment of rent and administration of the medical center, to remain in effective possession of the medical center, acting as its the administrative entity.

28. The reason for said action was that all licenses were in SISSO's name, as well as the provider numbers needed to be able to provide services to the Federal government (Medicare) and the various HMO's. Obtaining new numbers would have entailed many months and the medical center would have to be closed until new licenses were obtained. A similar situation applied to

9

the provider numbers. Although the services could have been rendered (assuming that the entity was licensed), to be able to collect for the services rendered, a new provider number was needed. To have waited until the licenses and numbers were issued would have destroyed the operation and its cash flow. Thus, the mayor stood by passively, while MMC misrepresented to the federal and state authorities its condition as alleged leaseholder of the medical center.

29. As this Honorable Court may have noticed, a Lease and Administration Contract is a business relation that takes considerable time to achieve, taking under consideration that several agreements and negotiations needs to be made in order to arrive at a final agreement, the contract. Then it is not conclusory, but a factual allegation that the Mayor and his agents, acting under color of state law, had to have negotiated and conspired to act in the way that they did. Said actions or pattern of behavior deprived MEDHS of its proprietary rights, without Due Process. The Mayor was acting under color of state law when he agreed to and signed a new Lease and Administration Contract the day after the unlawful cancelation letter with a new entity call MMC, without first obtaining a court order or judgment, setting aside the previous contract and depriving MEDHS of its possession of the medical center. Please see exhibit # 29.

30. The second Contract of Lease and Administrations mentioned above was signed by the Mayor in detriment of the moratorium in rent payments granted to SISSO and MEDHS. This factual allegation was confirmed in the Municipality of Mayaguez's answer of the Complaint.[1] So far, we have gone beyond plausible. In this case, the documents attached to the Complaint, are not only part of the allegations, but positive evidence of the Mayor's actions, as described above. We are not dealing with mere possibility or one of several possible inferences. The Mayor's signature in all the documents, unless he cannot read (and the signature is evidence that he can), proves that he acted purposefully against MEDHS. Thus, the Complaint contains, not only plausible

---

[1] Also the factual allegations about the different negotiations meetings during the month of December 2010 between the Mayor and Mr. Quiroz were confirmed by Mr. Quiroz in his deposition held on March 9, 2011.

10

allegations, but definitive proof, consisting of documents signed by the petitioning mayor, that the factual allegations in the Complaint, regarding his knowing violation of Plaintiff's property and Due Process rights, are true. Actual proof of the truth of the allegations goes way beyond the requirements of the Rules of Civil Procedure, of *Twombly* and of *Ikbal* . Dismissal does not follow.

## 42 U.S.C. Section 1983

31. To state a claim under 42. U.S.C. 1983 it is necessary to prove that the defendant acted under color of the state law; that the defendants conduct deprived plaintiff of federally protected rights, privileges or immunities; that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. See <u>Votour v. Vitale</u>, 761 F.2d 812,819 (1st Cir. 1985),<u>Gutierrez-Rodriguez v. Cartagena</u> 882 F.2d 553, 558 ($1^{st}$Cir. 1989), <u>Gómez v. Toledo</u>, 446 US 635, 640 (1980); <u>Parrat v. Taylor,</u> 451 US 527.

32. Also, through the Verified Complaint a series, a allegations are made about the breach of contract by the Municipality before in tortious interference of contract the occurred later. Taking under consideration that the Mayor is the highest authority in the Municipality, he is called to know and enforce the compliance with all contracted terms signed by him. As the attached material to the complaint shows, several attempts were made by MEDHS to make the Municipality and the Mayor fulfill all the agreements of their Lease and Administration Contract. The Mayor, had knowledge of the municipalities noncompliance with essential terms of the contract[2] He also knew that he could not demand MEDHS' compliance with the contract until the Municipality complied with its reciprocal obligations. So, to satisfy his wishes, he resorted to fiat and arbitrary behavior. Acting under color of state law, demanded payments through his counselor, signed a

---

[2] Of the hospital's six floors, only three were operational, when the hospital was delivered to MEDHS. In addition, by the Mayor's executive fiat, another floor was taken over by the municipality, to provide a trauma center for the games held in Mayaguez.

11

contract with another entity and arbitrarily canceled MEDHS contract and payment moratorium. See exhibits 19, 20, 27, 29 and 30 among other.

33. All the documents referred to above were signed by the Mayor acting under color of law, but in reality, acting illegally and, in so doing, depriving or attempting to deprive MEDHS of its property (leasehold) and contractual rights over the Medical Center. Given the nature of the Mayor acts, signing of mutually opposed contract and letters, the acts had to be performed intentionally or, at the least, with willful or callous indifference to MEDHS, property interests.

## THE RELATION BETWEEN THE VIOLATIONS AND THE DAMAGES

34. We have already met the first two elements of acting under color if state law and the protected proprietary right that was violated. Respecting to the Causal Relation element, the cancelation of MEDHS contract and the sign of a new Lease and Administration Contract with entity cause harms to all MEDHS proprietary rights and economical interests. The lease contract with the Municipality is MEDHS only significant asset. Being deprived of it, MEDHS cannot act. It has no means, save its directors will to subsidize it.

35. In conclusion, the Complaint sets forth and presents evidence of the actions of the Mayor of Mayaguez, performed under color of law but which, in fact, violate the law and which damage MEDHS, depriving it, effectively, of its lease hold rights over the Medical Center. Hence, the procedural deprivation of federally protected rights is not only alleged, but evidenced, in the Complaint.

## Qualified Inmunity

36. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages **insofar** as their conduct **does not violate** clearly established **statutory** or **constitutional rights** of which a reasonable person would have known.'" Caldwell v. Moore, 968 F.2d 595, 599 (6th Cir. 1992), quoting, Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In Pearson v. Callahan, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), the Court reiterated that the qualified immunity inquiry

is a two-part test." Id. at 268-269. "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation." Id. at 269 (citing Pearson, 129 S. Ct. at 815-16). "It is clear from the Supreme Court's description of the second, 'clearly established' step of the qualified immunity analysis that the second step, in turn, has two aspects. Id. One aspect focuses on "the clarity of the law at the time of the alleged civil rights violation." "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are **on notice** their conduct is unlawful." Pearson, 129 S. Ct. at 822. The other aspect focuses on "the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Maldonado, 568 F.3d at 269. "Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a **reasonable officer** that his conduct was unlawful in the situation **he confronted**." Id. (internal quotation marks and citation omitted). In other words, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant **fair warning** that his particular conduct was unconstitutional." Id. This **does not mean** that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," but rather that "**in the light of pre-existing law** the unlawfulness must be **apparent**." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); accord Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Bergeron v. Cabral, 560 F.3d 1, 12 (1st Cir. 2009), abrogated on other grounds by Maldonado, 568 F.3d at 269 (**"[A] plaintiff need not show** that the conduct of which he complains is an exact replica of conduct that previously has been held unlawful."). In conducting a qualified immunity analysis, **a court should "use its full knowledge of its own** [and other relevant] precedents." Elder v. Holloway, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994) (internal quotation marks omitted, brackets in original). The court must examine whether there are "'cases of

13

controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful,'" Bergeron, 560 F.3d at 11 (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)) (alterations in original), and "should search the relevant authorities both in circuit and out of circuit." Id.; see also El Dia, Inc. v. Rossello, 165 F.3d 106, 110 n.3 (1st Cir. 1999) (declining to adopt "a hard-and-fast rule" that out-of-circuit precedent is either determinative of or irrelevant to whether a law is clearly established, and instead stating that whether precedent "clearly establishes" a law may depend in part upon "the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court"). Barton v. Clancy, 632 F.3d 9, 22 (1st Cir. Mass. 2011) A right is considered clearly established **if viewed objectively** "at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional." Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009); see also Philip v. Cronin, 537 F.3d 26, 34 (1st Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). For a constitutional right to be clearly established there does not need to be a prior case with factually identical circumstances finding such a right. Mosher, 589 F.3d at 493. Rather, "notable factual differences may exist between prior cases and the circumstances at hand as long as the state of the law at the time gave the defendant 'fair warning' that his action or inaction was unconstitutional." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). In other words, for the right to be clearly established, the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident that can be said to have provided the defendant with "fair warning." See Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999). Decotiis v. Whittemore, 2011 U.S. App. LEXIS 5989, 34-35 (1st Cir. Me. Mar. 24, 2011) Officers sued in a civil action for damages under 42 U.S.C.S. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C.S. § 242. *Section 242 makes it a crime for a state official to act "willfully" and under*

14

*color of law to deprive a person of rights protected by the Constitution.* Officials can still be on notice that their conduct violates established law even in novel factual circumstances. The U.S. Supreme Court has expressly rejected a requirement that previous cases be "fundamentally similar." Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar" facts. Hope v. Pelzer, 536 U.S. 730 (U.S. 2002)

37. "[I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief **formed at the time and in light of all the circumstances**, **coupled with good faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct."** 416 U.S., at 247-248.I The Supreme Court held in Wood v. Strickland, that "if the work of the schools is to go forward," there must be a degree of immunity so that "public school officials understand that action taken **in the good-faith fulfillment of their responsibilities** and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." 420 U.S., at 321. This degree of immunity would be unavailable, however, if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student." Id., at 322. The official cannot be expected to predict the future course of constitutional law, ibid.; Pierson v. Ray, supra, at 557, but he will not be shielded from liability if he acts "**with such disregard of the [plaintiff's]** clearly established constitutional rights that his action cannot reasonably be characterized **as being in good faith.**" 420 U.S., at 322. Procunier v. Navarette, 434 U.S. 555, 561-562 (U.S. 1978)

15

38. In the present case we have presented allegations and evidence that supports the claim under 42 U.S.C. Section 1983 and the clear violation of the Due Process Clause. The Mayor in not protected by the qualified immunity to be sued in this case due to the circumstances of the case. The Mayor knew or should have known that, while representing the Municipality, to breach or maliciously interfere with MEDHS' leasehold rights, negotiating with another party a new contract of Lease and Administration while the previous contract was still in force, is not permissible.

39. We can even ignore the fact that the Municipality was not in a position to legally resolve the contract, because it had substantially failed to deliver the hospital and thus to comply with the specific conditions of the lease.  The Mayor granted MEDHS and its sub-lessee, SISSO, the actual operator and money generating entity, a six month moratorium of rent.  Then, having told SISSO that it need not pay, demanded rent from MEDHS.  The Mayor negotiated and signed the contract with MEDHS and SISSO and knew that, if SISSO did not pay its rent, MEDHS would not be able to do so either.  The Mayor need not have granted that moratorium (except that the Municipality was in non-compliance, as described above).  But having done so, he could not, in good faith demand payment from MEDHS, after having liberated SISSO from the current rent obligation.[3]  Despite this, the Mayor sent a cancellation letter to MEDHS in violation to sections 13.1.1 and 14.2 of the contract disposing of MEDHS leasehold property rights without proper notice and the chance to be heard and defend its position in Court. This is a clear violation of the Due Process Clause resulting in a violation of a constitutional protected right. The qualified immunity depends majorly on "the good-faith" of the defendant. The good-faith presumption is void in this case because the Mayor knew about the content and signed MEHDS's Lease and Administration Contract. He was representing the Municipality in that transaction.

40. It is well and clearly established state of law, that in a bilateral contract if a party does not fulfill (or fulfill defectively) his part of the agreement or provision, that party cannot validly require the

---

[3] It should be made clear that MEDHS never agreed to SISSO's not paying the rent in a timely fashion.

16

other party to comply with his part. For a discussion of this matter of state law this Honorable Court can refer to the following cases: Mora Development v. Sandín, 118 DPR 733 (1987), Martínez v. Colón, 125 DPR 15 (1989), Master Concrete v. Fraya, 152 DPR 616 (2000) and Alvarez de Choudens v. Rivera, 2005 TSPR 85. It is also important to note that the Mayor received a letter from MEDHS through one of his Legal Counselors advising about the unlawful cancelation letter send by the Mayor and exhorting to his reconsiderations. These events demonstrate that the Mayor had **fair warning** that his particular conduct was unconstitutional. The Mayor acted **with such disregard of the [plaintiff's]** clearly established constitutional rights that his action cannot reasonably be characterized **as being in good faith.** Please see exhibit 30.

41. On the other hand, nowhere in the law says the Qualified Immunity is an automatic protection for public officials to shield them from liability claims. Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. Gomez v. Toledo, 446 U.S. 635 (1980). Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." Wood v. Strickland, 420 U.S. 308, 322 (1975). The subjective component refers to "permissible intentions." Ibid. Characteristically, the Court has defined these elements by identifying the circumstances in which qualified immunity **would not be available**. Referring both to the objective and subjective elements, courts have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." Ibid. (emphasis added). Harlow v. Fitzgerald, 457 U.S. 800, 815 (U.S. 1982) "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (U.S. 2009) See:

17

Maldonado v. Municipality of Barceloneta, 682 F. Supp. 2d 109, 135 (D.P.R. 2010) This balance between the two important interest supports that Defendants bear the burden of pleading qualified immunity, but Plaintiff bears the burden of showing defendants are not entitled to qualified immunity. Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir. 2002). Banks v. Twardesky, 2011 U.S. Dist. LEXIS 25349, 7-8 ( E.D. Mich. Feb. 10, 2011) Defendants burden to plead the qualified immunity in a Motion to Dismiss includes the need to support the request with specific facts, in order to state the reasons why defendant is entitled to that immunity. In this case Defendant's motion to dismiss does not state any argument to sustain that immunity. Thus, Plaintiff's obligation to counter the argument is not triggered. Yet, we have presented clear and convincing, if not definitive, evidence of the Mayor's lack of good faith.

42. In light of what is stated above, the Mayor's conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known". Clearly, the Mayor should have known that he could not dispose of MEDHS leasehold rights without proper judicial proceedings. His actions fall beyond the umbrella provided by qualified immunity. The dual test is complied with, by the Complaint. The deprivation of a property interest without due process is a violation of a constitutional right and it has been clearly established for ages. Also the evidence presented and the arguments made clearly show "bad-faith" in the mayor motives and actions. the Mayor is not protected by the Qualified Inmunity. The Motion to Dismiss should be DENIED. by this Honorable Court.

## The R.I.C.O. Act 18 U.S.C. §1961-1968

43. In every section of the Verified Complaint the following paragraph is noted: *"All prior and subsequent paragraphs and all addenda and Exhibits attached to or filed simultaneously with this Complaint are hereby incorporated by reference and made an integral part of the pleadings"*. This means that the Complaint is intended to be analyzed as a whole, as we have previously stated.

18

44. The complaint makes specific allegations regarding the nature of the mail fraud and includes evidence of its allegations. Specifically, MMC/SISSO, without MEDHS's acquiescence or a valid judgment, misrepresented to federal agencies, HMO's and/or state regulatory agencies that they were in valid control of the Hospital. This asseveration of valid control would never be have been presented to the pertinent authorities nor accepted by them, if the Municipality represented by his Mayor, acting under color of the state law, in concert with the other mentioned parties had not acted as described above and given its approval to MMC's false representations.

45. In their billing to Medicare and/or HMO's, MMC failed to notify that the alleged change of effective control had taken place, thus, receiving funds under false pretenses. That is, they sent invoices and received funds without informing Medicare and HMO's that they were a different entity from MEDHS/SISSO.

46. The above actions were known or should have been known by the Mayor. Because without his negotiations, approval and signature this MMC/SISSO and Municipality business relationship would have never occurred. Therefore, the Defendant's Motion to Dismiss should be DENIED by this Honorable Court.

## Supplemental Jurisdiction

47. This honorable has supplemental jurisdiction and should also exercised it under 28 U.S.C.A. § 1367, taking under consideration that this case has been brought as an adversary proceeding under the Federal Bankruptcy Law. Most of the factual allegation and evidence turns around MEDHS's Lease and Administration Contract that is part of the estate in the chapter 11 proceeding.

48. Also this action involves matters that are core proceedings, and matters that are non-core proceedings under 28 USC 157. As to the non-core proceedings, Plaintiff has consented to the entry of final orders by the Bankruptcy Court, but expressly had preserves its right to jury trial, and demands such trial by jury as to all issues so triable.

19

49. Therefore, the baseless motion to dismiss presented by Defendant's should be DENIED by this Honorable Court.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this April 12, 2011.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing through the CM/ECF system, which will send notification of such filing to the parties therein registered to receive Notice, including the U.S. Trustee.

/S/ *Rafael González Vélez*
**Rafael González Vélez**
USDC No. 124311
1806 Calle McLeary Suite 1-B
San Juan, PR 00911
Tel: (787) 726-8866
Fax: (787) 726-8877
Email: rgvlo@prtc.net